C7K8GENC1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

GENESIS WILSON, et al.,

                Plaintiffs,

         v.                              10 Cv. 2709 (PGG)

PASQUALE'S DAMARINO'S, INC.,
et al.,

                Defendants.

------------------------------x

                                         July 20, 2012
                                         3:50 p.m.

Before:

                    HON. PAUL G. GARDEPHE

                                         District Judge

                         APPEARANCES

ROBERT WISNIEWSKI
     Attorney for Plaintiffs

CAVANAGH & ASSOCIATES, P.C.
     Attorneys for Defendants
BY:  GLENN L. CAVANAGH
     JARRED S. FREEMAN


Also present:
     ANDREW C. RISOLI
     ANDREA RISOLI

C7K8GENC1

1          (Case called)

2          THE DEPUTY CLERK:  Is the plaintiff ready?

3          MR. WISNIEWSKI:  Plaintiff is ready.  Robert

4     Wisniewski for all plaintiffs.

5          THE DEPUTY CLERK:  Defendants ready?

6          MR. ANDREW RISOLI:  Andrew C. Risoli, 488 White Plains

7     Road, Eastchester, New York.

8          MR. CAVANAGH:  Glenn Cavanagh, Cavanagh & Associates.

9          MR. FREEMAN:  Jarred Freeman, Cavanagh & Associates.

10          THE COURT:  This matter is on my calendar for purposes

11     of considering the plaintiffs' application for a default

12     judgment.

13          This case was filed on March 26, 2010.  The defendants

14     have repeatedly refused to pay their lawyers, which has led to

15     repeated changes in counsel and a complete disruption of

16     proceedings in this case.

17          The first lawyer was Adam Breud.  He was terminated on

18     January 3, 2011 by defendants.  Mr. Breud withdrew because of a

19     fee dispute.

20          Robert Popescu was the second attorney.  His services

21     were terminated on March 11, 2011.  The reasons why Mr. Popescu

22     withdrew are not clear from the record.

23          Mr. Cavanagh appeared at an April 5, 2011 conference

24     on behalf of all defendants.  I made it crystal clear at that

25     time that there would be no further substitutions of counsel.

C7K8GENC1

At the April 5, 2011 conference, I said the following:  "I

don't want any further delay in the case.  And, Mr. Cavanagh,

you should instruct your clients that I have no more tolerance

for jockeying around here.  We are on our third set of lawyers.

It has been incredibly disruptive.  We have lost a year, in

large part because of the jerking around between counsel.  That

has to stop.  And if Mr. Marino has any further thoughts about

changing counsel, the case will proceed with him on a pro se

basis.  So we are not going to tolerate any more delay."

Citing the April 5, 2011 transcript at page 25.

          Despite that exchange, on January 27, 2012, a lawyer

named Lorenzo Lugara sent a letter to Mr. Cavanagh stating that

he had been retained to represent defendants Pasquale Marino,

Izabela Marino, Salvatore Abbate and Pasquale DaMarino's, Inc,

and that Mr. Cavanagh should do no more work on the case.

          On January 30, 2012, Mr. Cavanagh sent to the Court,

to me, executed substitution of attorney forms for all

defendants, saying that he would file them later with the

clerk's office.  That filing never took place.  Mr. Cavanagh's

letter provided no explanation for the change in counsel or how

it complied with my instructions at the April 5, 2011

conference that there would be no further substitution of

counsel.

          In a February 27, 2012 letter to the Court,

Mr. Cavanagh explained that the defendants Pasquale Marino,

C7K8GENC1

 1    Izabela Marino, Salvatore Abbate and Pasquale DaMarino's, Inc.

 2    had contacted him and told him that they had retained a new

 3    lawyer, Lorenzo Lugara.  Once again, the defendants had refused

 4    to pay Mr. Cavanagh for the legal services he had rendered.

 5         Mr. Cavanagh also asserted in his February 27, 2012

 6    letter that a conflict of some sort had arisen in connection

 7    with his representation of the defendants.  The letter does not

 8    make clear what the nature of that conflict is.

