USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/25/13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GENESIS WILSON, ALIAKSANDRA KULESH, and NATALIA ZEMTSOVA on behalf of themselves and on behalf of all others similarly situated,

                     Plaintiffs,

- against -

PASQUALE'S DAMARINO'S, INC., PASQUALE MARINO, IZABELA MARINO, PETER ROSSIGNUOLO a/k/a PETER ROSSI, CRAIG PERRY, GIANCARLO MONTESARCHIO and JOHN DOE a/k/a SALVATORE,

                     Defendants.

PASQUALE'S DAMARINO'S, INC., PASQUALE MARINO,

                     Third Party Plaintiffs,

-against-

PAYCHEX, INC., SALVATORE VASSALLO, VASSALLO INSURANCE AGENCY, et al.

                 Third Party Defendants.

**MEMORANDUM**
**OPINION & ORDER**
10 Civ. 2709 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        In this putative class action, Plaintiffs – former employees of DaMarino Restaurant in midtown Manhattan (the "Restaurant") – bring claims for (1) breach of contract, (2) quantum meruit, (3) violation of the New York Labor Law, (4) violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., (5) hostile work environment and retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., (6) sexual harassment and retaliation in violation of New York Executive Law § 296 and New York City

Administrative Code §8-107, (7) negligent supervision, (8) intentional infliction of emotional distress, and (9) assault and battery (Fourth Amended Complaint ("FAC") ¶¶ 215-332)

Plaintiffs work at the Restaurant as waitresses, bartenders, and busboys, and claim that they regularly work more than 40 hours per week but are not paid overtime compensation. (Id. ¶ 5)  Plaintiffs further allege that Defendants improperly take their tips and make deductions in violation of federal and state labor laws and wage orders.  (Id.)  Plaintiffs also allege that Defendants violated Title VII, the New York State Human Rights Law, and the New York City Human Rights Law by engaging in and permitting sexual harassment of Plaintiffs and other female employees, and by creating a hostile work environment, and permitting such an environment to exist during the period of Plaintiffs' employment at the Restaurant.  (Id.)

The FAC names as defendants Pasquale's DaMarino's Inc., Pasquale Marino, and five other individuals described as "officers, directors, managers and/or shareholders who had operational control of [the Restaurant]" during the relevant time period.  (Id. ¶ 11)

Plaintiffs have moved for a default judgment on all claims and as to all Defendants, and Glenn L. Cavanagh has moved to withdraw as counsel for the Defendants.  For the reasons stated below, Plaintiffs' motion for a default judgment will be granted in part, and Cavanagh's motion to withdraw will be granted.

## BACKGROUND

Plaintiffs[1] filed their Complaint on March 26, 2010 (Dkt. No. 1), alleging claims for unpaid overtime wages and retaliatory discharge against Defendants Pasquale's DaMarino's

---

[1] The named plaintiffs are Genesis Wilson, Aliaksandra Kulesh, Natalia Zemtsova, Yuliya Synyuk, Tatiana Lisovskaya, and Mohammed Moin Uddin.  Pursuant to the Court's approval of Plaintiffs' proposed Notice of Pendency of a collective action under the FLSA (see Dkt. No. 103), Plaintiffs circulated a Notice of Pendency.  The following additional individuals have filed

Inc., Pasquale Marino, Izabela Marino, Peter Rossingnuolo, Craig Perrry, Giancarlo Montesarchi, and John Doe a/k/a Salvatore.  (Id.)  On June 8, 2010, Plaintiffs filed an Amended Complaint that added claims for, inter alia, sexual harassment, sex discrimination, and hostile work environment.  (Dkt. No. 13)  Defendants filed their answer on June 15, 2010.  (Dkt. No. 14)

The operative complaint is now the Fourth Amended Complaint ("FAC"), which was filed on April 29, 2011.  (Dkt. No. 106)  Defendants answered the FAC on June 2, 2011, asserting counterclaims and a third-party complaint.  (Dkt. No 107)[2]

As discussed in detail below, Defendants have repeatedly, and in violation of court order, changed counsel, and thereby completely disrupted the proceedings for more than two years.  They have not responded to Plaintiffs' discovery requests, have disobeyed the Court's discovery orders, have failed to attend court conferences – despite court order – and have ignored other orders, including orders to show cause why they should not be sanctioned. Defendants have also made misrepresentations to the Court.  Defendants' repeated retention and firing of their counsel – resulting in five different firms appearing in this action on behalf of Defendants – has been part of a deliberate strategy to derail these proceedings and make any recovery by Plaintiffs practically impossible.

