ROBERT WISNIEWSKI P.C.            225 BROADWAY, SUITE 1020 • NEW YORK, NY 10007
ATTORNEYS-AT-LAW            TEL: (212) 267-2101 • FAX: (212) 587-8115
           WEBSITE: www.rwapc.com

August 2, 2018

Hon. Paul G. Gardephe, U.S.D.J.
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007
    *VIA ECF*

      Re:    ***Wilson et al. v. Pasquale's Damarino's, Inc. et al.,***
              **Docket No.: 10-cv-2709 (PGG) (RWL)**

Dear Judge Gardephe:

      This firm represents the Plaintiffs in the above-referenced matter. Plaintiffs write in opposition to the request by Defendants Fratelli Italiani, LLP ("Fratelli") and Kavita ("Kay") Jagnarine ("Jagnarine") (Fratelli and Jagnarine collectively referred to herein as "Jagnarine Defendants") for a pre-motion conference regarding the Jagnarine Defendants' proposed motion to dismiss Plaintiffs' Sixth Amended Complaint ("Complaint"). For the reasons stated herein, Plaintiffs respectfully request that the Court deny leave to file the proposed motion.

      Your Honor surely remembers the substantive and procedural facts of this case. Briefly restated, Plaintiffs worked for the owners of DaMarino Restaurant ("Restaurant") as servers, bartenders, and other staff, and were not paid all of their tips, were not paid a rate above minimum wage, and/or were not paid at the proper time-and-a-half rate for their overtime hours. In addition, as further detailed in the Complaint, several of the Plaintiffs were serially sexually harassed by one of the owners of the Restaurant, Pasquale Marino ("Pasquale").

      Despite the severity of the sexual harassment allegations, this case would still be relatively pedestrian were it not for the conduct of the defendants. As Your Honor undoubtedly recalls, Pasquale and Defendants Izabela Marino ("Izabela"), Peter Rossignuolo, Craig Perri ("Perri"), Giancarlo Montesarchio, Salvatore Abbate, Fred Marino (collectively "Original Individual Defendants"), and the corporate entities they controlled (Pasquale's DaMarino's, Inc. ("PDI") and 220 West Restaurant Corp. ("220") (collectively, "Original Corporate Defendants")) (Original Individual Defendants and Original Corporate Defendants collectively referred to herein as "Original Defendants") engaged in a practice of retaining and then discharging counsel as a delaying tactic. In all, the Original Defendants were represented by seven different law firms over the first five years of litigation, and the seventh firm – Epstein Becker & Green – would have left as well had Your Honor not denied its motion to withdraw. Pasquale and PDI were sanctioned for this conduct in the form of a default judgment being entered against them; Plaintiffs sought additional sanctions against the other Original Defendants for continuing this tactic after the sanctions were issued.

1

Even after the sanctions and attempted withdrawal of their seventh set of attorneys, the Original Defendants kept attempting to evade liability. Pasquale and Izabela filed for personal bankruptcy. As detailed in Paragraphs 204-19 of the Complaint, the Original Individual Defendants, along with family members Giuseppe Marino and Jagnarine (collectively, "Successor Individual Defendants") (Original Individual Defendants and Successor Individual Defendants collectively referred to herein as "Individual Defendants"), created Fratelli and Piatti Italiani LLC ("Piatti"), and transferred assets from 220 to these newly-formed entities of which the Individual Defendants were owners and members. Defendants' conduct in this case has been so unbelievable that when Plaintiffs first heard that Pasquale died in 2015, they seriously considered sending me to Reggio di Calabria in Italy whence he hailed and where he was buried to ensure that such a serious event was not yet another charade orchestrated to escape liability.

In light of the foregoing, it ironic that the Jagnarine Defendants have highlighted that this is a "*2010* case" in the present application, as if the delay has been due to Plaintiffs' inaction rather than the inappropriate and previously-sanctioned behavior of Defendants. Suffice it to say that Defendants have not earned the benefit of the doubt from this Court. And I hope that the Jagnarine Defendants' counsel got their retainer paid up front.

With that background in mind, we can turn to the arguments at hand. The Jagnarine Defendants appear to argue that Plaintiffs have not pled sufficient facts to demonstrate that they (the Jagnarine Defendants) are successors in interest to the Original Defendants, in that they did not expressly assume the liabilities of the Original Corporate Defendants in purchasing their assets, they did not have notice of the existing litigation, and that Plaintiffs' detailed allegations of fraudulent conveyance are "conclusory."[1] None of these arguments is worth presenting to the Court in a fully-briefed motion to dismiss.

