UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____9/30/18_____

GENESIS WILSON, ALIAKSANDRA
KULESH, NATALIA ZEMTSOVA,
YULIYA SYNYUK, TATIANA
LISOVSKAYA, MOHAMMED MOIN
UDDIN, on behalf of themselves and on
behalf of all others similarly situated, and
KSENIA ARTATES, ABDOULAYE
NDIAYE, SANTIAGO ORTIZ, and
ABIGAIL HENNESSY,

                Plaintiffs,

       - against -

PASQUALE'S DAMARINO'S, INC.,
IZABELA MARINO, PETER
ROSSIGNUOLO a/k/a PETER ROSSI,
CRAIG PERRI, GIANCARLO
MONTESARCHIO, SALVATORE
ABBATE, FRED MARINO, 220 WEST
RESTAURANT CORP., JOSEPH
MARINO a/d/a/ GIUSEPPE MARINO,
KAVITA S. JAGNARINE a/k/a/ KAY
JAGNARINE, PIATTI ITALIANI LLC,
FRATELLI ITALIANI LLC,

                Defendants.

**ORDER**

10 Civ. 2709 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

      In this putative class action, Plaintiffs – former employees of DaMarino

Restaurant in midtown Manhattan – allege sexual harassment, gender discrimination, and wage

violations. Presently pending before the Court is a motion filed by Evan Spelfogel, Esq. and the

law firm Epstein Becker & Green, P.C. ("Epstein Becker") – counsel for certain Defendants –

seeking leave to withdraw as counsel. (Dkt. No. 260) Epstein Becker argues that (1)

communications with Defendants and attorney-client relationships have broken down; (2)

Epstein Becker is owed substantial legal fees; and (3) there exists an actual conflict of interest

that precludes Epstein Becker from providing further representation to any of the Defendants in

this case. (Epstein Becker Br. (Dkt. No. 262) at 9-15)  The motion lacks information necessary for this Court to determine that a breakdown in communication has occurred.  Accordingly, the motion will be denied without prejudice.

## BACKGROUND

This action was filed on March 26, 2010.  (Dkt. No. 1)  Plaintiffs assert claims for (1) breach of contract, (2) quantum meruit, (3) violation of the New York Labor Law, (4) violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., (5) hostile work environment and retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., (6) sexual harassment and retaliation in violation of the New York State Human Rights Law ("NYSHRL"), N.Y. Executive Law § 296, and New York City Human Rights Law ("NYCHRL"), New York City Administrative Code § 8-107, (7) negligent supervision, (8) intentional infliction of emotional distress, and (9) assault and battery.  (Sixth Amended Complaint ("SAC") (Dkt. No. 274) ¶¶ 227-344)

Pasquale Marino – now deceased (id. ¶ 4) – owned Pasquale's DaMarino's, Inc., and Defendant Fred Marino – Pasquale Marino's cousin – owns 220 West Restaurant Corporation, the former leaseholder of the space where DaMarino Restaurant is located. (Cesaratto Decl. (Dkt. No. 246) ¶ 6)  Izabela Marino is Pasquale Marino's wife, Giancarlo Montesarchio is Pasquale Marino's cousin, and Peter Rossignuolo is Montesarchio's brother-in-law.  (Id.)  Craig Perri and Kavita Jagnarine live together in New York and are part owners and operators of Pasquale's DaMarino's, West 220 Restaurant Corp., Piatti Italini, and Fratelli Italini. (SAC (Dkt. No. 274) ¶¶ 1, 14)  Salvatore Abbate was a manager of Pasquale's DaMarino's.  (Id. ¶ 44)  Joseph Marino is a part owner of Pasquale's DaMarino's, West 220 Restaurant Corp., Piatti Italiani, and Fratelli Italiani.  (Id. ¶ 15)

2

Plaintiffs allege that after a jury returned a $2.5 million verdict against Pasquale Marino and Pasquale's DaMarino's, Inc. in a separate case – Mironova v. Pasquale's DaMarino's Inc. et al., 13 Civ. 1663 (TPG) (GWG) (see id. ¶ 205) – Defendants transferred the assets of West 220 Restaurant Corp. – including its liquor license and the lease for the restaurant space – to a newly created corporate entity – Piatti Italiani LLC (id. ¶ 209) – and then to another newly created corporate entity – Fratelli Italiani LLC (id. ¶¶ 212-13) – "with a view to shielding [Defendants'] ownership of DaMarino Restaurant and their significant assets – the liquor license and the lease for the restaurant space." (Id. ¶ 213)

Seven complaints have been filed in this action. The first five complaints named Pasquale Marino, Pasquale's DaMarino's Inc., Izabela Marino, Peter Rossignuolo, Craig Perri, Giancarlo Montesarchio, and Salvatore Abbate as Defendants. (Dkt. Nos. 1, 13, 19, 27, 106)[1] The Fifth Amended Complaint adds Fred Marino and 220 West Restaurant Corp. as Defendants. (Dkt. No. 218) The Sixth Amended Complaint adds Joseph Marino, Kavita Jagnarine, Piatti Italiani, and Fratelli Italiani as Defendants, and removes Pasquale Marino as a defendant, as he is now deceased. (Dkt. No. 274)

Defendants have repeatedly retained lawyers and then not paid them, causing the lawyers to move to withdraw. The repeated withdrawal and replacement of counsel has made it difficult if not impossible for Plaintiffs to pursue their claims. The sorry history of this conduct is set forth below.

