ROBERT WISNIEWSKI
ROBERT WISNIEWSKI P.C.
Attorneys for Plaintiffs
225 Broadway, Suite 1020
New York, NY 10007
(212) 267-2101

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
GENESIS WILSON, ALIAKSANDRA KULESH,
NATALIA ZEMTSOVA, YULIYA SYNYUK,
TATIANA LISOVSKAYA, MOHAMMED MOIN        **Docket No.: 10-cv-2709**
UDDIN, KSENIA ARTATES, SANTIAGO          **(PGG)(JWL)**
ORTIZ, ABDOULAYE NDIAYE and ABIGAIL
HENNESSY, on behalf of themselves and all
others similarly situated,

                          Plaintiffs,

      -against-

PASQUALE'S DAMARINO'S, INC., IZABELA
MARINO, PETER ROSSIGNUOLO a/k/a
PETER ROSSI, CRAIG PERRI, GIANCARLO
MONTESARCHIO, SALVATORE ABBATE,
FRED MARINO, 220 WEST RESTAURANT
CORP., JOSEPH MARINO a/k/a GIUSEPPE
MARINO, KAVITA S. JAGNARINE a/k/a KAY
JAGNARINE, PIATTI ITALIANI LLC, and
FRATELLI ITALIANI LLC,

                          Defendants.
-------------------------------------------------------------------X

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS THE SIXTH AMENDED COMPLAINT**

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| **I.** | **PRELIMINARY STATEMENT**......................................................................1 | |
| **II.** | **RELEVANT FACTS**........................................................................................ 4 | |
| **III.** | **INTRODUCTION**............................................................................................5 | |
| **IV.** | **ARGUMENT**....................................................................................................8 | |
| | 1. | **Plaintiffs Have Pleaded Jagnarine Defendants' Successor In Interest Liability Under the "Substantial Continuity" Test**.........................8 |
| | 2. | **Plaintiffs Have Also Pleaded Jagnarine Defendants' Successor in Interest Liability under the Common Law**......................................................11 |
| | 3. | **There are No Issues with Statute of Limitations or Laches**..............................13 |
| | 4. | **Plaintiffs' Wage and Discrimination Claims Are Applicable to Jagnarine Defendants**........................................................................................14 |
| **V.** | **CONCLUSION**................................................................................................8 |

# TABLE OF AUTHORITIES

*Battino v. Cornelia Fifth Ave.*, *LLC*,
861 F. Supp. 2d 392 (S.D.N.Y. 2012)..........................................................................................10

*Bautista v. Beyond Thai Kitchen, Inc.*,
2015 U.S. Dist. LEXIS 124454 (S.D.N.Y. Sep. 17, 2015)..............................................................9

*Bernstein v. Uris Building Corporation*,
50 F.R.D. 121 (S.D.N.Y. 1970)...................................................................................................14

*Cargo Partner AG v. Albatrans, Inc.*,
352 F.3d 41 (2d Cir. 2003)...........................................................................................................11

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002)...........................................................................................................6

*De Ping Song v. 47 Old Country, Inc.*,
975 F. Supp. 2d 288 (E.D.N.Y. 2013)............................................................................................9

*Fitzgerald v. Fahnestock & Co.*,
286 A.D.2d 573 (N.Y. App. Div. 2001)......................................................................................12

*In re New York City Asbestos Litig.*,
15 A.D.3d 254 (N.Y. App. Div. 2005).........................................................................................12

*Kassner v. 2nd Ave. Delicatessen Inc.*,
496 F.3d 229 (2d Cir. 2007)...........................................................................................................5

*LaFaro v. New York Cardiothoracic Grp., PLLC*,
570 F.3d 471 (2nd Cir. 2009).........................................................................................................6

*Miller v. Forge Mench Partnership Ltd.*,
2005 U.S. Dist. LEXIS 1524 (S.D.N.Y. 2005)............................................................................12

*Musikiwamba v. ESSI, Inc.*,
760 F.2d 740 (7th Cir. 1985)....................................................................................................9,10

*Schumacher v. Richards Shear Co., Inc.*,
59 N.Y.2d 239 (1983)...................................................................................................................11

*Steinbach v. Hubbard*,
51 F.3d 843 (9th Cir. 1995).......................................................................................................9,10

