UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GENESIS WILSON, ALIAKSANDRA KULESH, NATALIA ZEMTSOVA, YULIYA SYNYUK, TATIANA LISOVSKAYA, MOHAMMED MOIN UDDIN, KSENIA ARTATES, ABDOULAYE NDIAYE, SANTIAGO ORTIZ, and ABIGAIL HENNESSY,<br><br>      Plaintiffs,<br><br>  - against -<br><br>PASQUALE'S DAMARINO'S, INC., IZABELA MARINO, PETER ROSSIGNUOLO a/k/a PETER ROSSI, CRAIG PERRI, GIANCARLO MONTESARCHIO, SALVATORE ABBATE, FRED MARINO, 220 WEST RESTAURANT CORP., JOSEPH MARINO a/k/a GIUSEPPE MARINO, KAVITA JAGNARINE a/k/a KAY JAGNARINE, PIATTI ITALIANI LLC, and FRATELLI ITALIANI LLC,<br><br>      Defendants. | **ORDER**<br><br>10 Civ. 2709 (PGG) |

PAUL G. GARDEPHE, U.S.D.J.:

    In this putative class action, Plaintiffs – former employees of DaMarino Restaurant in midtown Manhattan – bring claims for sexual harassment, wage violations, and retaliation against individuals and corporations associated with DaMarino Restaurant. Pending before the Court is a motion to dismiss filed by Defendants Kavita Jagnarine and Fratelli Italiani LLC. (Dkt. No. 369) For the reasons set forth below, Defendants' motion will be granted in part and denied in part.

## BACKGROUND

### I. PARTIES

Plaintiffs are former employees of DaMarino Restaurant, an Italian restaurant located at 220 West 49th Street in Manhattan. (Sixth Amended Complaint ("SAC") (Dkt. No. 274) ¶¶ 4, 5, 23)

Defendants Pasquale's DaMarino's, Inc. ("DaMarino's Inc.") and 220 West Restaurant Corp. are New York corporations, and together they owned DaMarino Restaurant until 2014. (Id. ¶¶ 4, 23, 209) DaMarino's Inc. operated the restaurant and employed Plaintiffs, and 220 West Restaurant Corp. "owned the liquor license, the lease for the space[,] and all moveable property." (Id. ¶ 43)

Defendants Izabela Marino, Peter Rossignuolo, Craig Perri, Giancarlo Montesarchio, Salvatore Abbate, Fred Marino, and Joseph Marino are individuals who – along with Pasquale Marino, a former defendant who died on November 15, 2015 – were the "officers, shareholders, managers, employees, and/or majority owners" of DaMarino's Inc. and 220 West Restaurant Corp. (Id. ¶¶ 4, 16)

Defendants Piatti Italiani LLC ("Piatti") and Fratelli Italiani LLC ("Fratelli") are New York corporations. (Id. ¶¶ 11, 12) Piatti became the corporate owner of DaMarino Restaurant in 2014, and Fratelli became the corporate owner of DaMarino Restaurant in 2015. (Id. ¶¶ 209, 212)

Defendant Kavita Jagnarine is – along with Perri, Fred Marino, and Joseph Marino – an "officer, director, manager, and/or majority shareholder" of Piatti and Fratelli. (Id. ¶ 17) Jagnarine and Perri are "either married or living in concubinage," and Jagnarine currently manages DaMarino Restaurant on Perri's behalf. (Id. ¶¶ 14, 219)

## II.  FACTS

The SAC alleges that Plaintiffs worked at DaMarino Restaurant as waitresses, bartenders, and busboys between 2004 and 2010. (Id. ¶¶ 4, 25, 27-35) During that time, Plaintiffs were paid below minimum wage. Until April 2010, Plaintiffs were paid $10 per day, no matter how many hours they worked. (Id. ¶ 59) After April 2010, some employees received an hourly wage, but some – including Plaintiff Uddin – were still paid a set amount per day, and all employees were paid below minimum wage. (Id. ¶¶ 60, 70) At no time were restaurant employees paid overtime compensation, as required by federal and state law. (Id. ¶ 54) Defendants Pasquale Marino and Abbate also habitually retained tips for themselves, and Plaintiffs did not receive the tips they were entitled to. (Id. ¶¶ 61-67)