 9         On February 29, 2012, I received a letter from

10    Mr. Lugara stating that he had been retained by defendants

11    Pasquale Marino, Izabela Marino, Salvatore Abbate and Pasquale

12    DaMarino's, Inc.  In his February 29, 2012 letter, Mr. Lugara

13    asked the Court to permit a substitution of counsel yet again.

14    Mr. Lugara stated that the defendants no longer had confidence

15    in Mr. Cavanagh and that Mr. Cavanagh and all the prior lawyers

16    in the matter had taken advantage of the defendants because

17    they only spoke Italian.  This assertion appears to be false on

18    its face based on a video submitted by plaintiffs' counsel

19    showing Mr. Marino speaking English quite fluently.

20         In a March 19, 2012 letter, the plaintiffs opposed the

21    substitution of counsel request.

22         In an order dated April 5, 2012, I directed all

23    defendants and Mr. Cavanagh to appear for an April 16, 2012

24    conference to resolve these issues.  Neither the defendants nor

25    counsel for the defendants appeared on that date.

C7K8GENC1

1           On April 24, 2012, I received a letter from yet

2      another attorney, Mr. Risoli, who is here in court this

3      afternoon.  In his April 24 letter, Mr. Risoli represented that

4      he had been retained as counsel for defendants, representing I

5      guess the sixth lawyer to have appeared on behalf of the

6      defendants or to seek to appear on behalf of the defendants.

7           On April 27, 2012, I issued an order directing the

8      defendants to show cause by May 4, 2012 why sanctions should

9      not be imposed for their failure to appear at the April 16

10     conference.  Defendants did not respond in any fashion to the

11     order to show cause.  As a result, on June 1, 2012, I directed

12     the plaintiffs to make a motion for default judgment.

13     Plaintiffs filed that motion on July 3, 2012, and the hearing

14     on that motion was ultimately set for today.

15          Let me also say that Mr. Cavanagh has never moved to

16     be relieved as counsel for defendants, and he remains counsel

17     of record today.  Mr. Cavanagh's sending me substitution of

18     counsel forms did not relieve him as counsel of record.  Our

19     local rules, and specifically local civil rule 1.4, requires an

20     attorney who is seeking to be relieved to make an application

21     for leave of court.  This rule requires that the attorney

22     seeking to withdraw must support his or her application with an

23     affidavit.  "Such an order may be granted only upon a showing

24     by affidavit or otherwise of satisfactory reasons for

25     withdrawal or displacement in the posture of the case."

C7K8GENC1

1    Accordingly, I will require a motion and supporting affidavit

2    here before acting on Mr. Cavanagh's request to withdraw.

3            As to Mr. Lugara's and Mr. Risoli's applications to

4    appear on behalf of defendants, and I might say it's entirely

5    unclear to me who defendants are seeking to have represent them

6    at this point, those requests are denied.  I cannot allow this

7    case to be disrupted any further by substitutions of counsel.

8    I made clear more than a year ago, when Mr. Cavanagh came into

9    the case as the third lawyer for defendants, that there would

10   be no further changes of counsel in light of the disruption

11   that the changes in counsel had already caused.  And I made

12   clear that defendants' only option going forward would be to

13   proceed pro se in the event that they couldn't proceed with

14   Mr. Cavanagh.

15           I should also say that Mr. Lugara's letter appears to

16   have been sent in bad faith, given that it alleges that

17   defendants' prior attorneys took advantage of them because of

18   their inability to speak English.  That appears to have been a

19   false assertion.

20           I have received no satisfactory explanation for the

21   defendants' failure to appear at the April 16, 2012 conference

22   or to respond to the April 27, 2012 order to show cause.

23           (Continued on next page)

24

25

C7kQgenC2

1          THE COURT:  (Continued) I received a July 5, 2012

2    letter from Mr. Cavanaugh apologizing for not responding to the

3    Court's prior orders saying that he had not been receiving

4    notifications from Pacer.  I can't imagine why this would be

5    so.  But assuming arguendo it is so, Mr. Cavanaugh had an

6    obligation to keep track of developments in the case until he

7    was relieved, and he was never relieved as counsel.