Defendants' first attorney was Albert Breud, III.  Breud appeared on April 20, 2010, on behalf of all Defendants, and he represented the Defendants until January 3, 2011. (Dkt. No. 108)  The Defendants failed to pay Mr. Breud, however (see Jan. 4, 2011 Popescu Ltr.

---

Consents to Sue to become party plaintiffs in this matter (Dkt. No. 138):  Ksenia Artates, Abdoulaye Ndiaye, Santiago Ortiz, and Abigail Hennessy.

[2]  By letter dated December 27, 2011, Defendants withdrew all counterclaims (Dkt. No. 173), and on January 24, 2012, Defendants' counterclaims were dismissed.  (Dkt. No. 142)

(Dkt. No. 71) at 2), and on January 3, 2011, Robert Popescu of the law firm Popescu, Iosepovivi LLP replaced him. (Dkt. No. 70)  This substitution caused six months' delay, because Breud asserted a retaining lien over the case files, claiming that Defendants owed him many thousands of dollars in legal fees. (Dkt. No. 108)  The Court sought briefing on the issue, and ultimately ordered Breud to turn over his case files to Defendants' then current lawyer, finding that retaining liens are rarely granted in cases brought under federal statutes that contain fee-shifting provisions. (Id.)

During the dispute over Breud's case files, Defendants replaced Popescu with another lawyer, Glenn L. Cavanagh of Cavanagh & Associates, P.C.  That substitution took place on March 11, 2011. (Dkt. No. 89).  At a pre-trial conference on April 5, 2011, the Court warned Defendants that it would tolerate no more substitutions of counsel:

> I don't want any further delay in this case.  And, Mr. Cavanagh, you should instruct your client that I have no more tolerance for jockeying around here.  We are on a third set of lawyers.  It has been incredibly disruptive.  We have lost a year, in large part because of the jerking around between counsel.  That has to stop.  And if Mr. Marino has any further thoughts about changing counsel, this case will proceed with him on a pro se basis.

(April 5, 2011 Tr. at 25)

At the April 5, 2011 conference, Plaintiffs' counsel detailed Defendants' refusal to properly respond to document requests and interrogatories. (Id. at 8)  Plaintiffs' counsel also complained that Pasquale Marino had not appeared at his scheduled deposition, claiming that he had contracted bronchitis. (Id. at 9)  However, on "the days leading to the date of his deposition, and subsequently, Mr. Marino was observed in the restaurant not exhibiting any form of any malady let alone bronchitis." (Id.)

4

In an April 6, 2011 order, the Court directed the parties to submit letters to the Court outlining the remaining necessary discovery. (Dkt. No. 100) Defendants' delays in responding to Plaintiffs' discovery demands continued, however. At a July 7, 2011 conference, the Court ordered Defendants to comply with all of Plaintiffs' outstanding discovery demands by July 21, 2011. (July 7, 2011 Tr. at 30-31)

Defendants did not comply with the Court's discovery order, however, and in an October 12, 2011 letter, Plaintiffs moved for a second order compelling Defendants to respond to outstanding discovery requests. (Wisniewski Decl. (Dkt. 159) ¶ 17; Exh. 11) Plaintiffs' counsel's twenty-page submission documents 18 months of effort by Plaintiffs' counsel to move discovery forward, as well as Defendants' consistent refusal to produce relevant documents. (Id.)

On January 27, 2012, in flagrant violation of the Court's directive that no additional substitutions of counsel be made, a lawyer named Lorenzo Lugara sent a letter to Cavanagh stating that he had been retained to represent Defendants Pasquale Marino, Izabela Marino, Salvatore Abbate and Pasquale DaMarino's, Inc. Lugara instructed Cavanagh to do no more work on this case. (Dkt. No. 174 at 9) On January 30, 2012, Cavanagh submitted executed substitution of attorney forms for all Defendants. (Dkt. No. 174 at 1)

In a February 27, 2012 letter to the Court, Cavanagh stated that Defendants Pasquale Marino, Izabela Marino, Salvatore Abbate and Pasquale DaMarino's, Inc. had told him that they had retained Lorenzo Lugara to represent them. (Cavanagh Cert. (Dkt. No. 170-1) ¶¶ 18-21) As with Breud, Cavanagh represented that the Defendants had refused to pay him for the legal services he had rendered. (Id.)