First, to the extent the Jagnarine Defendants seek to argue facts other than as pled in the Complaint, such arguments are improper on a motion to dismiss. Under the familiar standard, on a motion to dismiss, the Court must "accept the plaintiff's allegations as true" and "draw all reasonable inferences in favor of the plaintiff." ***Tommy Lee Handbags Mfg. v. 1948 Corp.***, 971 F. Supp. 2d 368, 373 (S.D.N.Y. 2013) (*quoting **Kassner v. 2nd Ave. Delicatessen Inc.***, 496 F.3d 229, 237 (2d Cir. 2007)). Thus, for the purposes of their anticipated motion, the Jagnarine Defendants must – whether they agree or not – accept the following facts:

> The Individual Defendants – including Jagnarine – formed Piatti and served as its members, and shifted assets from 220 to Piatti for no or nominal consideration to avoid creditors (Complaint ¶¶209-10);

> The Individual Defendants – again, including Jagnarine – continue to operate Original Corporate Defendant PDI as the nominal employer, but run profits through Piatti and

---

[1] Although it is not clear, the Jagnarine Defendants may additionally be arguing that Plaintiffs did not plead an independent cause of action for successor liability. However, neither federal nor New York state law recognizes successor liability as an independent cause of action, but rather a theory of liability upon which other causes of action may be premised. *See, e.g., **Syracuse v. Loomis Armored US, LLC***, 900 F. Supp. 2d 274, 287 (N.D.N.Y. 2012).

other companies and leave PDI undercapitalized to avoid creditors (¶210);

After a judgment in a related matter was upheld on appeal, the Individual Defendants formed Fratelli and served as its members, and again shifted assets from Piatti to Fratelli for no or nominal consideration to avoid creditors (¶¶212-13);

Jagnarine and her son John Khan, who is the stepson of Original Individual Defendant Perri (upon information and belief Jagnarine and Perri are married or have a similar relationship) manage the Restaurant on Perri's behalf (¶210); and

At all relevant times the Restaurant has kept the same location, the same name, the same menu, the same executive chef, the same ambiance, much of the same kitchen personnel, the same supervisory personnel, and has been owned, managed, and/or controlled by the Individual Defendants – indeed, the Restaurant's website states that it maintains the same style, cuisine, and ambience of Original Individual Defendant (an erstwhile ladies' man) "chef Pasquale" (¶¶216-23).

Not only must the Jagnarine Defendants accept these and other alleged facts, but the relationship and familial allegations undermine Jagnarine's credibility that she did not have notice of the lawsuit at the time she and Fratelli allegedly purchased the Restaurant. Indeed, while discovery has been limited in this matter due to Defendants' procedural misconduct and as to Fratelli and Jagnarine has yet to occur, a short Internet search has turned up evidence that Perri was still the proprietor of the Restaurant after the sale. The attached newsletter2 (**Exhibit 1**) announces a delightful evening at the Restaurant in September 2015 – two months after Jagnarine claims she purchased the Restaurant independent of any of the other Individual Defendants – and gives its thanks "to the generosity of _hosts Craig Perri and Kay Jagnarine_." Emphasis mine. The newsletter also identifies Perri as the "Proprietor" of the Restaurant in a photo caption on Page 4.

There is other public information that Jagnarine and her husband or concubine Perri have been owners of the Restaurant until today. In responding to MJ Lehrburger's directive to provide the elusive Mr. Perri's address to which court documents could be sent (and which ultimately turned out to be Jagnarine's house on Long Island), I came across Facebook entries in which friends of Mr. Perri's refer to DaMarino as his restaurant and Mr. Perri in the November 26, 2017 entry on his Facebook refers to the Restaurant as "my restaurant". _See_ my February 16, 2018 status report to MJ Lehrburger at page 2, attached as **Exhibit 2.**

Jagnarine, who asserts in this Court that she purchased the Restaurant in July 2015 without knowledge of the litigation, and Perri, one of the original defendants named in this litigation in 2010, publicly holding themselves out two months as well as over two years after the "sale" as hosts and proprietors of the Restaurant. As a comedian might say, I can't make this stuff up.

---

2 Located at http://encorecommunityservices.org/wp-content/uploads/2015/06/2015_Newsletter_%20FALL-WINTER.pdf (last accessed August 1, 2018).

With the alleged facts established, it is clear that Plaintiffs have met their pleading requirement to establish successor liability. While the Second Circuit has not yet clarified the issue, courts in the Southern District have predominantly applied the "substantial continuity" test to ascertain successor liability in FLSA and other employment cases. *See, e.g.,* ***Xue Ming Wang v. Abumi Sushi, Inc.***, 262 F. Supp. 3d 81, 88 (S.D.N.Y. 2017) (collecting cases). This approach is consistent with holdings from the Third, Seventh, and Ninth Circuits, and at least one Eastern District Court. *See* ***Thompson v. Real Estate Mortg. Network***, 748 F.3d 142, 151-52 (3d Cir. 2014); ***Teed v. Thomas & Betts Power Sols., L.L.C.***, 711 F.3d 763, 766-67 (7th Cir. 2013); ***Steinbach v. Hubbard***, 51 F.3d 843, 845 (9th Cir. 1995); ***De Ping Song v. 47 Old Country, Inc.***, 975 F. Supp. 2d 288, 296 (E.D.N.Y. 2013).