Defendants' first attorney in this action was Adam Breud. (Dkt. Nos. 2-7) On July 2, 2010, less than three months after Breud entered a notice of appearance, Jonathan

---

[1] Salvatore Abbate was named as "John Doe a/k/a/ Salvatore" in the original Complaint and the Amended Complaint. (Cmplt. (Dkt. No. 1); Answer to Am. Cmplt. (Dkt. No. 14))

Kirchner joined the case as defense counsel. (Dkt. No. 16) On January 3, 2011, these attorneys were replaced – on consent of the parties and by order of this Court – by Robert Popescu, of Popescu, Iosepovici, LLP. (Dkt. No. 70) Breud withdrew because of a fee dispute. (July 20, 2012 Tr. (Dkt. No. 167) at 2) On March 9, 2011 – approximately three months after Popescu began his representation of Defendants – Defendants filed a motion for Glenn Cavanagh and Jarred Freeman, attorneys of Cavanagh & Associates, P.C., to appear pro hac vice on their behalf. (Dkt. No. 90) This Court granted Defendants' motion on March 11, 2011. (Dkt. No. 91) That same day, Defendants filed an executed substitution of attorney form, replacing Robert Popescu with Glenn Cavanagh. (Dkt. No. 89) On April 14, 2011, this Court so ordered the substitution of counsel. (Dkt. No. 101) The reasons why Mr. Popescu withdrew are not clear from the record.

On April 5, 2011, this Court warned that "defendants' repeated changes of counsel" had caused unreasonable delays in the case, and that the court would not "tolerate any more obstruction." (Apr. 5, 2011 Tr. (Dkt. No. 104) at 11) The Court emphasized that it

> want[ed] the case to move forward expeditiously. And I'm committed to that. And I don't want any further delay in the case. And, Mr. Cavanagh, you should instruct your client that I have no more tolerance for jockeying around here. We are on a third set of lawyers. It has been incredibly disruptive. We have lost a year, in large part because of the jerking around between counsel. That has to stop. And if Mr. Marino has any further thoughts about changing counsel, the case will proceed with him on a pro se basis. So we're not going to tolerate any more delay.

(Id. at 24-25).

Despite that warning, the substitution of counsel continued and the delays did not end. On January 27, 2012, a lawyer named Lorenzo Lugara sent a letter to Cavanagh stating that he had been retained to represent defendants Pasquale Marino, Izabela Marino, Salvatore Abbate

4

and Pasquale DaMarino's, Inc, and that Cavanagh should do no more work on the case. (Jan. 27, 2012 Ltr. (Dkt. No. 174) at 9) On January 30, 2012, Cavanagh sent this Court executed substitution of attorney forms for all defendants, stating that they would be filed with the Clerk of Court. (Jan. 30, 2012 Ltr. (Dkt. No. 174) at 1) The substitution of counsel forms were never filed, however. Cavanagh's letter provided no explanation for the change in counsel.

In a February 29, 2012 letter, Lugara wrote that he had been retained by Defendants Pasquale Marino, Pasquale's DaMarino's, Inc., Izabela Marino, and Salvatore Abbate, to represent them in place of Cavanagh & Associates, P.C. (Dkt. No. 175) In this letter, Lugara states that his "clients are well aware of this Court's prior indication that they would need to proceed on a pro se basis if they discharged their attorneys," but nevertheless requested court permission for substitution of counsel. (Id. at 2) Lugara states that Defendants "firmly believe that their prior counsels took advantage of the fact that their command of the English language and their understanding of the judicial system was lacking, and used such information to prolong the matter and generate large, unnecessary legal bills." (Id. at 1)[2] Lugara's letter also states that Defendants "chose to end their engagement with [Cavanagh] mainly due to issues that arose with billings."[3] (Id.)

In a March 19, 2012 letter, Plaintiffs opposed Lugara's substitution of counsel request. (July 20, 2012 Tr. (Dkt. No. 167) at 4) In an April 5, 2012 Order, this Court directed

---

[2] As this Court observed in a July 20, 2012 hearing, "[t]his assertion [that Defendants could not speak English] appears to be false on its face based on a video submitted by plaintiffs' counsel showing Mr. Marino speaking English quite fluently." (July 20, 2012 Tr. (Dkt. No. 167) at 4)

[3] "In a February 27, 2012 letter to the Court, Mr. Cavanagh explained that the defendants Pasquale Marino, Izabela Marino, Salvatore Abbate and Pasquale DaMarino's, Inc. had contacted him and told him that they had retained a new lawyer, Lorenzo Lugara. Once again, the defendants had refused to pay Mr. Cavanagh for the legal services he had rendered." (July 20, 2012 Tr. (Dkt. No. 167) at 3-4)

Defendants and Cavanagh to appear for an April 16, 2012 conference to resolve these issues. (Dkt. Nos. 145, 150) Neither the defendants nor counsel for the defendants appeared on that date.