*Teed v. Thomas & Betts Power Sols., L.L.C.*,
711 F.3d 763 (7th Cir. 2013)..................................................................................................9

*Thompson v. Real Estate Mortg. Network*,
748 F.3d 142 (3d Cir. 2014)....................................................................................................9

*Tommy Lee Handbags Mfg. v. 1948 Corp.*,
971 F. Supp. 2d 368 (S.D.N.Y. 2013)..........................................................................5,11,12,13

*Xue Ming Wang v. Abumi Sushi, Inc.*,
262 F. Supp. 3d 81 (S.D.N.Y. 2017)..................................................................................8,9,11

I.  **PRELIMINARY STATEMENT**

In their magisterial motion to dismiss Plaintiffs' Sixth Amended Complaint ("SAC"), Defendants Kavita Jagnarine and Fratelli Italiani LLC ("Jagnarine Defendants") come up with an argument which might charitably be called bold, or more accurately, audacious: they cannot be successors in interest under any theory of successor liability. Jagnarine Defendants present Jagnarine as a hard-working Guyanese single mother who is the only member of Fratelli Italiani LLC, which she formed in July of 2015 to purchase DaMarino Restaurant. Then Jagnarine Defendants hop-scotch to the claim that they had no notice about Plaintiffs' claims against DaMarino when they merely engaged in "asset purchase agreement" from an entity they knew as Piatti Italiani. Following this train of thought, Defendants argue that they cannot be held liable to Plaintiffs because, having appeared on the scene in 2015, they have no contractual privity with Plaintiffs and did not employ Plaintiffs. Happily chugging along now, Defendants spew page upon page of argument as to why they could not be held liable under any of the two theories of successor liability, and invoke a statute of limitations to boot. Defendants present altered reality, and their motion to dismiss amounts to fraud on the court.

When evaluating the complaint, this Court is bound not only by the four corners of the complaint but may also take judicial notice of various documents which are publicly available. And in drawing inferences, the Court is not required to operate in an experiential vacuum, but may – and should – draw on the full range of its reason, experience, and common sense.

In addition to the allegations in the SAC, which patently show that the ownership of the Restaurant was being shifted by the Original Defendants to Jagnarine Defendants in order to relieve Original Defendants from liability in this lawsuit and in the Mironova lawsuit, a number

of statements and documents emerged in the public domain which just fortify the allegation that Jagnarine and Fratelli Italiani are co-owners of DaMarino with the Original Defendant Perri. Thus, Perri and Jagnarine are obviously a couple in a relationship, who together negotiated with the landlord of the premises for a new lease, and that Fratelli Italiani became titular owner of DaMarino in or about July 2015. Original Defendant Perri and Jagnarine admit in a judicial proceeding that they – Original Defendant Perri, Jagnarine and Fratelli Italiani LLC – entered into a direct lease with the landlord and that they operate DaMarino. Peri and Jagnarine publicly have held themselves as owners of DaMarino. In fact, two months after the lease was signed, Perri and Jagnarine organized a lovely soiree for their landlord – Catholic Sisters – at which it was announced *urbi et orbi* what wonderful hosts they were. And as recently as two months ago, Perri invited a young, beautiful ingenue to come to "his" restaurant.

Based on these facts, there is no doubt whatsoever that Plaintiffs have pleaded successor in interest liability under any theory of liability.

Under the substantial continuity test, which considers nine (9) factors in determining whether successor liability is present, there is no doubt whatsoever that Plaintiffs have pleaded successor in interest liability. Of the nine factors, two are indispensable in this determination: notice of the lawsuit and ability of the predecessor to provide relief. Plaintiffs clearly pleaded both and, furthermore, these considerations are highly factual, which is yet another reason why the anticipated motion to dismiss should not be entertained at this time. Plaintiffs also sufficiently pleaded the remaining six factors inasmuch as DaMarino continues to whip up the same tradition, same ambiance, same food (including its famous chocolate fettucine) for the public in the same location under the management of some of the Original Defendants and

Jagnarine Defendants with the use of the same kitchen personnel.