The SAC further alleges that Plaintiffs were subject to constant sexual harassment by Pasquale Marino. In 129 paragraphs (id. ¶ 74-203), the SAC details Pasquale Marino's behavior, alleging that he was a "sexual predator" who "treated the restaurant as his own personal dating service and a place where he could indulge his unwholesome desires." (Id. ¶¶ 75, 95) Examples include, inter alia, Pasquale Marino directing Plaintiff Lisovskaya to come to his apartment to have sex with him, groping Plaintiff Synyuk and then threatening to fire her when she pulled away, and asking Plaintiff Zemtsova to go away with him at least once a week, providing "detailed and florid descriptions of how he and Zemtsova would have sexual relations." (Id. ¶¶ 99, 109, 114) The SAC alleges that Defendants "were fully aware, or should have been aware, of [Pasquale Marino's] scandalous conduct but not only failed to prevent it but on numerous occasions public[ly] condoned, and even participated in, such conduct." (Id. ¶ 81)

On numerous occasions, Plaintiffs complained to Defendants that they were being underpaid, and were upset by Pasquale Marino's behavior. (Id. ¶ 147) The SAC alleges that

Plaintiffs Zemtsova, Wilson, Kulesh, Synyuk, Lisovskaya, and Uddin were fired or forced to quit in retaliation for these complaints. (Id. ¶¶ 149-203)

Plaintiffs commenced this action on March 26, 2010. (Dkt. No. 1) The SAC alleges that Pasquale Marino "engaged in numerous litigation maneuvers [to] delay the resolution of the instant lawsuit." (SAC (Dkt. No. 274) ¶ 204) "Consequently, on March 23, 2013 the Court granted Plaintiffs' motion for default [] against [Pasquale Marino and] DaMarino's Inc." on four Causes of Action in the Fourth Amended Complaint. (Id.)

Also in 2013, another former waitress at DaMarino Restaurant filed a separate complaint against Pasquale Marino and DaMarino's, Inc. – Mironova v. Pasquale's DaMarino's Inc. et al., 13 Civ. 1663 (TPG) – raising sexual harassment and hostile work environment claims. (Id. ¶ 205) On May 2, 2014, a jury returned a $2.5 million verdict against Pasquale Marino and DaMarino's Inc. (Id. ¶ 205)

After the default judgment in this action and the jury verdict in Mironova, Defendants Izabela Marino, Rossignuolo, Perri, Montesarchio, Abbate, and Fred Marino "engaged in asset shifting to protect their ownership of DaMarino Restaurant." (Id. ¶ 208) In June 2014, the individual Defendants created Defendant Piatti, and "transferred assets of Defendant 220 West [Restaurant Corp.] to Defendant Piatti, including without limitation, [the] two most important assets – the liquor license and the lease for the restaurant space" – "without consideration or for nominal consideration." (Id. ¶ 209) They then siphoned DaMarino's Inc.'s restaurant profits to Piatti "through bogus contracts and equipment leases, at all times leaving DaMarino's [Inc.] undercapitalized to avoid creditors." (Id. ¶ 210)

On June 9, 2015, the individual Defendants created Defendant Fratelli, and "shifted substantial assets from Defendant Piatti to Defendant Fratelli on a no-consideration or

4

nominal consideration basis, including the liquor license and the lease for the restaurant space." (Id. ¶¶ 212-13) "DaMarino Restaurant [is operated] in such a manner that all of the revenue minus expenses is immediately siphoned off from the entity that nominally operates the restaurant through a series of bogus contracts, leases and payments."[1] (Id. ¶ 213)

"Despite creating [Piatti and Fratelli], the [i]ndividual Defendants meticulously preserved the ambiance of DaMarino Restaurant," and Pasquale DaMarino continued to manage the restaurant until his death. (Id. ¶ 214) Other than a brief closure for renovations in 2016, DaMarino Restaurant has operated continuously since this action began. (Id. ¶¶ 215-26) The SAC alleges:

> The menu is identical to the menu when Plaintiffs worked there – including the famous chocolate fettuc[cine] dish. This is not surprising as Luis [–] the Mexican chef who worked during [Pasquale Marino's] tenure [–] is still the chef at the restaurant and so is, upon info[r]mation and belief, a substantial portion of the kitchen staff. Defendants also have worked to preserve the ambiance that [Pasquale Marino] created. The restaurant website is full of glowing descriptions of "continuing" the same style, cuisine[,] and ambiance of "chef Pasquale" – that is[, Pasquale Marino]. The decorations whilst upgraded continue to give off the romantic ambiance. The round table, at which [Pasquale Marino] sat every day and at which he abused Plaintiffs and other women, is still in the same place. DaMarino Restaurant, as before, is full of celebrities. . . . Upon information and belief, in addition to the kitchen personnel that continues to work at the restaurant, Defendants have the same supervisory personnel – Defendant Jagnarine and her son, John Khan, who is the stepson of Defendant Perri, manage the restaurant on Perri's behalf. Defendants also continue to use the same assets of [DaMarino's Inc. and 220 West Restaurant Corp.] – from the transferred lease and liquor license, to the tables and other restaurant equipment which the restaurant now leases from [either Piatti or Fratelli].

(Id. ¶¶ 216-19)

The SAC was filed on March 9, 2018. It asserts claims for (1) breach of contract against the corporate defendants, (2) quantum meruit against all defendants, (3) violations of the

---

[1] The SAC uses the passive voice here; accordingly, it is not clear to whom or to what the restaurant's profits are "siphoned."

New York Labor Law ("NYLL") against all defendants, (4) violations of the Fair Labor Standards Act ("FLSA") against all defendants, (5) sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law, and the New York City Human Rights Law against all defendants, and (6) negligent supervision of Pasquale Marino against the corporate defendants.[2] (Id. ¶¶ 227-329)

Jagnarine and Fratelli have moved to dismiss the claims against them, arguing that "there is no nexus between Fratelli's corporate ownership of [DaMarino's Restaurant] and the underlying case," and that the SAC pleads no facts supporting "the generalized claim that Defendants Jagnarine or Fratelli were in any way involved in the transfer of assets in 2014 [from Defendant 220 West Restaurant Corp.] to [Defendant] Piatti." (Def. Br. (Dkt. No. 371) at 8-9)[3] Jagnarine and Fratelli further argue that the SAC does not plead facts sufficient to demonstrate that they are successors in interest to DaMarino's Inc. and 220 West Restaurant Corp. (Id. at 9)

## DISCUSSION

### I. MOTION TO DISMISS STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)),

---

[2] The SAC also raises claims for intentional infliction of emotional distress and assault and battery against Pasquale Marino. (Id. ¶¶ 330-44) As noted above, Pasquale Marino is deceased and is no longer a defendant in this action.

[3] All references to page numbers in this Order are as reflected in this District's Electronic Case Filing system.

6

and must "draw all reasonable inferences in favor of the plaintiff," id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957))).

"In general, [on a motion to dismiss the Court may consider] the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007) (citing Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 776 (2d Cir. 2002)). The Court may also consider "extrinsic materials" that are "either integral to [the] complaint or an appropriate subject for judicial notice." Glob. Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 156 (2d Cir. 2006).

## II. DOCUMENTS EXTRINSIC TO THE COMPLAINT

In connection with Jagnarine and Fratelli's motion to dismiss, Defendants and Plaintiffs have submitted documents that are extrinsic to the SAC.

### A. Extrinsic Documents Submitted by Defendants

In support of their motion to dismiss, Defendants have submitted (1) a page entitled "Entity Information" from the New York Department of State's Division of Corporations regarding Defendant Fratelli (Dkt. No. 370-2); and (2) an Asset Purchase Agreement between Defendants Piatti and Fratelli. (Dkt. No. 370-3) Defendants contend that these documents are

7

incorporated by reference in the SAC, but they cite no law in support of this argument. (Def. Br. (Dkt. No. 371) at 11)

The Court concludes that the Division of Corporations record concerning Fratelli, and the Asset Purchase Agreement, are not incorporated by reference in the SAC. Documents are not incorporated by reference merely because they "relate[] to" allegations in a complaint. Goel v. Bunge, Ltd., 820 F.3d 554, 560 (2d Cir. 2016). Instead, documents are incorporated by reference in a complaint only where the complaint "make[s] a clear, definite and substantial reference to the documents." Helprin v. Harcourt, Inc., 277 F. Supp. 2d 327, 331 (S.D.N.Y. 2003). Here, the SAC states that Defendant Fratelli (1) was created on June 9, 2015; and (2) purchased "substantial assets" from Defendant Piatti for little or no consideration. The SAC does not reference Division of Corporations records concerning Fratelli, nor does it reference the Asset Purchase Agreement. To the extent that a reference to an asset purchase implies the existence of an asset purchase agreement, such a "[l]imited . . . reference to [a] document[] that may constitute relevant evidence in a case is not enough to incorporate th[is] document[], wholesale, into [a] complaint." Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004). Accordingly, the Court will not consider these documents in connection with Jagnarine and Fratelli's motion to dismiss.