8          So we have pending before us a motion for default

9    judgment.  I will hear anything that anyone wants to say on the

10   subject, but that is the history here, and it is a sorry tale.

11   I will tell you that I am considering very seriously entering a

12   default judgment against the defendants because of this record.

13          Does anyone wish to speak?

14          MR. WISNIEWSKI:  Your Honor, Robert Wisniewski,

15   plaintiff's counsel.  We submitted to you several legal

16   authorities which we feel are directly on point.  The one that

17   is almost identical, except for the fact that it was the

18   plaintiff, not the defendants, who failed to obey the Court's

19   orders is *Edwards v. Horn*.  It is a decision by Magistrate

20   Judge James Cott, about whom you spoke about previously.  And

21   the citation is 2012 WL 1292672.

22          THE COURT:  What's the name of the case again?

23          MR. WISNIEWSKI:  *Edwards v. Horn*.  The case was

24   identical.  The Court in *Edwards* issued an order for a

25   scheduling conference.  Plaintiff, one of the litigants, did

C7kQgenC2

1    not appear.  The Court issued another order rescheduling the

2    conference at which the litigant did not appear.  And, finally,

3    the Court issued a report and recommendation which was

4    subsequently accepted by the District Judge Sullivan in which

5    it laid out the case history and on those facts applied the

6    Second Circuit precedent *Link v. Wabash Railroad*, 370 -- I'm

7    sorry, it's a Supreme Court precedent.  370 U.S. 626.

8            THE COURT:  I'm sorry?

9            MR. WISNIEWSKI:  It's *Link v. Wabash Railroad*

10   *Corporation*, 370 U.S. 626, pinpoint citation 630.  It's a 1962

11   case.  Also *Shannon v. General Electric Company*, 186 F. 3d 186,

12   and pinpoint citations 193-94.

13           The Court in *Edwards* considered five factors, and

14   you've enumerated in your presentation of the case that it's a

15   sorry case history, the factors such as the duration of the

16   litigant's default, the fact that the litigant did receive

17   notice that sanctions would be considered against him.

18           What I would like to focus on before you today is on

19   the third factor considered by the *Edwards* Court, which is

20   whether the opposing side would be prejudiced by further delay.

21           I should like to add to your statement the fact that

22   we have lost another year since April 2011.  After

23   Mr. Cavanaugh was retained, you directed the defendants to

24   respond to all outstanding discovery demands by July.  The

25   defendants did not respond to discovery demands by July.

1   Mr. Cavanaugh advised me that he had had great difficulty

2   obtaining documents from the defendants, and that was the

3   reason for his inability to comply with your discovery order.

4          As a result, on October 12, 2011 I wrote to you a

5   20-page letter detailing the outstanding discovery, written

6   discovery, your Honor.  We're talking about responses to

7   interrogatories and document requests.  Pursuant to my letter,

8   you sent the case for discovery issues to Magistrate Judge

9   Francis.

10          Now, subsequently, as you know, there were third-party

11   actions instituted by the defendants, and as a result of these

12   third-party actions and the third-party defendants' desire not

13   to spend the money until their motions to dismiss those

14   third-party complaints were resolved, Judge Francis issued an

15   order in with he suspended discovery until you resolved those

16   third-party actions.

17          In January of this year, the circus with the attorneys

18   began again.  So, at the very least, your Honor, since January

19   until today we have lost, what, seven months, seven months in

20   this case.

21          Now, I want you to consider the following:  This case

22   is brought by waitresses, young waitresses.  The witnesses in

23   this case are generally young people, young waitresses.  I

24   venture to say that two and a half years after this case began

25   a substantial majority of people that I would want to call as

C7kQgenC2

1    witnesses have already moved on.  They changed their telephone

2    numbers, email addresses, and if you allow this case to

3    continue, your Honor, I would have extreme difficulty locating

4    these witnesses because of the transient nature of restaurant

5    employees.

6            And another situation is this:  I now have a class

7    action trial before Judge Glasser which will happen in

8    September or October.  The case had been sent to an

9    arbitration -- to a mediation, and if there is no resolution, I

10   have class action trial which will take an enormous amount of

11   time.