On February 29, 2012, the Court received a letter from Lugara stating that he had been retained by Defendants Pasquale Marino, Izabela Marino, Salvatore Abbate and Pasquale DaMarino's, Inc. (Dkt. No. 175)  Lugara stated that the Defendants no longer had confidence in Cavanagh, and that Cavanagh and all the prior lawyers in the case had taken advantage of the Defendants because they speak only Italian. (Dkt. No. 175)  A video submitted by Plaintiffs' counsel shows Marino speaking English quite fluently, however. (See Wisniewski Reply Affidavit in Support of Plaintiffs Motion for Preliminary Injunction (Dkt. No. 38); Exh. 11)

On April 5, 2012, the Court ordered that all Defendants and their attorney, Glenn Cavanagh, appear at a pre-trial conference on April 16, 2012. (Dkt. No. 145)  Neither the Defendants nor counsel for the Defendants appeared. (Dkt. No. 153)  On April 24, 2012, the Court received a letter from yet another attorney – Andrew Risoli – the fifth attorney to appear in the case – representing that he had been retained as counsel for Defendants. (Dkt. No. 177)

On April 27, 2012, the Court issued an Order to Show Cause why Defendants should not be sanctioned pursuant to Fed. R. Civ. P. 16(f) for their failure to appear at the April 16, 2012 conference. (Dkt. No. 153))  The show cause order had a return date of May 4, 2012. (Id.)  The Defendants made no submission. (Dkt. No. 154)

On June 4, 2012, the Court ordered Plaintiffs to file a motion for default judgment by June 13, 2012. (Id.)  The Court ordered any opposition papers to be filed by June 20, 2012. (Id.)  The Court set a hearing for June 26, 2012. (Id.)  After several extensions, (Dkt. Nos. 155, 156), Plaintiffs filed a motion for default judgment on July 3, 2012. (Dkt. No. 157).  Defendants

6

filed an opposition to the motion for a default judgment[3] (Dkt. No. 161), and the Court held a hearing on Plaintiffs' application for a default judgment on July 20, 2012.

At the July 20, 2012 hearing, the Court denied Lugara and Risoli's separate applications to appear on behalf of Defendants:

> I might say it's entirely unclear to me who defendants are seeking to have represent them . . . . I cannot allow this case to be disrupted any further by substitutions of counsel. I made clear more than a year ago, when Mr. Cavanagh came into the case as the third lawyer for defendants, that there would be no further changes to counsel in light of the disruption that the changes in counsel has already caused. And I made clear that defendants' only option going forward would be to proceed pro se in the event that they couldn't proceed with Mr. Cavanagh.

(July 20, 2012 Tr. at 6) As to Lugara, the Court found that his "letter appears to have been sent in bad faith, given that it alleged that defendants' prior attorneys took advantage of them because of their inability to speak English. That appears to have been a false assertion." (Id.)

The Court also noted that it had

> received no satisfactory explanation for the defendants' failure to appear at the April 16, 2012 conference or to respond to the April 27, 2012 order to show cause. I received a July 5, 2012 letter from Mr. Cavanaugh apologizing for not responding to the Court's prior orders saying that he has not been receiving notifications from Pacer. I can't imagine why this would be so. But assuming arguendo it is so, Mr. Cavanaugh had an obligation to keep track of developments in the case until he was relieved as counsel.

(Id. at 6-7)[4]

---

[3] The opposition brief was filed by Risoli. Because Cavanagh remained counsel of record, Risoli had no right to file papers on Defendants' behalf. Nonetheless, this Court has considered the opposition brief in ruling on Plaintiffs' application for a default judgment.