Under the substantial continuity test, a court considers nine (9) factors in determining whether successor liability is present: 1) whether the successor company had notice of the charge or pending lawsuit prior to acquiring the business or assets of the predecessor; 2) the ability of the predecessor to provide relief; 3) whether there has been a substantial continuity of business operations; 4) whether the new employer uses the same plant; 5) whether it uses the same or substantially the same work force; 6) whether it uses the same or substantially the same supervisory personnel; 7) whether the same jobs exist under substantially the same working conditions; 8) whether it uses the same machinery, equipment, and methods of production; and 9) whether it produces the same product.

***Bautista v. Beyond Thai Kitchen, Inc.***, 2015 U.S. Dist. LEXIS 124454, at *13 (S.D.N.Y. Sep. 17, 2015) (*citing* ***Musikiwamba v. ESSI, Inc.***, 760 F.2d 740, 750 (7th Cir. 1985); other citations omitted). No one factor is controlling, and it is not necessary that each factor be met to find successor liability. *Id.* (*quoting* ***E.E.O.C. v. Barney Skanska Constr. Co.***, 2000 U.S. Dist. LEXIS 15713 (S.D.N.Y. Oct. 27, 2000). However, the Southern District has found the first two factors – notice of the lawsuit and ability of the predecessor to provide relief – to be "indispensable" in this determination. ***Xue Ming Wang***, 262 F. Supp. 3d at 91. These considerations are highly factual, which is yet another reason why the anticipated motion to dismiss should not be entertained at this time.

Here, Plaintiffs have clearly pled facts that establish successor liability under this test. Factors 3 through 9 are clearly met, as the Restaurant is more or less unchanged from the time Plaintiffs worked there in terms of location, name, personnel, products, working conditions, and so forth. Moreover, Plaintiffs have clearly pled that the Original Corporate Defendants do not have the means to provide relief on a judgment, and (despite Jagnarine's protestations to the contrary) Plaintiffs have clearly pled (and existing evidence supports the inference) that Jagnarine was well aware of the litigation at the time the assets were purchased.

Although the substantial continuity test is favored in the Southern District for FLSA and employment matters, the Complaint adequately states a basis for the Jagnarine Defendants' successor liability under the common-law test. New York common law recognizes four exceptions upon which successor liability should be imposed: (1) where the buyer expressly assumes the debt; (2) where the transaction was undertaken to defraud creditors; (3) where the transaction constitutes a *de facto* merger; or (4) where the successor is a mere continuation of the

predecessor.  See ***Tommy Lee***, 971 F. Supp. 2d at 378 (*citing **Schumacher v. Richards Shear Co., Inc.***, 59 N.Y.2d 239, 245 (1983); other citations omitted).  While Plaintiffs admittedly have not that the Jagnarine Defendants expressly assumed the debt, the allegations support successor liability based on all of the other 3 factors.

First, the sale to the Jagnarine Defendants clearly represents a *de facto* merger or mere continuation, as these "are so similar that they may be considered a single exception." ***Xue Ming Wang***, 262 F. Supp. 3d at 87 (*quoting **Cargo Partner AG v. Albatrans, Inc.***, 352 F.3d 41, 45 n.3 (2d Cir. 2003)).  Under New York law, "the hallmarks of a *de facto merger include: continuity of ownership; cessation of ordinary business and dissolution of the acquired corporation as soon as possible; assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the acquired corporation; and continuity of management, personnel, physical location, assets and general business operation."* ***Tommy Lee***, 971 F. Supp. 2d at 378 (italics in original) (*quoting **Fitzgerald v. Fahnestock & Co.***, 286 A.D.2d 573, 574 (N.Y. App. Div. 2001)).  Notably, New York law requires only "an allegation of shareholders of the selling corporation hold *even an <u>indirect</u> interest in the assets*." *Id.* (emphasis added) (*citing **In re New York City Asbestos Litig.***, 15 A.D.3d 254, 256 (N.Y. App. Div. 2005).  Thus, the allegation that Perri and/or other Original Individual Defendants continue to directly or indirectly control Fratelli is sufficient to establish the required continuity of ownership.

Moreover, Plaintiffs have clearly pled sufficient facts to support successor liability based on intent to defraud creditors.  As alleged in the Complaint, the Original Individual Defendants conspired with the Successor Individual Defendants to create business entities and transfer assets between them for little or no consideration for the express purpose of evading creditors, leaving PDI as an undercapitalized shell.  Such pleadings are more than sufficient:

> Tommy Lee alleges with adequate specificity the facts of the alleged fraud: (a) Stone II was formed by Orr and Atanasio to frustrate and evade its creditors (Compl. ¶¶ 13, 31, 38-41) and that the public sale was effectuated by a common creditor, R&R, to legitimate the scheme (Compl. ¶¶ 35, 45-48, 64-66).  Therefore, the fraud exception applies and defeats Defendants' motion to dismiss the successor liability claims.

***Tommy Lee***, 971 F. Supp. 2d at 380-81.

Plaintiffs have more than adequately established the basis for successor liability against the Jagnarine Defendants in the Complaint.  Thus, for all of the foregoing reasons, Plaintiffs respectfully request that the Jagnarine Defendants' request for leave to file the proposed motion to dismiss be denied.

Respectfully submitted,

*/s/Robert Wisniewski*
Robert Wisniewski

Enclosures