In an April 24, 2012 letter to the Court, yet another lawyer – Andrew Risoli – stated that he had been retained to represent Defendants. (Dkt. No. 177)

On April 27, 2012, this Court issued an Order directing the Defendants to show cause by May 4, 2012 why sanctions should not be imposed for their failure to appear at the April 16, 2012 conference. (Dkt. No. 153) Defendants did not show cause or otherwise respond to this Court's Order. Accordingly, on June 4, 2012, this Court directed Plaintiffs to file a motion for default judgment. (Dkt. No. 154)

On July 3, 2012, Plaintiffs moved for a default judgment based on, inter alia, Defendants' failure to respond to discovery requests, violation of court orders, and repeated disruption of these proceedings through the repeated hiring and replacement of defense counsel. (Dkt. No. 157; see also Pltf. Br. (Dkt. No. 158)) At a July 20, 2012 hearing on Plaintiffs' motion, this Court recounted the history of attorney substitution up to that point, noting that "defendants have repeatedly refused to pay their lawyers, which has led to repeated changes in counsel and a complete disruption of proceedings in this case." (July 20, 2012 Tr. (Dkt. No. 167) at 2; see id. at 2-6) This Court denied Lugara and Risoli's separate applications to appear on behalf of Defendants.[4] (Id. at 6) This Court reiterated that it would not "permit the

---

[4] This Court stated:

> As to Mr. Lugara's and Mr. Risoli's applications to appear on behalf of defendants, and I might say it's entirely unclear to me who defendants are seeking to have represent them at this point, those requests are denied. I cannot allow this case to be disrupted any further by substitutions of counsel. I made clear more

defendants to add another lawyer into the case." (Id. at 17)  Nevertheless, on December 4, 2012,

Cavanagh filed a motion to withdraw as attorney. (Dkt. No. 169)

        In a March 25, 2013 memorandum opinion and order, this Court granted

Plaintiffs' motion for a default as to Defendants Pasquale's DaMarino's, Inc. and Pasquale

Marino on Plaintiffs' FLSA and New York Labor Law claims.  Plaintiffs' motion was otherwise

denied.  Wilson v. Pasquale's DaMarino's, Inc., No. 10 Civ. 2709 (PGG), 2013 WL 1195603, at

*9 (S.D.N.Y. Mar. 25, 2013).  This Court recounted at length Defendants' record of misconduct

in this litigation:

> Defendants have repeatedly, and in violation of court order, changed counsel, and
> thereby completely disrupted the proceedings for more than two years.  They have
> not responded to Plaintiffs' discovery requests, have disobeyed the Court's
> discovery orders, have failed to attend court conferences – despite court order –
> and have ignored other orders, including orders to show cause why they should
> not be sanctioned.  Defendants have also made misrepresentations to the Court.
> Defendants' repeated retention and firing of their counsel – resulting in five
> different firms appearing in this action on behalf of Defendants – has been part of
> a deliberate strategy to derail these proceedings and make any recovery by
> Plaintiffs practically impossible.

Id. at *1.

        This Court determined that

---

> than a year ago, when Mr. Cavanagh came into the case as the third lawyer for
> defendants, that there would be no further changes of counsel in light of the
> disruption that the changes in counsel had already caused.  And I made clear that
> defendants' only option going forward would be to proceed pro se in the event
> that they couldn't proceed with Mr. Cavanagh.
>
> I should also say that Mr. Lugara's letter appears to have been sent in bad faith,
> given that it alleges that defendants' prior attorneys took advantage of them
> because of their inability to speak English.  That appears to have been a false
> assertion.

(Id. at 6)

Defendants have deliberately obstructed these proceedings in a variety of ways, including by refusing to produce discovery or to appear at deposition, failing to attend court conferences, and failing to respond to orders to show cause. The most disruptive aspect of Defendants' misconduct, however, has been their frequent retention and dismissal of lawyers. No credible explanation for this conduct has been offered. While Defendants now seek to blame [Glenn] Cavanagh for their failure to attend court conferences and respond to orders to show cause, responsibility for the repeated retention and dismissal of lawyers rests squarely on the Defendants. Given this fact, that this behavior has continued for more than two years, and that Defendants' misconduct continued even after the Court warned Defendants that no further change in counsel would be tolerated, the Court concludes that no sanction short of a default judgment is likely to be efficacious.

Id. at *7.