Although the substantial continuity test is favored in the Southern District for FLSA and employment matters, the Complaint adequately states a basis for the Jagnarine Defendants' successor liability under the common-law four (4) factor test as well.  Except for the allegation that Jagnarine Defendants expressly assumed the predecessors' debt, Plaintiffs pleaded the remaining elements that the transaction was undertaken to defraud creditors; the transaction constitutes a *de facto* merger and that the successor is a mere continuation of the predecessor. Under New York law, "the hallmarks of a de facto merger include: continuity of ownership; cessation of ordinary business and dissolution of the acquired corporation as soon as possible; and continuity of management, personnel, physical location, assets and general business operation. Notably, New York law requires only "an allegation of shareholders of the selling corporation hold even an indirect interest in the assets. Thus, the allegation that Perri and/or other Original Individual Defendants continue to directly or indirectly control Fratelli is sufficient to establish the required continuity of ownership.

Finally,  Plaintiffs have clearly pleaded sufficient facts to support successor liability based on intent to defraud creditors.  As alleged in the Complaint, the Original Individual Defendants conspired with the Successor Individual Defendants to create business entities and transfer assets between them for little or no consideration for the express purpose of evading creditors, leaving Pasquale's DaMarino's Inc. as an undercapitalized shell.

## II.     RELEVANT FACTS

Plaintiffs worked for the owners of DaMarino Restaurant ("Restaurant") as servers, bartenders, and other staff, and were not paid all of their tips, were not paid a rate above minimum wage, and/or were not paid at the proper time-and-a-half rate for their overtime hours. In addition, as further detailed in the Complaint, several of the Plaintiffs were serially sexually harassed by one of the owners of the Restaurant, Pasquale Marino ("Pasquale"). Pasquale and Defendants Izabela Marino ("Izabela"), Peter Rossignuolo, Craig Perri ("Perri"), Giancarlo Montesarchio, Salvatore Abbate, Fred Marino (collectively "Original Individual Defendants"), and the corporate entities they controlled (Pasquale's DaMarino's, Inc. ("PDI") and 220 West Restaurant Corp. ("220") (collectively, "Original Corporate Defendants")) (Original Individual Defendants and Original Corporate Defendants collectively referred to herein as "Original Defendants") engaged in a practice of retaining and then discharging counsel as a delaying tactic.  In all, the Original Defendants were represented by seven different law firms over the first five years of litigation. Pasquale and PDI were sanctioned for this conduct in the form of a default judgment being entered against them; Plaintiffs sought additional sanctions against the other Original Defendants for continuing this tactic after the sanctions were issued.

Even after the sanctions and attempted withdrawal of their seventh set of attorneys, the Original Defendants kept attempting to evade liability.  Pasquale and Izabela filed for personal bankruptcy.  As detailed in Paragraphs 204-19 of the Complaint, the Original Individual Defendants, along with family members Giuseppe Marino and Jagnarine (collectively, "Successor Individual Defendants") (Original Individual Defendants and Successor Individual Defendants collectively referred to herein as "Individual Defendants"), created Fratelli and Piatti

Italiani LLC ("Piatti"), and transferred assets from 220 to these newly-formed entities of which the Individual Defendants were owners and members.

For the rest of the facts, this Court is directed to the Factual Background of the SAC, especially to paragraphs 204-226.

### III.   INTRODUCTION

The Jagnarine Defendants appear to argue that Plaintiffs have not pled sufficient facts to demonstrate that they (the Jagnarine Defendants) are successors in interest to the Original Defendants, in that they did not expressly assume the liabilities of the Original Corporate Defendants in purchasing their assets, they did not have notice of the existing litigation, and that Plaintiffs' detailed allegations of fraudulent conveyance are "conclusory."

First, to the extent the Jagnarine Defendants argue facts other than as pled in the Complaint, such arguments are improper on a motion to dismiss. Under the familiar standard, on a motion to dismiss, the Court must "accept the plaintiff's allegations as true" and "draw all reasonable inferences in favor of the plaintiff." **Tommy Lee Handbags Mfg. v. 1948 Corp.**, 971 F. Supp. 2d 368, 373 (S.D.N.Y. 2013) (*quoting* **Kassner v. 2nd Ave. Delicatessen Inc.**, 496 F.3d 229, 237 (2d Cir. 2007)). Thus, the Jagnarine Defendants must – whether they agree or not – accept the following facts:

> The Individual Defendants – including Jagnarine – formed Piatti and served as its members, and shifted assets from 220 to Piatti for no or nominal consideration to avoid creditors (Complaint ¶¶209-10);