### B. Extrinsic Documents Submitted by Plaintiffs

In opposition to the motion to dismiss, Plaintiffs have submitted (1) a March 5, 2011 declaration by Tatiana Mironova – the former DaMarino Restaurant waitress who won a jury verdict in a separate action (Dkt. No. 374-1); (2) this Court's Order entering default against Pasquale Marino and DaMarino's Inc. on Plaintiff's NYLL and FLSA claims (Dkt. No. 374-2); (3) the verdict form in Mironova v. Pasquale's DaMarino's Inc. et al., 13 Civ. 1663 (TPG) (Dkt. No. 374-3); (4) a February 16, 2018 letter to the Magistrate Judge Lehrburger regarding

8

Plaintiffs' efforts to serve Defendant Perri, along with a 2015 newsletter about DaMarino Restaurant (Dkt. No. 374-4); (5) an October 11, 2016 Answer filed by Defendants Fratelli, Perri, and Jagnarine in an unrelated action in New York state court (Dkt. No. 374-5); (6) an April 7, 2017 affidavit of Defendant Jagnarine filed in the same unrelated action (Dkt. No. 374-6); (7) an April 17, 2017 affidavit of a third party, also filed in the unrelated action, with two e-mails attached from Defendant Perri to a third party, dated August 27, 2015 and May 5, 2016 (Dkt. No. 374-7); and (8) several Facebook posts by and about Defendants Jagnarine and Perri (Wisniewski Decl. (Dkt. No. 374) ¶¶ 14-15).

Plaintiffs argue that these documents prove that Defendants Perri and Jagnarine are in a relationship, and that they own and operate DaMarino Restaurant. (Pltf. Br. (Dkt. No. 373) at 10-12) The Court can consider these documents, Plaintiffs argue, because they are "in the public domain" and subject to judicial notice. (Id. at 10, 12)

As to Plaintiffs' judicial notice argument, a district court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) generally is known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Facebook posts and e-mails between Defendant Perri and a third party are not the type of documents that are subject to judicial notice.

As to the court records cited by Plaintiff, the existence of court records and other public records "'are facts of which a court may properly take judicial notice pursuant to Rule 201.'" Bejaoui v. City of New York, No. 13 Civ. 5667 (NGG) (RML), 2015 WL 1529633, at *5 (E.D.N.Y. Mar. 31, 2015) (quoting Konrad v. Epley, No. 12 Civ. 4021 (JFB) (ETB), 2013 WL 6200009, at *8 n.5 (E.D.N.Y. Nov. 25, 2013), aff'd, 586 Fed. Appx. 72 (2d Cir. 2014)).

9

However, "'[a] court may take judicial notice of a document filed in another court <u>not for the truth of the matters asserted in the other litigation</u>, but rather to establish the fact of such litigation and related filings.'" Glob. Network Commc'ns, Inc., 458 F.3d 150, 157 (quoting Int'l Star Class Yacht Racing Assn'n v. Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998)) (emphasis added); see also Liberty Mutual Ins. Co. v. Rotches Pork Packers, Inc., 969 F.2d 1384, 1388 (2d Cir. 1992) (same). Accordingly, Plaintiffs cannot rely on these materials to demonstrate, for example, that Defendants Jagnarine and Perri are in a relationship, and together own and operate DaMarino Restaurant.

\* \* \* \*

In sum, in resolving Defendant Jagnarine and Fratelli's motion to dismiss, this Court has not relied on any of the extrinsic documents submitted by the parties.

### III. SUCCESSOR LIABILITY

Plaintiffs argue that Defendants Jagnarine and Fratelli are successors in interest to DaMarino's Inc. and 220 West Restaurant Corp., and are therefore liable for the debts and obligations of those companies. (Pltf. Br. (Dkt. No. 373) at 9) Defendants argue that the SAC does not plead facts sufficient to demonstrate a basis for successor liability, and that there is no other basis for holding Jagnarine and Fratelli liable for Plaintiffs' claims. (Def. Br. (Dkt. No. 371) 14-31)