12           I also have been advised by my mother that I have to

13   go back to Poland to help her in moving into a nursing home

14   because of her frailty.  I'm an only child and she has no other

15   family members, your Honor.  I will have to ask for extensions

16   of time in about 50 cases that I'm handling.

17           Your Honor, so realistically if you were to allow this

18   case to continue, I would be able to deal with the outstanding

19   written discovery realistically sometime in October.

20           Another reason is, for example, that the associate who

21   handled this case has left the firm.  I have a new associate

22   who is not familiar with this case or with all the discovery

23   issues.  So, I want you to consider this very seriously because

24   in this case it's a very important factor.

25           We have lost a year, as you noted, plus seven months,

C7kQgenC2

close to two years on this business with changing attorneys.

You've correctly identified the scheme here, Judge.  It's

retaining new attorneys, OK, having them run up the bill and

then refusing to pay, and then moving on and then moving on.

And the purpose of sanctions is not only to punish the

miscreant, but also to deter such conduct in future cases.  And

that is a seminal case *National Hockey League v. The Hockey*

*Club*, and it is cited in the *Edwards* decision, your Honor.

So I want you to consider not only the conduct here

but also the deterrent value of your decision to others who

will want to deploy the same maneuver as the defendants have

done in this case, which is to change attorneys, run up the

bill and switching attorneys from one to another and the effect

that such a tactic has on the litigants, your Honor.

Now, you also have to consider whether lesser

sanctions would be appropriate here -- that's in the *Edwards*

decision citing the Shannon v. General Electric -- but lesser

sanctions will not resolve the problem because of the

situation, your Honor.  It will take me and my personnel days

to locate the witnesses we expected to call, OK?  We will be --

if we are unable to locate these witnesses, we will have six

women claiming they were sexually harassed and there will be

four or five defendants clearly telling a different story.  And

because of our inability to find credible witnesses,

third-party witnesses, we will be prejudiced by that immensely.

C7kQgenC2

1           Also, in considering default -- because for all

2     practical purposes the defendants have defaulted here -- you

3     have to consider two things:  Excusable neglect, which you

4     clearly didn't find here, and also the substance and merit to

5     the defendant's defenses.

6           As we presented to you in our application, the

7     defendants do not have any defenses to the waitresses' and

8     other employees' claims for wage violations.  Their own

9     documents speak for themselves.  They're in clear violation of

10    the New York Labor Law, the Fair Labor Standards Act, and the

11    wage orders promulgated under both the state and federal

12    statutes.  So the only defenses they have are the claims or the

13    denials by Mr. Marino that he didn't sexually harass these

14    women.  OK?

15          Now, I think it is important to mention something

16    here.  You uttered the same words to us, to me and Mr. Breud

17    that I heard you say previously; that this case cries out for

18    an early settlement.  We did go to a settlement conference,

19    your Honor, when we filed the original action, and because of

20    Mr. Risoli's outrageous statements in his letters, I need to

21    advise you of something, which is very important because these

22    women knew defendant Izabela Marino, they didn't want in public

23    pleadings initially, they didn't want -- and because of the

24    involvement of a rather very well-known actor and the fear that

25    tabloids in New York may pick up the story, they didn't want to

C7kQgenC2

1    publicize initially that claim.

2            They filed a claim for wage violations, but at the

3    settlement conference we did discuss wage violations and sexual

4    harassment claims, OK?  There was a suggestion by Judge Francis

5    that to move on with the mediation perhaps the parties should

6    agree to take the lie detector test.  Guess who refused to take

7    the lie detector test, your Honor?  And you should consider

8    this when you consider whether the defendants have a substance

9    and merit to their defenses.

10           So, for the reasons that we put forth in our

11   application, and based on the reasons that I have just

12   presented here, plaintiffs do request that you enter default

13   against all defendants.

14           I also wish to remind the Court that the corporation

15   itself, if you relieve Mr. Cavanaugh from representing them,

16   will have automatically defaulted because it will not have been

17   represented by an attorney.

18           So, I think that for all these reasons, you should

19   enter default against all defendants.  Thank you.