[4] Cavanagh has offered conflicting explanations for his failure to appear. At the July 20, 2012 hearing, he said that "we had server issues. The building we were in, we lost all power lines, information lines. It took us almost a month and a half to get back. . . . (July 20, 2012 Tr. at 13-14). Cavanagh now states, however, that his Pacer/ECF account was "hijacked and ultimately frozen by PACER for excessive usage." (July 24, 2012 Cavanagh Cert. (Dkt. No. 170-1) at ¶ 22)

On July 25, 2012, Cavanagh filed a motion to withdraw as counsel. (Dkt. No. 165) The motion was terminated because it was improperly filed. (See July 26, 2012 docket entries). Cavanagh properly filed his motion to withdraw on December 4, 2012. (Dkt. No. 169).

## DISCUSSION

### I. PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT

As is obvious from the procedural history recounted above, Defendants have shown nothing but contempt for this Court. They have refused to comply with discovery orders, refused to produce relevant documents, refused to appear at deposition, refused to attend court conferences ordered by the Court, failed to respond to show cause orders – even those warning that sanctions might be imposed – made misrepresentations to the Court, and have repeatedly – and in violation of court order – disrupted these proceedings by firing and retaining new counsel.

#### A. Sanctions Under Fed. R. Civ. P. 16(f) and 37(b)

Fed. R. Civ. P. 37(b)(2)(A)(ii)-(vii) authorizes courts to impose a variety of sanctions – including "striking pleadings in whole or in part" and "rendering a default judgment against [a] disobedient party" – where a party has "fail[ed] to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A)(ii)-(vii). Fed. R. Civ. P. 16(f) authorizes courts to "issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii)," where a party or his attorney has "fail[ed] to appear at a scheduling or other pretrial conference" or has "fail[ed] to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f).

---

In any event, Andrew Risoli – the Defendants' fifth attorney – appeared in this action before the April 27, 2012 order to show cause was issued. (See Dkt. No. 177)

While these rules provide for a range of sanctions, "the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." Sieck v. Russo, 869 F.2d 131, 134 (2d Cir. 2009) (citation omitted). The imposition of severe sanctions is necessary to avoid a situation where courts "encourage dilatory tactics, and compliance with discovery orders . . . come[s] only when the backs of counsel and the litigants [are] against the wall." Id. (citation omitted). In Sieck, for example, the Second Circuit upheld the district court's decision to enter a default judgment against the defendants after they failed to appear at their depositions. Id.

The Second Circuit has identified a number of factors that courts should consider in imposing sanctions under the Federal Rules. "These include: '(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance.'" Agiwal v Mid Is. Mortg. Corp., 555 F.3d 298, 302-03 (2d Cir. 2009) (quoting Nieves v. City of New York, 208 F.R.D. 531, 535 (S.D.N.Y. 2002) (citing Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 852-54 (2d Cir. 1995)).

B.    **The Court's Inherent Power to Impose Sanction**

In addition to the sanctions authorized under the Federal Rules, federal courts have the inherent power to sanction a party for conduct that constitutes an abuse of the judicial process. See Chambers v. NASCO, Inc., 501 U.S. 32, 46 (1991); Hazel-Atlas Glass Co, v. Hartford-Empire Co., 322 U.S. 238, 246 (1944) ("we find it surpassingly difficult to conceive of a more appropriate use of a court's inherent power than to protect the sanctity of the judicial

process"). The Second Circuit has recognized that "[a] court has the inherent power to supervise and control its own proceedings and to sanction . . . a litigant for bad-faith conduct." Sussman v. Bank of Israel, 56 F.3d 450, 459 (2d Cir. 1995). However, the court must use "restraint and discretion" when ordering sanctions against a party pursuant to its inherent powers, because the court exercises its inherent powers free from legislative oversight. See Chambers, 501 U.S. at 43-44.

Courts' inherent powers include the power to dismiss a party's claims and to strike a party's pleadings for failure to obey court orders. See, e.g., Fonar Corp. v. Magnetic Resonance Plus, Inc., 935 F. Supp. 443, 448 (S.D.N.Y. 1996) ("under this court's inherent authority . . . the court [may in its discretion] . . . impose the particularly severe sanction of dismissal of a suit for improper litigation conduct" (quotation omitted)). A court's decision to strike a defendant's pleadings is tantamount to entering judgment against that party. Accordingly, a court must proceed with great restraint and caution in determining whether there are sufficient grounds to justify such an extreme sanction. Moreover, the Second Circuit has articulated a strong preference for resolving disputes on the merits. See Marfia v. T.C. Ziraat Bankasi, New York Branch, 100 F.3d 243, 248-49 (2d Cir. 1996).