In the same opinion, this Court granted Glenn Cavanagh's motion to withdraw, based on his representation that Defendants had refused to communicate with him or to pay his fees. Id. at *8-9. This Court then referred the case to Magistrate Judge Francis for an inquest on damages associated with Plaintiffs' wage and overtime claims under the New York Labor Law and FLSA. (Dkt. No. 179) On April 2, 2013, Judge Francis granted Andrew Risoli's application to appear as counsel for Defendants for the limited purpose of the inquest. (Dkt. No. 180)[5] On April 9, 2013, Risoli filed a "motion to reconsider and to vacate default judgment" on behalf of Defendants Pasquale's DaMarino's, Inc. and Pasquale Marino.[6] (Dkt. No. 183)

On January 17, 2014, Brian Ceseratto of Epstein Becker & Green, P.C., filed a motion seeking leave to file an appearance as co-counsel on behalf of Defendants Pasquale's DaMarino's Inc., Pasquale Marino, Izabela Marino, Peter Rossignuolo, Giancarlo Montesarchio,

---

[5] This Court then directed Cavanagh to release Defendants' files to Andrew Risoli. (Dkt. No. 184)

[6] On April 19, 2013, Defendants filed a notice of appeal concerning the default entered by this Court. (Dkt. No. 188) Plaintiffs-Appellees moved to dismiss the appeal for lack of jurisdiction. The Second Circuit granted the motion to dismiss the appeal on August 15, 2013, and the mandate issued on September 12, 2013. (Dkt. No. 190)

220 West Restaurant Corporation, and Salvator Abbate.[7] (Dkt. No. 191) In that motion, Cesaratto states that "we understand, per this Court's Order, dated March 24, 2013, that there would be no further substitutions of counsel." (Id.)

This Court denied Defendant Pasquale's DaMarino's, Inc. and Pasquale Marino's "motion to reconsider and to vacate default judgment" in a March 31, 2014 Order. (Dkt. No. 196) In a separate order issued that same day, this Court granted Epstein Becker's application to file a notice of appearance on behalf of Defendants Pasquale's DaMarino's Inc., Pasquale Marino, Izabela Marino, Peter Rossignuolo, Giancarlo Montesarchio, 220 West Restaurant Corp., and Salvator Abbate. (Dkt. No. 195)

In the order denying reconsideration, this Court warned that further disruption of the litigation by Defendants would result in additional sanctions: "Despite Defendants' past misconduct, this Court . . . has granted Brian Cesaratto's application to file a notice of appearance. . . . The Court cautions Defendants, however, that any further disruption of these proceedings will likely result in additional sanctions." (Mar. 31, 2014 Order (Dkt. No. 196) at 7 n.6 (emphasis added)) On April 8, 2014, Ian Nanos, Brian Cesaratto, and Evan Spelfogel, of Epstein Becker & Green, P.C., entered notices of appearance on behalf of Defendants Pasquale's DaMarino's Inc., Pasquale Marino, Izabela Marino, Peter Rossignuolo, Giancarlo Montesarchio, 220 West Restaurant Corp., and Salvator Abbate. (Dkt. Nos. 199-203)

At an April 15, 2014 conference – the first court proceeding at which Epstein Becker appeared – this Court recounted the "long and tortured history" of this case, namely, that

---

[7] Epstein Becker mistakenly omitted Fred Marino from the list of Defendants it represents. (Apr. 15, 2014 Tr. (Dkt. No. 207) at 8) Cesaratto told the Court that he "did not file a notice of appearance for Fred Marino, but [is] prepared to do that." Id. No notice of appearance was ever filed by Epstein Becker on behalf of Fred Marino. In subsequent filings, however, Epstein Becker states that it represents Fred Marino. (See, e.g., Aug. 7, 2014 Ltr. (Dkt. No. 228) at 1)

"[t]he defendants adopted a pattern of repeatedly retaining lawyers to represent them, then not paying the lawyers, causing the lawyers to ultimately move to withdraw. This went on repeatedly; that led to literally years of delay." (Apr. 15, 2014 Tr. (Dkt. No. 207) at 2) Cesaratto acknowledged that "[Epstein Becker was] certainly aware of the history[ of Defendants' pattern of repeatedly retaining lawyers, not paying the lawyers, causing the lawyers to ultimately move to withdraw]." (Id. at 7) This Court emphasized that it did not "want the case to languish any more than it has languished already." (Id. at 9) Defendants' disruption of the proceedings continued, however.

First, Andrea Risoli, writing on behalf of her father, Defendants' co-counsel Andrew Risoli, submitted a May 29, 2014 letter stating that Mr. Risoli could no longer represent Defendants due to serious medical issues and his anticipated retirement at the end of 2014. (Dkt. No. 219) Ms. Risoli – herself an attorney – stated that although she had worked on the case for her father, she was not the attorney of record and was "overwhelmed with closing out [her] dad's cases as well as closing his office as soon as it is reasonably possible." (Id. at 1) Ms. Risoli also noted that she was not counsel in the related Mironova action, which involved "much of the same discovery and witnesses." (Id. at 2) Ms. Risoli stated that she would "not be able to adequately represent the Defendants at this point in time," and requested that Mr. Risoli be discharged as counsel of record:

> Since November 2013, [Epstein Becker & Green's] involvement in both related cases and subsequent to relinquishing all files related to both cases over to them, our office has had little to no communication with [Epstein Becker & Green] and/or the Defendants in this matter. Yet, on May 27, 2014, without any prior discussion or notification, I received an email from Brian Caseratto, Esq., informing me that [Epstein Becker & Green] would only be serving as "consultants" on the above matter, and according to Mr. Marino, I would be tak[ing] over the lead role in this case presumably because the Defendants are out of funding.