> The Individual Defendants – again, including Jagnarine – continue to operate Original Corporate Defendant PDI as the nominal employer, but run profits through Piatti and other companies and leave PDI undercapitalized to avoid creditors (¶210);
> After a judgment in a related matter was upheld on appeal, the Individual Defendants formed Fratelli and served as its members, and again shifted assets from Piatti to Fratelli

for no or nominal consideration to avoid creditors (¶¶212-13);

Jagnarine and her son John Khan, who is the stepson of Original Individual Defendant Perri (upon information and belief Jagnarine and Perri are married or have a similar relationship) manage the Restaurant on Perri's behalf (¶210); and

At all relevant times the Restaurant has kept the same location, the same name, the same menu, the same executive chef, the same ambiance, much of the same kitchen personnel, the same supervisory personnel, and has been owned, managed, and/or controlled by the Individual Defendants – indeed, the Restaurant's website states that it maintains the same style, cuisine, and ambience of Original Individual Defendant (an erstwhile ladies' man) "chef Pasquale" (¶¶216-23).

Not only must the Jagnarine Defendants accept these and other alleged facts in the SAC, but the relationship and familial allegations undermine Jagnarine's credibility that she did not have notice of the lawsuit at the time she alleges that she and Fratelli purchased the Restaurant. Indeed, while discovery has been limited in this matter due to Original Defendants' procedural misconduct[1] and as to Fratelli and Jagnarine has yet to occur, the following facts have emerged since the filing of the SAC, which establish beyond cavil that Perri has continued to own and operate DaMarino after the purported sale and until this very day, of which this Court should take judicial notice.

While the Court generally "accept[s] all allegations in the complaint as true and draw[s] all inferences in the nonmoving party's favor." *LaFaro v. New York Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2nd Cir. 2009), it may also consider "documents attached to the complaint as an exhibit or incorporated in it by reference, . . matters of which judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir.

---

[1] And has continued to date, as evidenced by the Clerk of the Court's Certifications of Defaults by numerous Defendants, including Original Defendant Perri,

2002).

Thus this Court should take the judicial notice of the following facts set forth in judicial documents filed by or against Jagnarine Defendants in several lawsuits:

- In an e-mail dated August 27, 2015 from Perri to Sister Elizabeth Hasselt, the representative of the Landlord – the Catholic nuns – the Court may find the following morsels:

    i. "...in an effort to help Pasquale, Kay and [Perri] bought DaMarino's from Pasquale's Uncle Joe... the name of the new company that Kay came up with for us is Due Fratelli Italiano (two Italian brothers) in honor of me and Pasquale [Marino]... We are still doing business as DaMarino."

    ii. That "we" [Perri and Jagnarine] have "signed the sales contract with Uncle Joe and now own DaMarino."

    iii. "...would you please transfer the lease from Uncle Joe's Paitti Italiano LLC to mine and Kay's new company Fratelli Italiano LLC?"
    iv. "...NYS can issue us the liquor license. In our name and this would free Pasqwuale and his family from any liability associated with DaMarino Italian Restaurant."
    v. Perri "hope[s] and pray[s] [Sister Elizabeth] will grant this to me and Kay."

    Email attached as Exhibit F to the Further Affidavit of Sister Lillian McNamara, dated April 17, 2017, in a lawsuit by the landlord against Perri, Jagnarine and Fratelli Italiani and attached herein to the Wisniewski Decl.

- In September 2015, Perri and Jagnarine are featured in the Newsletter that two months after Jagnarine and Fratelli Italiani purchase DaMarino they give a lovely soiree to their landlord – the Catholic nuns. The Newsletter describes Perri as Jagnarine as "hosts" and Perri "the Proprietor of DaMarino Restaurant." This information is pukka, since the Newsletter is put out by Perri and Jagnarine' landlords – the Catholic Charity run by the nuns.

- In a verified answer to a complaint, dated September 1, 2016, Perri, Jagnarine and Fratelli Italiani make the following admissions:

    i. Perri and Jagnarine are principals of Fratelli (¶¶ 14-15)

    ii. Perri and Jagnarine operate the Restaurant (¶¶ 191, 204, 216)

       iii.     Perri negotiated the lease with the landlord, (¶170)

       iv.     Perri, Jagnarine, and Fratelli all "entered into the lease" and now "rent" the premises (¶¶ 180, 193).