#### A. Applicable Law

Under New York law, "the purchaser of a corporation's assets does not, as a result of the purchase, ordinarily become liable for the seller's debts." Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41, 45 (2d Cir. 2003) (citing Schumacher v. Richards Shear Co., 59 N.Y.2d 239, 244-45 (1983) ("It is the general rule that a corporation which acquires the assets of another is not liable for the torts of its predecessor."); Arnold Graphics Indus. v. Indep. Agent Ctr.,

10

Inc., 775 F.2d 38 (2d Cir.1985) (applying this principle to a debt arising from contract)). "New York recognizes [the following] four common-law exceptions to the rule that an asset purchaser is not liable for the seller's debts. . . . : (1) [where] a buyer . . . formally assumes a seller's debts; (2) [where] transactions [were] undertaken to defraud creditors; (3) [where] a buyer . . . de facto merged with a seller; and (4) [where] a buyer . . . is a mere continuation of a seller."[4] Id. (citing Schumacher, 59 N.Y.2d at 245; 10 William Meade Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 4880 (2002)).

### 1. **Transaction Undertaken to Defraud Creditors**

"When a party has alleged facts to show that a fraudulent conveyance may have taken place, it can be inferred that the transaction was undertaken to defraud creditors and the second exception for imposing successor liability applies." A.J. Heel Stone, L.L.C. v. Evisu Int'l, S.R.L., No. 03 Civ. 1097 (DAB), 2006 WL 1458292, at *4 (S.D.N.Y. May 25, 2006)

---

[4] As to federal common law concerning successor liability, there is a "substantial continuity" test that "'extends to almost every employment law statute.'" Xue Ming Wang v. Abumi Sushi Inc., 262 F. Supp. 3d 81, 88 (S.D.N.Y. 2017) (quoting Steinbach v. Hubbard, 51 F.3d 843, 845 (9th Cir. 1995)). "That doctrine, 'which presents a lower bar to relief than most state jurisprudence, was designed to impose liability upon successors beyond the confines of the common law rule when necessary to protect important employment-related policies.'" Id. (quoting Thompson v. Real Estate Mortg. Network, 748 F.3d 142, 150 (3d Cir. 2014)). "The Second Circuit has yet to address whether the substantial continuity test applies in the FLSA context." Bautista v. Beyond Thai Kitchen, Inc., No. 14 Civ. 4335 (LGS), 2015 WL 5459737, at *3 (S.D.N.Y. Sept. 17, 2015). Several courts in this District and other circuits have concluded, however, that the doctrine applies in FLSA cases. See, e.g., id.; Xue Ming Wang, 262 F. Supp. 3d at 88; Battino v. Cornelia Fifth Ave. LLC, 861 F. Supp. 2d 392, 403-04 (S.D.N.Y. 2012); Jai Fu Chen v. New 9th Ave Pearl on the Sushi, Inc., No. 14 Civ. 580 (JPO), 2015 WL 3947560, at *4-5 (S.D.N.Y. June 29, 2015); Wong v. Hunda Glass Corp., No. 09 Civ. 4402 (RLE), 2010 WL 2541698, at *1 (S.D.N.Y. June 23, 2010); Thompson, 748 F.3d at 151-52; Teed v. Thomas & Betts Power Sols., L.L.C., 711 F.3d 763, 766-67 (7th Cir. 2013); Steinbach, 51 F.3d at 845.

Because this Court concludes that (1) Fratelli is a successor-in-interest to Piatti and 220 West Restaurant Corp. under the more stringent New York common law test; and (2) Jagnarine – as an individual – cannot be a successor to a corporation, the Court need not address the "substantial continuity" test, or whether it applies in FLSA cases.

11

(denying motion to dismiss successor liability claim "[b]ecause the Court has found that Petitioner has adequately pled fraudulent conveyance"). "Under Section 276 of the New York Debtor and Creditor Law, a conveyance made "'with actual intent . . . to hinder, delay, or defraud either present or future creditors is fraudulent as to both present and future creditors.""" Silverman Partners LP v. Verox Grp., No. 08 Civ. 3103 (HB), 2010 WL 2899438, at *6 (S.D.N.Y. July 19, 2010) (quoting Cargo Partner AG v. Albatrans Inc., 207 F. Supp. 2d 86, 115 (S.D.N.Y. 2002), aff'd, 352 F.3d 41 (2d Cir. 2003)).