20           THE COURT:  Does anyone else wish to be heard?

21           MR. CAVANAUGH:  Yes, your Honor, briefly.

22           Your Honor, without question, there was

23   miscommunication with regards to those court orders, your

24   Honor, and that was with no malice.  We had a server issue.

25   The building we were in, we lost all power lines and

C7kQgenC2

1    information lines.  It took us almost a month and a half to get

2    back, and we did -- we lost many different things with regards

3    to our telecommunications, our internet and various things.

4    When we found out and were alerted to this, we immediately

5    notified the Court, apologized to the Court.

6           At this point, your Honor, I would ask that we be

7    allowed to file the papers to be relieved as counsel, but at

8    the same time we were under the belief that Mr. Lugara had

9    filed all these things.  Obviously, we were wrong.  Mr. Lugara

10   obviously didn't file anything.  But subsequently, your Honor,

11   I don't think there is any reason for the defendants here to be

12   sanctioned.  If the Court would be so indulgent as to let us

13   file and be relieved as counsel, I think making plaintiffs go

14   on pro se is punishment enough.

15          THE COURT:  You mean making defendants go on pro se.

16          MR. CAVANAUGH:  Thank you, your Honor, yes.

17          MR. RISOLI:  If it please your Honor --

18          THE COURT:  Yes, Mr. Risoli, go ahead.

19          MR. RISOLI:  Your Honor, the defendants have never

20   asked for a delay in this case.  There was a one-year delay

21   built in by four amended complaints which took over a year to

22   answer.  The original complaint contained no allegation of

23   sexual harassment.  It wasn't until six months later that the

24   first amended complaint alleged that, and by Mr. Wisniewski's

25   statement just now, it seems like it was offered to end this

C7kQgenC2

1   case by blackmail.  They wouldn't bring any sexual harassment

2   Mr. Marino would pay him close to two or $300,000 for the

3   wage-related claim.

4            When we took over this case, we immediately moved into

5   the criminal case, disposed of it on trial, which it no longer

6   exists, right?  We're ready for trial.  If he wants to start

7   the trial Monday, I'll start the trial Monday.  If he wants to

8   start discovery Monday, I will start EBTs Monday of the

9   plaintiffs, and I will continue on a daily basis until they're

10  done.

11           If he wants EBTs of my guys, the guys I control I will

12  make available to him immediately.  The ones I don't control

13  are his option to serve subpoenas on for non-party witnesses.

14           I have an absolute defense in this case, Judge.  There

15  is no wage loss in this case when you consider that Mr. Marino

16  paid them a salary, he paid them tips, and he paid them meals.

17  It adds up to more than the minimum wage.

18           I have an absolute defense to this sexual harassment

19  charge.  I have over 22 favorable declarations from -- ten of

20  them probably are from independent witnesses who no longer work

21  at the restaurant who have no reason to give me a declaration,

22  who have no reason to say what they're saying in his defense.

23           Now, as far as not appearing before your Honor, he had

24  absolutely no notice to appear.  Mr. Marino, although he speaks

25  English, has a little trouble understanding.  We had to get an

C7kQgenC2

1    Italian interpreter in the criminal trial.

2              Mr. Cavanaugh never advised him of the appearance.  He

3    never advised him of the show cause order.  I wish to bring to

4    your Honor's attention the case of *Cody v. Mello*, 59 Fed.3d 13

5    where in that Court, that Court offered an alternate default

6    against the plaintiff in that case, and it was reversed by the

7    Court of Appeals, Federal Court of Appeals on the basis that

8    the defendants had no knowledge of the court appearance, and

9    their non-appearance was not willful.

10             The Court stated in that case in the last sentence

11   that the "extreme sanction of a default judgment must remain a

12   weapon of last resort rather than first resort."

13             Your Honor, all I could say is we are staying with the

14   defendant now.  There were reasons why the three defendants,

15   the attorneys left them.  We're staying with him.  I'm here for

16   the trial.  I'm 78-years-old, and I promise you before I pass

17   away, I'll finish this trial.  There's no delay being asked for

18   by the defendants, and the default judgment would be extremely

19   prejudiced in this case.  Thank you, your Honor.