Cases in which courts have struck pleadings, or entered judgment against a party, have generally involved intentional misconduct that has materially and negatively affected the resolution of an action. See Cerruti 1881 S.A. v. Cerruti, Inc., 169 F.R.D. 573 (S.D.N.Y. 1996) (production of fraudulent records in response to discovery demands); Lediju v. New York City Department of Sanitation, 173 F.R.D. 105 (S.D.N.Y. 1997) (willful failure to obey pretrial scheduling orders); Hall v. Flynn, 829 F. Supp. 1401 (N.D.N.Y. 1993) (failure to appear at discovery conference); Turner v. Hudson Transit Lines, Inc., 142 F.R.D. 68, 73 (S.D.N.Y. 1991)

(destruction of evidence); Galt v. Sealand Services, Inc., No. 87–CV–1038, 1989 WL 69907, at *1 (N.D.N.Y. June 13, 1989) (failure to comply with court order to obtain new counsel within certain time period).

The Second Circuit has cautioned that "'dismissal is "a harsh remedy to be utilized only in extreme situations."'" Marfia, 100 F.3d at 249; Colon v. Mack, 56 F.3d 5, 7 (2d Cir. 1995) (quoting Jackson v. City of New York, 22 F.3d 71, 75 (2d Cir. 1994) (quoting Harding v. Federal Reserve Bank of New York, 707 F.2d 46, 50 (2d Cir. 1983) (quoting Theilmann v. Rutland Hosp., Inc., 455 F.2d 853, 855 (2d Cir. 1972))))). The Circuit has also observed that "default judgments a[re] '"the most severe sanction which the court may apply."'" Id. (quoting Securities & Exchange Comm'n v. Management Dynamics, Inc., 515 F.2d 801, 814 (2d Cir.1975) (quoting Trans World Airlines, Inc. v. Hughes, 332 F.2d 602, 614 (2d Cir.1964))).

The Second Circuit has acknowledged, however, that dismissal or default may be an appropriate remedy where there is a showing of "willfulness, bad faith, or fault." West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999); see also Jones v. NFTA, 836 F.2d 731, 734 (2d Cir.1987) (applying "willfulness, bad faith, or fault" test; upholding district court order dismissing action based on failure to comply with pre-trial production order).

Because dismissal or a default judgment "is a 'drastic remedy,' it 'should be imposed only in extreme circumstances, usually after consideration of alternative, less drastic sanctions.'" West, 167 F.3d at 779 (quoting John B. Hull, Inc. v. Waterbury Petroleum Prods., Ins., 845 F.2d 1172, 1176 (2d Cir. 1988); Dodson v. Runyon, 86 F.3d 37, 39 (2d Cir. 1996) ("we have repeatedly noted that one of the factors that should inform a trial court's decision is the suitability of lesser sanctions"); Chira v. Lockheed Aircraft Corp., 634 F.2d 664, 665 (2d Cir.

1980) (judge should impose extreme sanctions "only when he is sure of the impotence of lesser sanctions")

    C.    <u>Analysis</u>

In determining an appropriate sanction for Defendants' misconduct, the Court has considered, <u>inter alia</u>, whether the misconduct was willful, the reasons for the non-compliance, the duration of the misconduct, whether the Defendants were warned about the consequences of their misconduct, and the likely efficacy of sanctions less severe than a default judgment. <u>See</u> <u>Agiwal</u>, 555 F.3d at 302-03. The Court has also considered whether the Plaintiffs have made out a <u>prima facie</u> case of liability as to any cause of action, and whether Defendants have demonstrated that they have a meritorious defense. <u>See</u> <u>New York v Green</u>, 420 F.3d 99, 104 (2d Cir. 2005); <u>Davis v. Musler</u>, 713 F.2d 907, 916 (2d Cir. 1983)

The Court concludes that Defendants' misconduct has been willful, that it has continued for more than two years, that no valid reason for the conduct has been offered, that the Defendants were warned about the consequences of their misconduct, and that a sanction less severe than a default judgment is unlikely to be efficacious.