(Id.) Ms. Risoli also noted that Defendants had not paid outstanding legal fees owed to her father. (Id.)

On June 6, 2014, at Plaintiffs' request, the damages inquest was adjourned sine die by Magistrate Judge Francis, pending settlement discussions. (Dkt. No. 223)

On August 7, 2014 – only four months after entering an appearance in this action – Cesaratto advised the court that "[i]n the event the parties are unable to reach a global settlement, our Firm intends to move pursuant to Local Rule 1.4 to withdraw as counsel. In short, should . . . the Wilson Action proceed[] to further litigation, Defendants will be unable to meet the continued cost of Epstein Becker Green's ("EBG") legal fees." (Aug. 7, 2014 Ltr. (Dkt. No. 228) at 2) Cesaratto explained that "Defendants are unable and/or unwilling individually and/or collectively to fund the cost of EBG's litigation of the Wilson Action." (Id.)

On September 23, 2014, Cesaratto requested that a settlement conference before Magistrate Judge Gorenstein be cancelled, because Pasquale Marino "has advised that he can no longer agree to pay the amounts previously offered by him in settlement and to withdraw all settlement offers." (Sept. 23, 2014 Ltr. (Dkt. No. 231)) Cesaratto's request was granted the following day by Magistrate Judge Gorenstein. (Id.)

In an October 7, 2014 letter to Pasquale Marino, Epstein Becker wrote that "[i]t is our understanding that . . . you have . . . requested that this Firm cease all representation" and that, "it is our understanding that the defendants now wish to be independently represented so as to pursue their own particular dismissal applications/defenses and are not able or willing to share in the cost of a joint defense." (Cesaratto Decl., Ex. I (Dkt. No. 246) at 2) Attached to Epstein Becker's letter was a consent to withdrawal form, but Pasquale Marino did not sign the form. (Id. at 3) That same day, Epstein Becker sent nearly identical letters to Fred Marino and Izabela

11

Marino. On October 8, 2014, Epstein Becker sent nearly identical letters to Salvatore Abbate, Peter Rossignuolo and Giancarlo Montesarchio. (Id., Exs. J-N (Dkt. No. 246))

In an October 17, 2014 letter to the Court, Cesaratto stated that Epstein Becker intended to file a motion to withdraw as counsel because settlement of the case was not reached and because Defendants are "unable and/or unwilling individually and/or collectively to meet the continued cost of EBG's legal fees in a litigation setting," and had not paid Epstein Becker's outstanding legal fees. (Oct. 17, 2014 Ltr. (Dkt. No. 233) at 2) The letter noted that Defendants Pasquale DaMarino's, Inc., Pasquale Marino, and Izabela Marino were intending to file for bankruptcy "in the near future." (Id. at 1)

In a November 6, 2014 letter, Cesaratto informed the Court that the Mironova case had resulted in a $2.5 million judgment against Defendants Pasquale DaMarino's, Inc. and Pasquale Marino. (Nov. 6, 2014 Ltr. (Dkt. No. 238) at 2) Cesaratto emphasized Defendants' inability or unwillingness to pay Epstein Becker's fees, an "overall lack of cooperation" by Defendants, and a "divergence of interests between the respective Defendants since the time of the Mironova verdict as well as the failure to reach a negotiated resolution."[8] (Id.)

In a November 6, 2014 letter, Andrea Risoli reiterated her request that her father be permitted to withdraw as a counsel of record. (Nov. 6, 2014 Ltr. (Dkt. No. 239)) Ms. Risoli states that the DaMarino restaurant was being operated on a month-to-month lease and would likely close if this case did not settle. (Id. at 2-3)

---

[8] Cesaratto asserted that "there has been a refusal by Defendants to respond to our repeated telephone calls or emails, and an overall lack of cooperation. For example, despite repeated request for personal meetings/conversations to discuss the case, Defendants have not reciprocated, and numerous phone calls placed to multiple defendants have never been returned." (Id.) Cesaratto also stated that "the case remains largely un-litigated, with significant discovery yet to take place." (Id. at 3)

On November 24, 2014, Epstein Becker moved to withdraw as counsel for

Defendants Pasquale DaMarino's, Inc., 220 West Restaurant Corp., Pasquale Marino, Fred

Marino, Izabela Marino, Peter Rossignuolo, Giancarlo Montesarchio, and Salvatore Abbate,

pursuant to Local Civil Rule 1.4. (Dkt. No. 244) Epstein Becker argued that it should be granted

leave to withdraw because (1) communications with Defendants and the attorney-client

relationship have broken down, (2) Epstein Becker is owed substantial legal fees, and (3) there

exists an actual conflict of interest that precludes Epstein Becker from providing further

representation to any of the Defendants in this case. (Epstein Becker Br. (Dkt. No. 245) at 6-14)

That same day, Plaintiffs moved for sanctions against Defendants in the form of a

default judgment. In the alternative, Plaintiffs asked this Court to deny Epstein Becker's motion

to withdraw. (Dkt. No. 241)

On November 12, 2014, this Court granted leave for attorney Andrew Risoli,

through his daughter Andrea Risoli, to move to withdraw as counsel. The Court directed that

any such motion be filed by November 24, 2014. (Dkt. No. 240) No such motion was filed.