- August 27, 2017: Restaurant employee Tom D'Angelo posted on Facebook a picture with a caption expressing gratitude "my bosses Craig and Kay." Perri excitedly responds that his acquaintance should come to ***his*** (sic!) restaurant.

- As recently November 27, 2018, Perri continues to hold himself out as a proprietor of the Restaurant on Facebook when he exhorts a young, beautiful ingenue Sabina Gadecki to come to "***my*** (sic!) NYC Italian Restaurant."

*See* **Wisniewski Decl**. attached herewith.

After these additional facts in the public domain are taken into account, it becomes painfully clear that Perri and Jagnarine Defendants it certainly does not take the sublety of a metaphysician to deduce that over the years Perri has attempted to insulate himself from the liability for Plaintiffs' claims and other related claims, whilst owning and operating DaMarino through a charade of entities and with the help of his paramour – Kavita Jagnarine. Perri and Jagnarine Defendants' conduct is fraud on the creditors *par excellence*, and the instant motion to dismiss, fraud on the Court.

### IV.    ARGUMENT

**1.    Plaintiffs Have Pleaded Jagnarine Defendants' Successor In Interest Liability Under the "Substantial Continuity" Test**

With the alleged facts established, it is clear that Plaintiffs have met their pleading requirement to establish successor liability. While the Second Circuit has not yet clarified the issue, courts in the Southern District have predominantly applied the "substantial continuity" test to ascertain successor liability in FLSA and other employment cases. *See, e.g.,* ***Xue Ming Wang v. Abumi Sushi, Inc.***, 262 F. Supp. 3d 81, 88 (S.D.N.Y. 2017) (collecting cases). This approach

is consistent with holdings from the Third, Seventh, and Ninth Circuits, and at least one Eastern District Court.  See **Thompson v. Real Estate Mortg. Network**, 748 F.3d 142, 151-52 (3d Cir. 2014); **Teed v. Thomas & Betts Power Sols., L.L.C.**, 711 F.3d 763, 766-67 (7th Cir. 2013); **Steinbach v. Hubbard**, 51 F.3d 843, 845 (9th Cir. 1995); **De Ping Song v. 47 Old Country, Inc.**, 975 F. Supp. 2d 288, 296 (E.D.N.Y. 2013).

Under the substantial continuity test, a court considers nine (9) factors in determining whether successor liability is present: 1) whether the successor company had notice of the charge or pending lawsuit prior to acquiring the business or assets of the predecessor; 2) the ability of the predecessor to provide relief; 3) whether there has been a substantial continuity of business operations; 4) whether the new employer uses the same plant; 5) whether it uses the same or substantially the same work force; 6) whether it uses the same or substantially the same supervisory personnel; 7) whether the same jobs exist under substantially the same working conditions; 8) whether it uses the same machinery, equipment, and methods of production; and 9) whether it produces the same product. **Bautista v. Beyond Thai Kitchen, Inc.**, 2015 U.S. Dist. LEXIS 124454, at *13 (S.D.N.Y. Sep. 17, 2015) (*citing* **Musikiwamba v. ESSI, Inc.**, 760 F.2d 740, 750 (7th Cir. 1985).  No one factor is controlling, and it is not necessary that each factor be met to find successor liability.  *Id.* However, the Southern District has found the first two factors – notice of the lawsuit and ability of the predecessor to provide relief – to be "indispensable" in this determination.  **Xue Ming Wang**, 262 F. Supp. 3d at 91.  These considerations are highly factual, which is yet another reason why the anticipated motion to dismiss should not be entertained at this time.

Here, Plaintiffs have clearly pled facts that establish successor liability under this test.

Plaintiffs have clearly pleaded and  (and existing evidence supports the inference) that Jagnarine, as Perri's paramour, was well aware of the instant litigation and of the Mironova judgment at the time that – as Jagnarine claims – the assets of Piatti Italiani were purchased. "[T]he principal reason for the notice requirement is "to ensure fairness by guaranteeing that a successor had an opportunity to protect against liability by negotiating a lower price or indemnity clause." ***Battino v. Cornelia Fifth Ave.***, LLC, 861 F. Supp. 2d 392, 406 (S.D.N.Y. 2012) *quoting* ***Steinbach***, *supra*, 51 F.3d at 847. At least one federal court has expressly held that a defendant's actual knowledge that back pay was owed to former employees of the predecessor was sufficient to provide notice of the FLSA claims.  ***Battino***, 861 F.Supp. 2d at 406. In fact, there is no doubt that the "asset purchase" agreement is a sham and that Perri has been running the restaurant through setting up Piatti Italiani and later Fratelli with Jagnarine's help.