To proceed under this theory, Plaintiffs must "plead actual intent to defraud with the particularity required by Fed. R. Civ. P. 9(b)." A.J. Heel Stone, 2006 WL 1458292, at *3 (citing Eclaire Advisor as Tr. to Daewoo Int'l (Am.) Corp. Creditor Tr. v. Daewoo Eng'g & Constr. Co., 375 F. Supp. 2d 257, 268 (S.D.N.Y. 2005)). "Circumstantial evidence may be used to infer actual intent to defraud and there are certain 'badges of fraud' to be used when determining if actual intent exists, which include: (1) the inadequacy of consideration received, (2) the close relationship between the parties to the transfer, (3) information that the transferor was insolvent by the conveyance, (4) suspicious timing of transactions or existence of pattern after the debt had been incurred or a legal action against the debtor had been threatened, or (5) the use of fictitious parties." Silverman Partners LP, 2010 WL 2899438, at *6 (citing Eclaire Advisor Ltd. as Trustee to Daewoo Int'l (America) Corp., 375 F. Supp. 2d at 268-69).

### 2. De Facto Merger

"'A de facto merger occurs where one corporation is absorbed by another, but without compliance with the statutory requirements for a merger.'" Cargo Partner AG, 207 F. Supp. 2d at 96 (quoting Arnold Graphics Industries, Inc. v. Independent Agent Center, Inc., 775 F.2d 38, 42 (2d Cir.1985)). "The hallmarks of a de facto merger include: [(1)] continuity of ownership; [(2)] cessation of ordinary business and dissolution of the acquired corporation as

12

soon as possible; [(3)] assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the acquired corporation; and, [(4)] continuity of management, personnel, physical location, assets and general business operation." Fitzgerald v. Fahnestock & Co., 286 A.D.2d 573, 574 (1st Dept. 2001) (citing Sweatland v. Park Corp., 181 A.D.2d 243, 245-46 (4th Dept. 1992)).

"Not all of these elements are necessary to find a de facto merger." Id. at 574-75. However, the Second Circuit has held that "the doctrine of de facto merger in New York does not make a corporation that purchases assets liable for the seller's contract debts absent continuity of ownership." Cargo Partner AG, 352 F.3d at 46. As to the dissolution of the predecessor corporation, "the Appellate Division of the New York Supreme Court has held that 'so long as the acquired corporation is shorn of its assets and has become, in essence, a shell, legal dissolution is not necessary before a finding of de facto merger will be made.'" Societe Anonyme Dauphitex v. Schoenfelder Corp., No. 07 Civ. 489 (RWS), 2007 WL 3253592, at *4 (S.D.N.Y. Nov. 2, 2007) (quoting Fitzgerald, 730 N.Y.S.2d at 72).

### 3. Mere Continuation

"The mere continuation exception applies where '"it is not simply the business of the original corporation which continues, but the corporate entity itself,"' and there is a '"common identity of directors, stockholders, and the existence of only one corporation at the completion of the transfer."'" Silverman Partners LP, 2010 WL 2899438, at *5 (quoting Colon v. Multi-Pak Corp., 477 F. Supp. 2d 620, 626-27 (S.D.N.Y. 2007) (quoting Ladjaverdian v. Laidlaw-Coggeshall, Inc., 431 F. Supp. 834, 839 (S.D.N.Y. 1977))).

> The mere continuation exception is "designed to prevent a situation whereby the specific purpose of acquiring assets is to place those assets out of reach of the predecessor's creditors . . . . Thus, the underlying theory of the exception is that[ ] if [a] corporation goes through a mere change in form without a significant change in substance, it should not be allowed to escape liability."

13

Societe Anonyme Dauphitex, 2007 WL 3253592, at *6 (quoting 15 W. Fletcher, Cyclopedia of the Law of Private Corporations § 7124.10 (perm ed., rev. vol.1999)).

> While some courts have held that the predecessor corporation must be extinguished in the sale for the mere continuation exception to apply, Schumacher, 451 N.E.2d at 198, many others have found that the exception still applies if the predecessor transfers its assets, business location, address, employees, good will and management, and it is logical to infer that the successor corporation was created to avoid liability. Societe, 2007 WL 3253592, at *6-7; see also McDarren v. Marvel Entm't Group, Inc., No. 94 Civ. 910 (LMM), 1995 WL 214482, at *9 (S.D.N.Y. Apr. 7, 1995) (distinguishing Schumacher in holding that the mere continuation exception is satisfied when the predecessor transfers not only assets, but also business location, employees, management and good will to the successor, even when the predecessor continues to exist as a shell corporation).