20             MR. WISNIEWSKI:  Your Honor, may I be heard?

21             THE COURT:  Sure.

22             MR. WISNIEWSKI:  Yes.  I'll be brief.

23             THE COURT:  Anything else from defendants before I

24   hear from Mr. Wisniewski?  Mr. Cavanaugh, did you want to say

25   something else?

C7kQgenC2

1          MR. CAVANAUGH:  Your Honor, only briefly in that I

2     agree with Mr. Rispoli.  I never did notify the defendants, my

3     clients, because at that point I was actually told to have no

4     contact with them, so I did not notify them and was under the

5     belief that Mr. Lugara was representing them, but I would agree

6     with Mr. Rispoli that the defendants should not be sanctioned

7     to that extent, your Honor.  Thank you.

8          THE COURT:  So what happened to Mr. Lugara?  Because I

9     had received several pieces of correspondence from him.

10          MR. RISOLI:  Your Honor, Mr. Lugara this morning sent

11     me an email that says that he couldn't attend this appearance

12     today because he's the best man in a wedding in Pennsylvania.

13     I would like to submit it to the Court.  I have a copy for

14     Mr. Wisniewski.

15          But further I would like to state to the Court I have

16     all the defendants present here except one, your Honor, who is

17     out of the country.

18          THE COURT:  And what do you say, Mr. Risoli -- and,

19     again, I'm granting you the indulgence of hearing you because,

20     as I've indicated, I'm not going to permit the defendants to

21     add another lawyer into the case, but what do you say to the

22     argument that I told the defendants back in April of 2011 that

23     there was to be no more substitution of counsel, and that if

24     they persisted in this tactic of retaining lawyers and then not

25     paying them, they were going to be required to proceed pro se.

C7kQgenC2

1    What do you say to that?

2            MR. RISOLI:  Your Honor, as I read the minutes -- I

3    have them here.  As I read the minutes of that hearing, you

4    said, "if he retains new counsel or discharges counsel."  You

5    said if he does that, then you are going to make him proceed

6    pro se, which means your Honor would tolerate no further delay

7    in the case.  He would go on by himself.

8            He is not asking for any delay, Judge.  I'm not asking

9    for any delay.  I'm ready to go.  He's got attorneys that are

10   ready to go immediately at your Honor's discretion.

11           THE COURT:  Well, I have to tell you that when

12   Mr. Cavanaugh came into the case in April of 2011, and he told

13   me he was ready to go, he told me there would be no delay, he

14   told me that his clients were interested in a rapid resolution

15   of the matter, etc., etc., and that's not what happened.

16   Instead, what happened is a repeat of what had happened with

17   other lawyers that had been involved in the case previously.

18           I do have to take very seriously what Mr. Wisniewski

19   has said about the prejudice that his clients have suffered as

20   a result of the passage of time.  I have to consider the fact

21   that I was very clear back in April of 2011 that I would not

22   tolerate any more of this behavior.  It continued nonetheless.

23           I have to consider the failure to appear at the

24   conference on April 16, the failure to respond to the order to

25   show cause.  I have been told by Mr. Cavanaugh this afternoon

C7kQgenC2

1   that he had some problems with a server, but obviously that

2   doesn't excuse an attorney from keeping track of what's going

3   on with the docket of cases of which he is still counsel of

4   record.  So, there isn't any justifiable excuse that I can see

5   on this record for what's happened.  That's where we are.

6           Mr. Wisniewski, anything else you want to say?

7           MR. WISNIEWSKI:  Yes, your Honor, I'll be very brief.

8   Mr. Risoli made assertions basically without any legal support

9   that Mr. Marino has defenses to wage and hour violations.

10  We've submitted to you a substantial memorandum of law on that

11  issue and we submitted to you the pay stubs.  If you read the

12  memorandum of law, all of the authorities, and you review the

13  pay stubs, on their face they're violations of law.