As discussed above, Defendants have deliberately obstructed these proceedings in a variety of ways, including by refusing to produce discovery or to appear at deposition, failing to attend court conferences, and failing to respond to orders to show cause. The most disruptive aspect of Defendants' misconduct, however, has been their frequent retention and dismissal of lawyers. No credible explanation for this conduct has been offered. While Defendants now seek to blame Cavanagh for their failure to attend court conferences and respond to orders to show cause, responsibility for the repeated retention and dismissal of lawyers rests squarely on the Defendants. Given this fact, that this behavior has continued for more than two years, and that

Defendants' misconduct continued even after the Court warned Defendants that no further change in counsel would be tolerated, the Court concludes that no sanction short of a default judgment is likely to be efficacious.  See Harvic Int'l Ltd. v. Galaxy Fashions, Inc., No. 03 Civ. 3429(RLE), 2005 WL 1338035, at *2 (S.D.N.Y. June 3, 2005) (finding that "[n]o lesser sanction present[ed] itself" where defendant had failed to appear for a scheduled court conference and had "deliberately refused to cooperate in discovery"); Leon B. Rosenblatt Textiles, Ltd. v. Griseto, No. 96 Civ. 2925(JSM), 1999 WL 739532, at *4 (S.D.N.Y. Sept 22, 1999)(no lesser sanction than default was appropriate where defendant has disobeyed the Court's order for at least a year, including failing to appear at court-ordered conferences).

With respect to Plaintiffs' wage and overtime claims under the New York Labor Law and FLSA, Plaintiffs have made out a prima facie case of liability, while Defendants Pasquale's DaMarino's, Inc. ("DaMarino's) and Pasquale Marino have not demonstrated that they have a meritorious defense.  Plaintiffs have offered declarations and pay stubs demonstrating that they were not paid in compliance with the Labor Law or the FLSA.  (See Wilson Decl. (Dkt. No. 34 at 19)) ("I worked over forty hours a week and never got paid even the minimum wage, let alone overtime rate for the hours I worked"; "the hourly wage I was paid at DaMarino Restaurant was even below the tip-credit minimum wage"); (Synyuk Decl. (Dkt. No. 34 at 34)) ("I still did not receive any higher overtime rate for the hours I worked in excess of forty . . . in a given week"); (Wisniewski Decl. (Dkt. No. 159), Exhs. 20-23); (Luberadzka Decl. (Dkt. No. 34 at 3)) ("my per hour rate never exceeded two dollars . . . per hour, which evidently was in violation of the so-called tip-credit minimum wage.")

In response, DaMarino's and Marino have offered only a declaration from Marino saying, as to one of the plaintiffs, that she was "paid properly." (Oct.1, 2010 Marino Decl. (Dkt. No. 161-2) at ¶ 42)  This is not sufficient to demonstrate a meritorious defense.

In order to make a sufficient showing of a meritorious defense, a defendant need not establish his defense conclusively, see, e.g., Davis v. Musler, 713 F.2d at 916, but he must present evidence of facts that, "if proven at trial, would constitute a complete defense." Enron Oil Corp. v. Diakuhara, 10 F.3d at 98 (citations omitted).  DaMarino's and Marino have not met this standard as to Plaintiffs' wage and overtime claims under the New York Labor Law and the FLSA.  Accordingly, a default judgment will be entered against Defendants Pasquale's DaMarino's, Inc. and Pasquale Marino on the Third, Fourth, Fifth, and Sixth Claims for Relief in the Fourth Amended Complaint.

Plaintiffs' motion for a default judgment will otherwise be denied.  Plaintiffs have not demonstrated that any other Defendant is an "employer" within the meaning of the Labor Law or the FLSA.  Marino represents, in his declaration, that he was the only manager at DaMarino's, and that only he had the power to hire and fire employees and to make other personnel decisions.  (Oct. 1, 2010 Marino Decl. (Dkt. No. 161-2) ¶¶ 1, 7); see Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999) (stating that factors to consider in making "employer" determination include whether an individual "'(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records'" (quoting Carter v. Dutchess Comm. Coll., 735 F.2d 8, 12 (2d Cir. 1984)).  Plaintiffs have not refuted this assertion.

Plaintiffs have likewise not demonstrated that they are entitled to a default judgment on their retaliation, sexual harassment, and hostile work environment claims. Marino asserts in his declaration that all of the named plaintiffs voluntarily quit, and he likewise denies any act of sexual harassment. (See Oct. 1, 2010 Marino Decl. (Dkt. No. 161-2) at ¶¶ 32, 37, 42, 48, 53, 56, 60-61, 77, 83).