Instead, on December 8, 2014, Ms. Risoli filed a declaration in opposition to Plaintiffs' motion

for sanctions. (Dkt. No. 248) In her declaration, Ms. Risoli states that her father, Andrew Risoli,

is eighty-one years old, suffers from congestive heart failure, and is barely ambulatory. (Id. ¶ 3)

In a December 11, 2014 declaration Pasquale Marino submitted in response to the

pending motions to withdraw and for sanctions, Mr. Marino claims that he "do[es] not have a

lawyer," due to Mr. Risoli's sickness and Mr. Marino's own confusion as to whether Epstein

Becker "was to represent [him] or the corporation." (Pasquale Marino Decl. (Dkt. No. 252) ¶ 4)

Mr. Marino states that "[not having a lawyer] is a severe prejudice as it will involve millions of

dollars that I do not have, which is the reason I have no choice but to claim bankruptcy." (Id.)

Mr. Marino represented that he – through Epstein Becker – had participated in several settlement negotiations in order to settle this case as well as the parallel <u>Marinova</u> case. (<u>Id.</u> ¶ 5) Mr. Marino claimed that Plaintiffs' counsel – Robert Wizniewski – "wants the Court to punish me further because I cannot pay anymore legal fees and he will not settle the cases." (<u>Id.</u> ¶ 6)

Mr. Marino stated that in the last settlement conference before Judge Gorenstein, the final settlement offer to dispose of both this case and the <u>Marinova</u> action was "$680,000.00 to pay $8,000.00 per month and keep the restaurant open for business." (<u>Id.</u> ¶ 9) Mr. Marino also asserted that he was an "immigrant . . . [and] was . . . taken advantage of by previous attorneys." (<u>Id.</u> ¶ 12) Mr. Marino claimed that he had paid over $500,000 in legal fees, which Plaintiffs "could have had if they [had been] reasonable and settle[d]. Now I have no more money." (<u>Id.</u>) Mr. Marino also stated that he gave "all documents requested to Mr. Cavanagh a long time ago, and it has been almost three years and Mr. Wisniewski has not requested anything further from me in writing or otherwise." (<u>Id.</u>) Mr. Marino stated that he wished to settle the case and "move on with [his] life." (<u>Id.</u> ¶ 13)

On September 30, 2015, this Court issued an order denying Plaintiffs' motion for sanctions and denying Epstein Becker's motion to withdraw. (Dkt. No. 253)

On December 6, 2017, Magistrate Judge Lehrburger (who replaced Magistrate Judge Francis) set a case management conference for January 19, 2018. On January 10, 2018, Evan Spelfogel – a lawyer at Epstein Becker – filed a joint letter regarding the status of the case. (Dkt. No. 256) This letter states that since settlement negotiations ended in failure, Pasquale Marino and Pasquale's DaMarino's "filed for bankruptcy, Pasquale has died, and both [the <u>Wilson</u> case and the <u>Miranova</u> case] have remained dormant." (<u>Id.</u> at 1)

On January 22, 2018, Magistrate Judge Lehrburger granted Andrew Risoli's request to withdraw as counsel. (Dkt. No. 257)

On January 31, 2018, Epstein Becker filed a new motion to withdraw as counsel (Dkt. No. 260), and on March 9, 2018, Plaintiffs filed a Sixth Amended Complaint. (Dkt. No. 274)

## DISCUSSION

### I.    MOTIONS TO WITHDRAW AS COUNSEL

#### A.    Legal Standard

"It is generally said of the attorney-client relationship that '[w]hen an attorney is retained to conduct a legal proceeding, he enters into an entire contract to conduct the proceeding to a conclusion and he may not abandon his relation without reasonable or justifiable cause.'" Malarkey v. Texaco, Inc., 81 Civ. 5224 (CSH), 1989 WL 88709, at *1 (S.D.N.Y. July 31, 1989) (quoting Rindner v. Cannon Mills, Inc., 127 Misc. 2d 604, 605 (Sup. Ct. Rockland Cty. 1985)); see also United States v. Vilar, 731 F.3d 255, 257 (2d Cir. 2013) ("'Full availability of legal counsel requires . . . that lawyers who undertake representation complete the work involved.'" (quoting Lawyer's Code of Professional Responsibility, adopted by New York State Bar Association ("NY Code"), EC 2-31)); Foster v. City of New York, 96 Civ. 9271 (PKL), 2000 WL 145927, at *4 (S.D.N.Y. Feb. 7, 2000) ("[I]n the absence of a compelling justification, the Court will not relieve an attorney from his obligations.").

In this District, withdrawal of counsel is governed by Local Civil Rule 1.4, which states:

> An attorney who has appeared as attorney of record for a party . . . may not withdraw from a case without leave of the court granted by order. Such an order may be granted only upon a showing by affidavit or otherwise of satisfactory

15

reasons for withdrawal or displacement and the posture of the case, including its position, if any, on the calendar . . . .