      Plaintiffs have also pleaded factor two, which is that the Original Defendants having disposed of the Restaurant cannot satisfy Plaintiffs' claims. Courts have consistently held that the equitable considerations behind successor liability may make it inappropriate "to impose successor liability on an innocent purchaser when the predecessor is fully capable of providing relief." ***Battino***, *supra*, 861 F.Supp. 2d at 408, *quoting* ***Musikiwamba*** 760 F.2d at 750. Most importantly, Jagnarine is not an innocent purchaser. She is in fact a participant in Perri's fraud and crucial to his plans – which is to be facially judgment proof but still be able to own and operate DaMarino through Jagnarine and Fratelli. As regards the other Original Defendants, Pasquale and Izabela Marino discharged their debts through bankrutpcy. PDI and 220 are merly empty shells, and may have ceased doing business, although these corporations have not been dissolved. And another Original Defendants and Successor Defendants have defaulted and their

financial status could not be ascertained.

Plaintiffs have also pleaded Factors 3 through 9, as the Restaurant is more or less unchanged from the time Plaintiffs worked there in terms of the same location, the same name, the same menu, the same kitchen personnel, similar working conditions, and being operated by the Original Defendant – Perri.

### 2. Plaintiffs Have Also Pleaded Jagnarine Defendants' Successor in Interest Liability under the Common Law

Although the substantial continuity test is favored in the Southern District for FLSA and employment matters, the Complaint adequately states a basis for the Jagnarine Defendants' successor liability under the common-law test.  New York common law recognizes four exceptions upon which successor liability should be imposed: (1) where the buyer expressly assumes the debt; (2) where the transaction was undertaken to defraud creditors; (3) where the transaction constitutes a *de facto* merger; or (4) where the successor is a mere continuation of the predecessor.  *See* **Tommy Lee**, 971 F. Supp. 2d at 378 (*citing* **Schumacher v. Richards Shear Co., Inc.**, 59 N.Y.2d 239, 245 (1983).  While Plaintiffs admittedly have not pleaded that the Jagnarine Defendants expressly assumed the debt, their allegations support successor liability based on all of the other 3 factors.

First, the "asset sale" to the Jagnarine Defendants clearly represents a *de facto* merger or mere continuation, as these "are so similar that they may be considered a single exception." **Xue Ming Wang**, 262 F. Supp. 3d at 87 (*quoting* **Cargo Partner AG v. Albatrans, Inc.**, 352 F.3d 41, 45 n.3 (2d Cir. 2003)).  Under New York law, "the hallmarks of a de facto merger include: continuity of ownership; cessation of ordinary business and dissolution of the acquired

corporation as soon as possible; assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the acquired corporation; and continuity of management, personnel, physical location, assets and general business operation." **Tommy Lee**, 971 F. Supp. 2d at 378 (italics in original) (*quoting* **Fitzgerald v. Fahnestock & Co.**, 286 A.D.2d 573, 574 (N.Y. App. Div. 2001)).

Jagnarine Defendants' carping that they are "once removed" from the Original Defendants on the motion to dimiss is unavailing. Courts in this circuit have held that "the de facto merger test requires continuity, not uniformity, of ownership." **Franco**, *supra,* 2016 U.S. Dist. LEXIS 114191 at *27, *citing* **Miller v. Forge Mench Partnership Ltd.**, 2005 U.S. Dist. LEXIS 1524, 2005 WL 267551, at *8 (S.D.N.Y. 2005)(continuity of ownership found where the successor was "owned by the same individuals who held shares in . . . the corporate partners of" the predecessor company) (emphasis in original). Notably, New York law requires only "an allegation of shareholders of the selling corporation hold **even an <u>indirect</u> interest in the assets**." *Id.* (emphasis added) (*citing* **In re New York City Asbestos Litig.**, 15 A.D.3d 254, 256 (N.Y. App. Div. 2005). Thus, the allegation that Perri and/or other Original Individual Defendants continue to directly or indirectly control Piatti Italiani and then Fratelli and Jagnarine and are *de facto* owners and operators of DaMarino is sufficient to establish the required continuity of ownership.