Silverman Partners LP, 2010 WL 2899438, at *5.

As the Second Circuit has noted, "[s]ome courts have observed that the mere-continuation and de-facto-merger doctrines are so similar that they may be considered a single exception." Cargo Partner AG, 352 F.3d at 45 n.3.

### B. Analysis

#### 1. Defendant Fratelli

The SAC adequately pleads successor liability as to 220 West Restaurant Corp., Piatti, and Fratelli. The SAC pleads that Piatti purchased the assets of 220 West Restaurant Corp., and that Fratelli thereafter purchased the assets of Piatti, all in an effort to defraud creditors.

According to Plaintiffs, the jury in Mironova issued its $2.5 million verdict on May 2, 2014. (SAC (Dkt. No. 274) ¶ 205) In June 2014 – just one month later – the individual Defendants created Piatti in an effort to "protect their ownership of DaMarino Restaurant," (id. ¶¶ 208-09), and intentionally "[left] DaMarino's [Inc.] undercapitalized to avoid any creditors," (id. ¶ 210). Piatti purchased the assets of 220 West Restaurant Corp. – including the restaurant's liquor license and lease – for little or no consideration. (Id. ¶ 209) In the spring of 2015, the

14

Second Circuit upheld the verdict in Mironova, and in June 2015, the individual Defendants created Fratelli, because they were "[c]oncerned that their ownership of DaMarino Restaurant was again threatened." (Id. ¶ 212) Fratelli proceeded to purchase "substantial assets" from Piatti, including the liquor license and lease, for little or no consideration. (Id. ¶ 213) The SAC further pleads that Defendants Joseph Marino, Fred Marino, and Perri were "officers, directors, managers and/or majority shareholders" of DaMarino's Inc., 220 West Restaurant Corp., Piatti, and Fratelli (id. ¶¶ 16-17), and that the only other "officer[], director[], manager[] and/or majority shareholder[]" of Piatti and Fratelli – Jagnarine – is married to Perri (id. ¶¶ 14, 17).

These facts, taken as true, are sufficient to show that the individual Defendants transferred assets from 220 West Restaurant Corp. to Piatti, and then to Fratelli, in an effort to defraud creditors. Indeed, the SAC pleads actual intent to defraud, premised on nearly all of the "badges of fraud": (1) The assets were transferred for little or no consideration; (2) the parties representing each entity in the transfer were nearly identical; (3) DaMarino's Inc. was left undercapitalized; and (4) Piatti and Fratelli were created on the heels of the Mironova judgment and the Second Circuit's affirmation of that judgment. See Silverman Partners LP, 2010 WL 2899438, at *6 (listing "badges of fraud").

Although Plaintiffs need not allege more than one theory of successor liability, the allegations of the SAC are likely also adequate to plead de facto merger. First, the SAC pleads continuity of ownership: as stated above, the SAC alleges that Defendants Joseph Marino, Fred Marino, and Perri were "officers, directors, managers and/or majority shareholders" of DaMarino's Inc., 220 West Restaurant Corp., Piatti, and Fratelli. (Id. ¶¶ 16-17) Second, the SAC alleges that DaMarino Restaurant operated continuously throughout the asset transfers in 2014 and 2015, and – save for a brief closure for renovations in 2016 – continues to

15

operate to this day. (Id. ¶¶ 216-19) Although the SAC does not specifically allege that Piatti and Fratelli assumed "the liabilities . . . necessary for the uninterrupted continuation" of the restaurant, that is a reasonable inference given the allegation that DaMarino Restaurant was able to continue operating, "uninterrupted." Third, the SAC alleges general continuity of the DaMarino Restaurant business: (1) Perri continues to be involved in the management of the restaurant, through Jagnarine; (2) much of the kitchen staff remains the same, including the chef; (3) the restaurant has always remained in the same location; (4) the restaurant has maintained the same lease, liquor license, equipment, and substantially the same furniture; and (5) the restaurant is otherwise essentially the same as it was when Plaintiffs worked there. (Id.) Although the predecessor corporations – 220 West Restaurant Corp. and Piatti – still exist, "[n]ot all of [the de facto merger] elements are necessary to find" successor liability. Fitzgerald, 286 A.D.2d at 574-75.