14          For example, initially he pays waitresses $10 per day,

15  per day, when they've worked, eight, ten, 12 hours, OK?  That's

16  one dollar per hour.  Even assuming a tip credit, the guy is

17  short three or four dollars per hour.  He doesn't pay them

18  overtime.  When he gets sued initially, your Honor, he

19  switches.  He pays them the alleged tip credit minimum wage of

20  $4.60, but as you will see from the pay stubs, if people work

21  over 40 hours, he still pays them at the regular rate, not the

22  overtime rate.  Your Honor, these are Exhibits 12 to 15 of our

23  initial application.  All you have to do is look at the pay

24  stubs.  So Mr. Risoli's assertions are simply incorrect.

25          Secondly, Mr. Risoli makes very strong accusations

C7kQgenC2

1    against me and my clients and also against Mr. Cavanaugh.  For

2    example, in his letter he accuses my clients of conspiring and

3    for me to be part of that conspiracy that somehow we are

4    blackmailing him.  I want to make it plain to you, your Honor,

5    because the plaintiffs knew the defendant Izabela Marino, who

6    is married to Mr. Marino right there, OK, they didn't want her

7    to be hurt so much because they were friendly with her.

8    Because when the case was not resolved through settlement, we

9    amended our pleadings as a right.  That was no blackmail.  It

10   was just a sensitivity to one of the defendants.  We don't care

11   about Mr. Marino clearly, but they cared about Izabela Marino,

12   a young woman who is married to Mr. Marino, and with whom she

13   has a two- or three-year-old child.  That was the reason behind

14   it, not blackmail.  Mr. Risoli is very liberal of accusing

15   other attorneys of criminal conduct here, including accusing

16   Mr. Cavanaugh of allegedly running some money laundering

17   scheme.

18          Now, Mr. Risoli's claim that the defendant didn't know

19   is absurd.  Three lawyers knew or should have known.  Even if

20   Mr. Cavanaugh had a power outage for several months, and I'm

21   sorry to say, but Mr. Cavanaugh has not submitted any proof of

22   such a power outage, OK, then you have Lugara who in late

23   January or early February writes to you and he says I'm

24   representing these people.  What, Lugara doesn't check the

25   docket?

C7kQgenC2

 1          We also have Mr. Risoli who files a notice of

 2     appearance on April 24.  Why?  He doesn't check the docket?  He

 3     doesn't check the docket that several days later you issue

 4     another order?   Well, you have to say that clearly the

 5     defendants knew, the defendants knew through their legal

 6     representatives, their lawyers.

 7          As I put in my reply memorandum to you, Judge, if

 8     there is an issue, maybe the proper venue is the Supreme Court

 9     next door for a malpractice lawsuit against Mr. Risoli and

10     Mr. Lugara, OK?  Maybe that is the proper solution.  But

11     clearly you shouldn't punish plaintiffs in this case, and

12     certainly since you've already made the decision not to allow

13     Mr. Risoli to represent, because this will be a circus.

14     Mr. Risoli says he is ready to proceed.  But I am not, your

15     Honor.  As my 20-page letter to you details, there's

16     substantial deficiencies in the defendant's discovery

17     production.  The deficiencies that were the result of the

18     contumacious conduct because they were told to produce

19     everything, and they didn't.  OK?  That has not been resolved,

20     so we cannot start with depositions on Monday, your Honor.  It

21     will take us months to start depositions.  It will take me days

22     to locate people, people who two years ago or a year ago were

23     available.  Now I'll be looking for them.

24          Mr. Risoli makes this bold statement that he has 22

25     declarations.  Where are they?  They should have submitted them

C7kQgenC2

1    as part of their application here.  OK?

2             Your Honor, you have been very generous with the

3    defendants here, and the time has come to pull down the curtain

4    on this farce which has been the defendant's conduct.  Thank

5    you very much.

6             MR. RISOLI:  Your Honor, he's given you about 15

7    reasons why he can't proceed in this case; not why the

8    defendants can't proceed.  He's telling you he lost these

9    people.

10            Your Honor, I have a tape of Mr. Wisniewski

11   interviewing somebody trying to get her to join into this suit.