In sum, Plaintiffs' motion for a default judgment will be granted as to Defendants Pasquale's DaMarino's, Inc. and Pasquale Marino on the Third, Fourth, Fifth, and Sixth Claims for Relief in the Fourth Amended Complaint, and will otherwise be denied.

## II. CAVANAGH'S MOTION TO WITHDRAW

Glenn L. Cavanagh, Defendants' third attorney, has moved to withdraw as counsel to Defendants. (Dkt. No. 169) Cavanagh contends that Defendants informed him on January 21, 2012, that they would no longer accept any communications from him and that they were retaining a new lawyer. Cavanagh also claims that the Defendants have not paid his fees. (Cavanagh Cert. (Dkt. No. 170-1) ¶¶ 3, 5-6, 18)

Withdrawal of counsel is governed by Local Civil Rule 1.4, which states:

> An attorney who has appeared as attorney of record for a party . . . may not withdraw from a case without leave of the Court granted by order. Such an order may be granted only upon a showing by affidavit or otherwise of satisfactory reasons for withdrawal or displacement and the posture of the case, including its position, if any, on the calendar.

S. & E.D.N.Y. R. 1.4. "Whether to grant or deny a motion to withdraw as counsel 'falls to the sound discretion of the trial court.'" Stair v. Calhoun, 722 F. Supp. 2d 258, 264 (E.D.N.Y. 2010) (quoting In re Albert, 277 B.R. 38, 47 (Bankr. S.D.N.Y. 2002)).

"'[T]he existence of an irreconcilable conflict between attorney and client is a proper basis for the attorney to cease representing his client.'" United States v. Lawrence

15

Aviation Industries, No. 06 CV 4818, 2011 WL 601415, at *1 (E.D.N.Y. Feb. 11, 2011) (quoting Casper v. Lew Lieberbaum & Co., No. 97 Civ. 3016, 1999 WL 335334, at *5 (S.D.N.Y. May 26, 1999)); see also Munoz v. City of New York, No. 04 Civ. 1105, 2008 WL 2843804, at *1 (S.D.N.Y. July 15, 2008) ("The law firm has shown good cause for withdrawal based on the lack of communication with the plaintiff and the acrimonious relationship that has developed between the law firm and the plaintiff.").

It is also well-settled that non-payment of fees is a valid basis for the Court to grant counsel's motion to withdraw, especially where, as here (see Dkt. No. 171), the motion is not opposed.  E.g., Allstate Insurance Co. v. Administratia Asigurarilor de Stat, 86 Civ. 2365(DNE), 1993 WL 119708 at *2-3 (S.D.N.Y. April 15, 1993); McGuire v. Wilson, 735 F. Supp. 83, 84-85 (S.D.N.Y. 1990); Farr Man Coffee, Inc. v. M/S Bernhard, 87 Civ. 1267(TPG), 1989 WL 31529 at *1 (S.D.N.Y. March 28, 1989).

Given that Defendants have refused to communicate with Cavanagh or to pay his fees, his motion to withdraw as counsel will be granted.

CONCLUSION

For the reasons stated above, Plaintiffs' motion for a default judgment is granted as to Defendants Pasquale's DaMarino's, Inc. and Pasquale Marino on the Third, Fourth, Fifth, and Sixth Claims for Relief in the Fourth Amended Complaint, but is otherwise denied. Defendants' Answer to the Fourth Amended Complaint is stricken as to Defendants Pasquale's DaMarino's, Inc. and Pasquale Marino on the Third, Fourth, Fifth, and Sixth Claims for Relief in the Fourth Amended Complaint, and this opinion and order constitutes an order of default on

these causes of action as to these defendants. This case will be referred to the assigned Magistrate Judge for an inquest on damages concerning these claims.

Glenn Cavanagh's motion to withdraw as counsel is granted. Cavanagh is ordered to provide Defendants with copies of this Opinion and Order and to supply the Court with current addresses and telephone numbers for all Defendants.

The Clerk of the Court is directed to terminate the motions (Dkt. Nos. 157 and 169).

Dated: New York, New York
      March 24, 2013         SO ORDERED.

_____
Paul G. Gardephe
United States District Judge