"[I]t is well-settled that a court has 'considerable discretion in deciding a motion for withdrawal of counsel.'" Bruce Lee Enters., LLC v. A.V.E.L.A., Inc., 10 Civ. 2333 (MEA), 2014 WL 1087934, at *1 (S.D.N.Y. Mar. 19, 2014) (quoting SEC v. Pentagon Capital Mgt. PLC, 8 Civ. 3324 (RWS), 2013 WL 5815374, at *4 (S.D.N.Y. Oct. 29, 2013)); see also Whiting v. Lacara, 187 F.3d 317, 321 (2d Cir. 1999) ("Considerations of judicial economy weigh heavily in favor of our giving district judges wide latitude in these situations . . . ."); Stair v. Calhoun, 722 F.Supp.2d 258, 264 (E.D.N.Y. 2010) ("Whether to grant or deny a motion to withdraw as counsel 'falls to the sound discretion of the trial court.'" (quoting In re Albert, 277 B.R. 38, 47 (Bankr. S.D.N.Y. 2002))).

"'When considering whether to grant a motion to be relieved as counsel, district courts analyze two factors: the reasons for withdrawal and the impact of the withdrawal on the timing of the proceeding.'" Bruce Lee, 2014 WL 1087934, at *1 (quoting Battino v. Cornelia Fifth Ave., LLC, 9 Civ. 4113 (LGS), 2013 WL 4779635, at *1 (S.D.N.Y. June 26, 2013)) (citations and internal quotation marks omitted). Courts in this District have held that satisfactory reasons for withdrawal include "'a client's lack of cooperation, including lack of communication with counsel, and the existence of irreconcilable conflict between attorney and client.'" Farmer v. Hyde Your Eyes Optical, Inc., 60 F. Supp. 3d 441, 445 (S.D.N.Y. 2014) (quoting Naguib v. Pub. Health Solutions, 12 Civ. 2561 (ENV) (LB), 2014 WL 2002824, at *1 (E.D.N.Y. May 15, 2014)); see also Munoz v. City of New York, 4 Civ. 1105 (JGK), 2008 WL 2843804, at *1 (S.D.N.Y. July 15, 2008) ("The law firm has shown good cause for withdrawal based on the lack of communication with the plaintiff and the acrimonious relationship that has

developed between the law firm and the plaintiff."). Indeed, "strong evidence of a strained attorney-client relationship regardless of the source of the strain is sufficient grounds" for an attorney to withdraw. Diarama Trading Co. v. J. Walter Thompson U.S.A., Inc., 1 Civ. 2950 (DAB), 2005 WL 1963945, at *2 (S.D.N.Y. Aug. 15, 2005).

## B. Analysis

Epstein Becker currently represents Pasquale's Damarino's, Inc., Izabela Marino, Peter Rossignuolo, Giancarlo Montesarchio, Salvatore Abbate, Fred Marino, and 220 West Restaurant Corp. (Spelfogel Decl. (Dkt. No. 261) ¶ 1) Defendant Craig Perri is currently proceeding pro se. (Jan. 22, 2018 Order (Dkt. No. 258) at 2) Two of the Defendants newly named in the Sixth Amended Complaint – Kavita Jagnarine and Fratelli Italiani LLC (SAC (Dkt. No. 274)) – are represented by Keith Frank of Moritt Hock & Hamroff LLP. (Dkt. No. 309) The remaining two Defendants newly added by the Sixth Amended Complaint – Joseph Marino and Piatti Italiani LLC – are not currently represented by counsel.

Epstein Becker offers three reasons for withdrawal: (1) a breakdown in the attorney-client relationship and a breakdown in communications, (2) non-payment of legal fees, and (3) an alleged conflict of interest among Defendants. (See Epstein Becker Br. (Dkt. No. 262) at 9-15)

To the extent that Epstein Becker relies on non-payment of fees, its application to withdraw is denied. As set forth above, this Court provided clear warning to the Firm when it took on this representation that no further substitution of counsel would be permitted. Epstein Becker was well aware that Defendants had not paid numerous attorneys who had preceded Epstein Becker in this representation. Those lawyers moved to withdraw on that basis. For

17

whatever reason, Epstein Becker nonetheless chose to take on this representation. It will not be heard to complain now that its fees have not been paid.

As to the alleged breakdown in communication and conflict of interest, Epstein Becker has not provided the level of detail necessary for this Court to conclude that withdrawal is justified. To begin, Epstein Becker makes a number of vague assertions about conversations members of the Firm have had with various Defendants. For example, Spelfogel states that "[i]n the last discussions with the Defendants, [Epstein Becker] was advised that they are unable and/or unwilling to continue paying the Firm's anticipated future legal fees in a litigation setting. This position has not changed since the last motion and will likely remain unchanged." (Spelfogel Decl. (Dkt. No. 261) ¶ 20) There is no additional information provided about when these conversations took place, with whom these conversations took place, and what was said.

Spelfogel similarly notes that "[d]espite repeated past efforts, including numerous e-mail requests to speak personally, including to discuss case strategy, multiple telephone calls that have gone unanswered and unreturned, and the death of a key individual Defendant, this Firm has had no speaking communications with various Defendants since or about mid-September 2014 at or about the time that the parties failed to reach a negotiated resolution." (Id. ¶ 21) Little detail is provided regarding when or with whom these alleged communications took place.