Moreover, Plaintiffs have clearly pled sufficient facts to support successor liability based on intent to defraud creditors. As alleged in the Complaint, the Original Individual Defendants conspired with the Successor Individual Defendants to create business entities and transfer assets between them for little or no consideration for the express purpose of evading creditors, leaving

PDI as an undercapitalized shell. As if Plaintiffs' allegations in the complaint were not enough, this Court should take judicial notice of documents filed in the lawsuit by the landlord against Jagnarine Defendants. In Perri's email to Sister Hasselt on August 27, 2015, Perri states that Perri and Jagnarine are buying DaMarino from Parsquale's Uncle Joe and naming the company Due Fratelli Italiano (two Italian brothers) in honor of Perri and the original defendant Pasquale. *See* The Affadavit of Sister McNamara, Exhibit E. Further, Perri advises that buying DaMarino was being done "in an effort to help Pasquale" and that it would "free Pasqwuale and his family from any liability associated with DaMarino Italian Resturant." *See **Id.***, (typos in original).

Such pleadings are more than sufficient:

> Tommy Lee alleges with adequate specificity the facts of the alleged fraud: (a) Stone II was formed by Orr and Atanasio to frustrate and evade its creditors (Compl. ¶¶ 13, 31, 38-41) and that the public sale was effectuated by a common creditor, R&R, to legitimate the scheme (Compl. ¶¶ 35, 45-48, 64-66). Therefore, the fraud exception applies and defeats Defendants' motion to dismiss the successor liability claims.

**Tommy Lee**, 971 F. Supp. 2d at 380-81.

*Mutato nomine*, the fraudulent actions of Perri and Jagnarine Defendants at bar is the same. Plaintiffs have more than adequately established the basis for successor liability against the Jagnarine Defendants in the Complaint.

### 3. There are No Issues with Statute of Limitations or Laches

Jagnarine Defendants' argument that Plaintiffs' claims against them are barred by the statute of limitations or by the doctrine of laches are woefully unavailing. Despite her protestations that she is an innocent purchaser, Jagnarine is <u>obviously</u> a co-participant in fraud against creditors along with her husband/paramour Perri and this is why notice of Plaintiffs' claims should relate back to the filing of the original complaint against Perri based on the identity

of interest. And since Perri and Jagnarine control Fratelli Italiani, Perri's continued status as a defendant in this lawsuit should be attributable to Fratelli Italiani for the same reason. *See*, e.g. ***Bernstein v. Uris Building Corporation***, 50 F.R.D. 121 (S.D.N.Y. 1970).

### 4. Plaintiffs' Wage and Discrimination Claims Are Applicable to Jagnarine Defendants

When the veneer of "innocent purchaser for value" is exposed as fraud, Jagnarine Defendants are liable for the Original Defendants' violations of the law. Thus, Jagnarine Defendants are already answerable for Pasquale and PDI's liability established on default as a sanction for their contumacous conduct (Magistrate Judge Francis adjourned an inquest on the damages *sine die*) and soon may be called to answer for the default of the additional defendants who have defaulted and against whom Plaintiffs submitted to the Court an Order to Show Cause for Default Judgment.

Since in light of Jagnarine Defendants' obvious liability, going through their mental gymnastics and responding to what now are hypothetical arguments would not only give credence to those arguments but would also be a monumental waste of the Court's time.

### V. CONCLUSION

Plaintiffs have sufficiently pleaded that, along with Perri, Jagnarine Defendants are fraudsters who engaged in an elaborate fraud to deprive Plaintiffs and other creditors recovery and, thus their successor in interest liability is patently obvious. By bringing this motion,

Jagnarine Defendants attempted to commit fraud on the court to avoid responsibility. Thus, for all of the foregoing reasons, Plaintiffs respectfully request that Jagnarine Defendants' motion to dismiss be denied.

Dated: New York, NY
January 10, 2019

Respectfully submitted,

*/s/Robert Wisniewski*

Robert Wisniewski