Defendants argue, however, that the SAC does not adequately allege facts to support successor liability as to Fratelli. According to Defendants, the SAC "lump[s]" Fratelli in with other Defendants, referring to them collectively as "Defendants" or "Successor Defendants." (Def. Br. (Dkt. No. 371) at 21) While it is true that Defendants are often referred to collectively in the SAC – as explained above – Plaintiffs do allege specific facts sufficient to support successor liability as to Fratelli.

Defendants also argue that Fratelli is "at least once removed from the owners of the establishment [against] whom this action was originally brought[,] as there was an intervening corporate owner of the restaurant, Piatti." (Id. at 8 (emphasis in original)) To the extent that Defendants contend that successor liability cannot follow a chain of asset transfers, they cite no law in support of that argument, and the Court is not aware of any case that would

support such a proposition. If accepted, one could escape liability to creditors simply by transferring assets to another entity.

Defendant Fratelli's motion to dismiss will be denied.

### 2. Defendant Jagnarine

"For purposes of successor liability, the successor 'is the party that actually purchases the assets of the predecessor and continues the predecessor's business.' Successor liability may not be imposed on an individual where there is merely evidence that the individual incorporated the successor entity, is an officer or major shareholder of that entity and had notice of a plaintiff's claims." Bautista, 2015 WL 5459737, at *5 (quoting and citing Musikiwamba v. ESSI, Inc., 760 F.2d 740, 753 (7th Cir.1985)). Accordingly, Jagnarine cannot be a successor in interest to 220 West Restaurant Corp., DaMarino's Inc., and Piatti where she did not – as an individual – purchase the assets of these corporations.

That said, "an aggrieved party can still seek to impose liability on an individual associated with the successor entity under a corporate veil-piercing theory." Lin v. Toyo Food, Inc., No. 12 Civ. 7392 (KMK), 2016 WL 4502040, at *5 (S.D.N.Y. Aug. 26, 2016) (citing Merino v. Beverage Plus Am. Corp., No. 10 Civ. 706 (JSR) (RLE), 2011 WL 3739030, at *5-7 (S.D.N.Y. Apr. 11, 2011) (granting plaintiffs summary judgment on veil-piercing issue, where corporation was deemed subject to successor liability); Musikiwamba, 760 F.2d at 753 (holding that the liability of the individual who incorporated the successor corporation "can only be derivative of [the corporation's] successor liability")).

> Under New York law, a party seeking to pierce the corporate veil must generally show that: "(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." Matter of Morris v. New York State Dep't of Taxation and Fin., 82 N.Y.2d 135, 141 (1993). The New York Court of Appeals has held that both of these elements must be established in order to justify application of the veil-piercing doctrine.

> See TNS Holdings, Inc. v. MKI Secs. Corp., 92 N.Y.2d 335, 339 (1998)
> ("Evidence of domination alone does not suffice without an additional showing
> that it led to inequity, fraud or malfeasance.").

EED Holdings v. Palmer Johnson Acquisition Corp., 228 F.R.D. 508, 512 (S.D.N.Y. 2005).

"[W]here a veil-piercing claim is based on allegations of fraud, 'the heightened pleading standard of Rule 9(b) is the lens through which those allegation[s] must be examined.'" Id. (quoting In re Currency Conversion Fee Antitrust Litig., 265 F.Supp.2d 385, 425 (S.D.N.Y.2003)).

Here, Plaintiffs have not asked the Court to pierce the corporate veil between Fratelli and Jagnarine. (See generally Pltf. Br. (Dkt. No. 373)) Moreover, the SAC does not allege facts showing that Jagnarine "exercised complete domination" over Fratelli. Instead, the SAC alleges only that Jagnarine is an "officer, director, manager, and/or majority shareholder" of Piatti and Fratelli, and that she manages DaMarino Restaurant on Defendant Perri's behalf. (SAC (Dkt. No. 274) ¶¶ 17, 218) These facts are not sufficient to support a "piercing the corporate veil" theory of liability.

Plaintiffs offer no other basis for holding Jagnarine liable for conduct that allegedly occurred in or before 2010 – four years before she allegedly became involved with the restaurant. Accordingly, the claims against her will be dismissed.

## CONCLUSION

For the reasons stated above, Defendant Fratelli's motion to dismiss is denied, and Defendant Jagnarine's motion to dismiss is granted. The Clerk of Court is directed to terminate the motion (Dkt. No. 369).

Dated: New York, New York
       September 23, 2019

SO ORDERED.

Paul G. Gardephe
United States District Judge