12   No matter how many times she told him that Mr. Marino was not

13   guilty of any wage violation was not guilty of any sexual

14   violation, he continued for over 50 pages of transcript to try

15   to convince her to join this suit.  This case was produced and

16   directed by Mr. Wisniewski, right?  I sent a letter to your

17   Honor asking you to consider having him appear as a witness for

18   the defense in this case on the grounds that there was no

19   sexual harassment allegations originally in this case, right?

20            Judge, there's no delay here.  There's no delay.

21   These people were paid the proper wage.  There was no sexual

22   harassment.

23            Let me say as a last thing that Mr. Marino has been in

24   business for 16 years in this restaurant.  He's gone through

25   how many thousands of waitresses and wages, and this is the

C7kQgenC2

```
 1    first time this has ever come up.  He has never been guilty or
 2    never been accused of anything like this, and this is the first
 3    time.  He has a right to defend himself, your Honor, and prove
 4    that these allegations are false, both the wage allegations and
 5    the sexual harassment.
 6         The last thing I want to say, Judge, before I sit
 7    down, I see on the electronic filing now that there's four
 8    additional names listed who I don't know who they are, right?
 9    Are we to expect another amended complaint?  I don't understand
10    what their names are doing there, but I don't know if we are to
11    expect another amended complaint.  We've now answered the four
12    amended complaints which were over a thousand pages.
13         Judge, we need a trial in this case.  We're ready to
14    go to trial Monday.  If he needs time to find his people, let
15    him find his people.  Let's go to trial and dispose of this
16    case on the merits the way every case should be disposed of.
17    Thank you, your Honor.
18         THE COURT:  All right.  I'm going to --
19         MR. WISNIEWSKI:  Your Honor, I have to address just
20    two issues.  OK?  I have to say, Mr. Marino had dispatched his
21    mistress, Ms. Natalia Odegova to tape me.  OK?  Fine.  There
22    were two lawyers who reviewed those tapes somehow and while
23    they were alluded to previously, OK, certainly, certainly if
24    they had been so explosive, as Mr. Risoli says, there would
25    have been other proceedings.
```

C7kQgenC2

1          But I wish to tell you, OK, if Mr. Risoli since he

2     raised this issue, there will be testimony that Ms. Odegova was

3     his mistress.  It will be testimony by her roommate who saw

4     Ms. Odegova and Mr. Marino in the room next door.  Perhaps

5     Mr. Risoli doesn't know this.

6          Secondly, clearly, Mr. Risoli doesn't understand wage

7     and hour cases.  The reason there have been people here who

8     aren't listed in the caption is because they filed consents to

9     joinder pursuant to a distribution of a notice of pendency

10    under the Fair Labor Standards Act.  The reason there have been

11    amendments is because other people have joined.  Ms. Lisovskaya

12    has joined.  Ms. Synyuk has joined.  And Mr. Moin Uddin has

13    joined.

14         Your Honor, we've given you reasons why you should

15    pull down the curtain on this farce, and it will be a farce, it

16    does seem to me, if you were to reconsider your decision to not

17    allow Mr. Risoli to represent Mr. Marino.  But this is what you

18    are going to expect, OK?  Instead of focusing on wage

19    violations and the allegations, there will be allegations about

20    Cavanaugh running a drug operation and me engaging in

21    conspiracy -- boldfaced allegations unsupported by anything.

22    And I would like you to consider sanctions against Mr. Risoli

23    for making such statements in open court.

24         THE COURT:  All right.  I've heard enough.

25         MR. RISOLI:  Your Honor, one last thing.  There should

C7kQgenC2

1    be --

2            THE COURT:  No.  I've heard enough.

3            MR. RISOLI:  There should be a deadline to add people

4    to these cases.

5            THE COURT:  I said I've heard enough.

6            MR. RISOLI:  OK.

7            THE COURT:  The lawyers will give to the court

8    reporter the correct spellings of all the names that have been

9    mentioned in today's proceedings.  I'll take under advisement

10   the notice for default judgment.

11           MR. WISNIEWSKI:  Thank you.

12           (Adjourned)

13

14

15

16

17

18

19

20

21

22

23

24

25