Spelfogel further states that "all Defendants have been provided with copies of the Firm's past correspondence with the Court addressing the status of the litigation and the Firm's anticipated application to withdraw – commencing with this Firm's September 23, 2014 letter and again, by letters dated October 17, 2014 and November 6, 2014." (Id. ¶ 27) Finally, Spelfogel states that "[w]hile each of the Defendants has been sent copies of this frequent

ongoing correspondence, not one of them has sought to speak to or otherwise contact anyone at the Firm," and that "[s]ubsequent to the last motion to withdraw . . . there have been no further contacts despite efforts on the Firm's part." (Id. ¶¶ 28-29) Little detail is given on what "efforts" the Firm made to communicate with each Defendant in this case, when those efforts were made, and whether there was any response to these efforts.

Some specific information is provided as to Defendant Fred Marino. Spelfogel states that, "despite repeatedly attempting to speak with [him], the last telephone conversation with Fred Marino was on or about September 17, 2014. Since that time, Fred Marino has not spoken with anyone at the Firm. Further, he failed to respond to the undersigned's letters and telephone call regarding the January 19, 2018 court conference. I left a voicemail for him at the phone number listed in the Firm records and had letters delivered to both the restaurant and Mr. Marino's residence. Both letters were received but there was no response or attempt to respond." (Spelfogel Decl. (Dkt. No. 261) ¶ 23) Spelfogel does not state when the call to Fred Marino was made, however, or what the letters sent to Marino said about the representation issue.

Very little information is provided as to other Defendants. As to Peter Rossignuolo, Cesaratto states that the last contact with him was by email on September 26, 2014. (Cesaratto Decl. (Dkt. No. 246) ¶ 38) Cesaratto attempted to telephone him in mid-October 2014, but his phone call was not returned. (Id.) In the current motion, Spelfogel states that "[t]he last communication the Firm received from Peter Rossignuolo was an e-mail that he sent to Mr. Cesaratto on or about September 26, 2014. To my knowledge, he has made no efforts to contact anyone at the Firm since this time." (Spelfogel Decl. (Dkt. No. 261) ¶ 24) But Spelfogel does not disclose what efforts Epstein Becker made to communicate with Mr. Rossignuolo since September 2014.

As to Salvatore Abbate, Cesaratto sent an email to him on or about October 23, 2014, but got no response. (Cesaratto Decl. (Dkt. No. 246) ¶ 39) Spelfogel states that Abbate "has similarly made no efforts to contact anyone at the Firm since [September 2014]." (Spelfogel Decl. (Dkt. No. 261) ¶ 25) Once again, Spelfogel does not disclose what efforts Epstein Becker has made to contact Abbate since October 2014.

As to Giancarlo Montesarchio, Spelfogel states that "[t]he Firm has received no direct communications from [him] since the settlement conference held before Magistrate Gorenstein on June 17, 2014." (Spelfogel Decl. (Dkt. No. 261) ¶ 26) As with the other clients, Spelfogel does not disclose what, if any, efforts Epstein Becker made to communicate with Montesarchio.

Finally, as to Izabela Marino, Cesaratto and Spelfogel state that there has been no direct communication with her since late August 2014. (Cesaratto Decl. (Dkt. No. 246) ¶ 40; Spelfogel Decl. (Dkt. No. 261) ¶ 26) But Epstein Becker does not explain what efforts the Firm has made to communicate with her since August 2014.

In sum, Cesaratto and Spelfogel's declarations do not demonstrate that the attorney-client relationship is irretrievably broken or that all Defendants are refusing to communicate with the Firm, because they do not provide sufficient details concerning the efforts Epstein Becker has made to communicate with the Defendants it represents.

Epstein Becker is directed to contact the clients it represents in this action by October 8, 2018, and inform them (1) of Epstein Becker's application to withdraw; (2) that this Court will conduct a hearing on Epstein Becker's application on October 17, 2018 at 10:00 a.m. in Courtroom 705 of the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York, 10007; (3) that their attendance is required, and that if they do not appear, a

decision on Epstein Becker's application will likely be made in their absence; and (4) that failure to appear may result in the entry of a default judgment against them.

By October 15, 2018, Epstein Becker will inform this Court of the communications that have taken place with its clients concerning these matters. In that submission, Epstein Becker will state in detail which Defendants it contacted; how contact was made; when contact was made; and whether Epstein Becker communicated the information set forth above to the client.

## CONCLUSION

For the reasons stated above, Epstein Becker & Green's motion to withdraw is denied without prejudice. The Clerk of Court is directed to terminate the motion (Dkt. No. 260). Epstein Becker will make the submission described above by **October 15, 2018.**

It is further ORDERED that there shall be a conference in this matter on **October 17, 2018, at 10:00 a.m.** in Courtroom 705 of the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York, 10007. All parties to this action are required to attend. Failure to appear at this conference may result in a default judgment against any non-appearing Defendant.

Dated: New York, New York
       September 30, 2018

SO ORDERED.

Paul G. Gardephe
United States District Judge