UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GENESIS WILSON, ALIAKSANDRA KULESH, NATALIA ZEMTSOVA, YULIYA SYNYUK, TATIANA LISOVSKAYA, MOHAMMED MOIN UDDIN, KSENIA ARTATES, ABDOULAYE NDIAYE, SANTIAGO ORTIZ, and ABIGAIL HENNESSY,

                Plaintiffs,

- against -

PASQUALE'S DAMARINO'S, INC., IZABELA MARINO, PETER ROSSIGNUOLO a/k/a PETER ROSSI, CRAIG PERRI, GIANCARLO MONTESARCHIO, SALVATORE ABBATE, FRED MARINO, 220 WEST RESTAURANT CORP., JOSEPH MARINO a/k/a GIUSEPPE MARINO, KAVITA JAGNARINE a/k/a KAY JAGNARINE, PIATTI ITALIANI LLC, and FRATELLI ITALIANI LLC,

                Defendants.

**ORDER**

10 Civ. 2709 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        In this putative class action, Plaintiffs – former employees of DaMarino Restaurant in midtown Manhattan – bring claims for sexual harassment, wage and hour violations, and retaliation against Defendants – individuals and corporations associated with DaMarino Restaurant. Pending before the Court is Plaintiffs' motion for (1) a preliminary injunction "enjoining Defendants [] from managing or transferring any assets from DaMarino Restaurant [] pending the outcome of this litigation"; (2) the appointment of a receiver for Defendants Pasquale's DaMarino's, Inc. ("DaMarino's, Inc."), 220 West Restaurant Corp., Piatti

Italiani LLC ("Piatti"), and Fratelli Italiani LLC ("Fratelli") (collectively "Corporate Defendants"); and (3) in the alternative to receivership, the attachment of the Corporate Defendants' assets. (Dkt. No. 361) For the reasons set forth below, Plaintiffs' motion will be denied.

## BACKGROUND

### I. PLAINTIFFS' ALLEGATIONS IN THE SIXTH AMENDED COMPLAINT

Plaintiffs are former waitresses, bartenders, and busboys of DaMarino Restaurant, an Italian restaurant located at 220 West 49th Street in Manhattan. (SAC (Dkt. No. 274) ¶¶ 4-5, 23, 25, 27-35)

Defendants DaMarino's, Inc. and 220 West Restaurant Corp. are New York corporations, and together owned DaMarino Restaurant until 2014. (Id. ¶¶ 4, 23, 209) According to the SAC, DaMarino's Inc. operated the restaurant and employed Plaintiffs, and 220 West Restaurant Corp. "owned the liquor license, the lease for the space[,] and all moveable property." (Id. ¶ 43) Defendants Piatti and Fratelli are New York corporations. (Id. ¶¶ 11, 12) The SAC alleges that Piatti became the corporate owner of DaMarino Restaurant in 2014, and Fratelli became the corporate owner of DaMarino Restaurant in 2015. (Id. ¶¶ 209, 212)

Defendants Izabela Marino, Peter Rossignuolo, Craig Perri, Giancarlo Montesarchio, Salvatore Abbate, Fred Marino, and Joseph Marino were – along with Pasquale Marino, a former defendant who died on November 15, 2015 – the "officers, shareholders, managers, employees, and/or majority owners" of DaMarino's Inc. and 220 West Restaurant Corp. (Id. ¶¶ 4, 16) Defendant Kavita Jagnarine is an individual who – along with Perri, Fred Marino, and Joseph Marino – is an "officer, director, manager, and/or majority shareholder" of Piatti and Fratelli. (Id. ¶ 17) Jagnarine and Perri are "either married or living in concubinage," and Jagnarine currently manages DaMarino Restaurant on Perri's behalf. (Id. ¶¶ 14, 219)

2

According to the SAC, Plaintiffs (1) were paid below minimum wage, (2) were not paid a premium rate for the overtime hours they worked, and (3) did not receive the tips they were entitled to. (Id. ¶¶ 54, 59-67, 70) The SAC further alleges that Plaintiffs were subject to constant sexual harassment by Defendant Pasquale Marino. In 129 paragraphs (id. ¶ 74-203), the SAC details Pasqual Marino's behavior, alleging that he was a "sexual predator" who "treated the restaurant as his own personal dating service and a place where he could indulge his unwholesome desires." (Id. ¶¶ 75, 95) The SAC alleges that Defendants "were fully aware, or should have been aware, of [Pasquale Marino's] scandalous conduct but not only failed to prevent it but on numerous occasions public[ly] condoned, and even participated in, such conduct." (Id. ¶ 81)

On numerous occasions, Plaintiffs complained that they were being underpaid, and were upset by Pasquale Marino's behavior. (Id. ¶ 147) The SAC alleges that Plaintiffs Zemtsova, Wilson, Kulesh, Synyuk, Lisovskaya, and Uddin were fired or forced to quit in retaliation for these complaints. (Id. ¶¶ 149-203)

Plaintiffs commenced this action on March 26, 2010. (Dkt. No. 1) The SAC alleges that Pasquale Marino "engaged in numerous litigation maneuvers [to] delay the resolution of the instant lawsuit." (SAC (Dkt. No. 274) ¶ 204) "Consequently, on March 23, 2013 the Court granted Plaintiffs' motion for default [] against [Pasquale Marino and] DaMarino's Inc." on four Causes of Action in the Fourth Amended Complaint. (Id.)

Also in 2013, another former waitress at DaMarino Restaurant filed a separate complaint against Pasquale Marino and DaMarino's, Inc. – Mironova v. Pasquale's DaMarino's Inc. et al., 13 Civ. 1663 (TPG) – raising sexual harassment and hostile work environment claims.

(Id. ¶ 205) On May 2, 2014, a jury returned a $2.5 million verdict against Pasquale Marino and DaMarino's Inc. (Id. ¶ 205)

After the default judgment in this action and the jury verdict in Mironova, Defendants Izabela Marino, Rossignuolo, Perri, Montesarchio, Abbate, and Fred Marino "engaged in asset shifting to protect their ownership of DaMarino Restaurant." (Id. ¶ 208) In June 2014, the individual Defendants created Defendant Piatti, and "transferred assets of Defendant 220 West [Restaurant Corp.] to Defendant Piatti, including without limitation, [the] two most important assets – the liquor license and the lease for the restaurant space" – "without consideration or for nominal consideration." (Id. ¶ 209) They then siphoned DaMarino's Inc.'s restaurant profits to Piatti "through bogus contracts and equipment leases, at all times leaving DaMarino's [Inc.] undercapitalized to avoid creditors." (Id. ¶ 210)

On June 9, 2015, the individual Defendants created Defendant Fratelli, and "shifted substantial assets from Defendant Piatti to Defendant Fratelli on a no-consideration or nominal consideration basis, including the liquor license and the lease for the restaurant space." (Id. ¶¶ 212-13) "DaMarino Restaurant [is operated] in such a manner that all of the revenue minus expenses is immediately siphoned off from the entity that nominally operates the restaurant through a series of bogus contracts, leases and payments."[1] (Id. ¶ 213)

"Despite creating [Piatti and Fratelli], the [i]ndividual Defendants meticulously preserved the ambiance of DaMarino Restaurant," and Pasquale DaMarino continued to manage the restaurant until his death. (Id. ¶ 214) Other than a brief closure for renovations in 2016, DaMarino Restaurant has operated continuously since this action began. (Id. ¶¶ 215-26)

---

[1] The SAC uses the passive voice here; accordingly, it is not clear to whom or to what the restaurant's profits are "siphoned."

4

The SAC was filed on March 9, 2018. It asserts claims for (1) breach of contract against the Corporate Defendants; (2) quantum meruit against all Defendants; (3) violations of the New York Labor Law ("NYLL") against all Defendants; (4) violations of the Fair Labor Standards Act ("FLSA") against all Defendants; (5) sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law, and the New York City Human Rights Law against all Defendants; and (6) negligent supervision of Pasquale Marino against the Corporate Defendants.[2] (Id. ¶¶ (227-329)

## II. PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION, RECEIVERSHIP AND/OR ATTACHMENT

On January 22, 2019, Plaintiffs filed a motion for a preliminary injunction, the appointment of a receiver, and/or attachment. (Dkt. No. 361) Plaintiffs contend that Defendants have engaged in a pattern of behavior whereby they fraudulently transfer the assets of DaMarino Restaurant between different corporate entities, all in an effort to "hide assets from Plaintiffs." (Pltf. Br. (Dkt. No. 363) at 2) Plaintiffs contend that they are entitled to a preliminary injunction enjoining the individual defendants from managing or transferring the assets of DaMarino Restaurant, and to the appointment of a receiver to oversee the assets of the corporate defendants to prevent further fraudulent transfers. (Id.) In the alternative to receivership, Plaintiffs request that the Court attach the assets of the corporate defendants to prevent further fraudulent transfers. (Id.)

In support of their motion, Plaintiffs filed the following materials: (1) declarations from Plaintiffs Genesis Wilson, Natalia Zemtsova, and Yuliya Synyuk, as well as third party and former restaurant employee Tatiana Mironova, regarding their experiences at

---

[2] The SAC also raises claims for intentional infliction of emotional distress and assault and battery against Pasquale Marino. (Id. ¶¶ 330-44) As noted above, Pasquale Marino is deceased and is no longer a defendant in this action.

5

DaMarino Restaurant (Dkt. Nos. 362-2, 362-3, 362-4, 362-5); (2) this Court's order entering a default judgment against Pasquale Marino and DaMarino's Inc. on Plaintiffs' NYLL and FLSA claims (Dkt. No. 362-6); (3) the trial transcript from Mironova v. Pasquale's DaMarino's, Inc., 13 Civ. 1663 (TPG) and the jury verdict form in that case (Dkt. Nos. 362-7, 362-8); (4) a newsletter referring to Defendant Perri as a "host" of DaMarino Restaurant (Dkt. No. 362-9); (6) an affidavit by DaMarino Restaurant's landlord prepared in connection with a separate action, attaching two e-mails from Defendant Perri to the landlord, including one requesting that the restaurant's lease be transferred from Piatti to Fratelli in order to "free Pasq[u]ale and his family from any liability associated with DaMarino Italian Restaurant" (Dkt. No. 364-2); (7) Facebook posts by an account in the name "Craig Perri" stating that he has a restaurant in Times Square (Wisiniewski Decl. (Dkt. No. 364) ¶¶ 10, 12); (8) an account of Plaintiffs' attempts to serve Defendant Perri with the SAC (id. ¶¶ 13-16); (9) an answer to a complaint in a separate action filed by Defendants Fratelli, Perri, and Jagnarine (Dkt. No. 364-4); and (10) an e-mail sent by defense counsel to Plaintiffs' counsel on November 26, 2018, requesting consent for Defendant Perri to file an Answer to the SAC (Dkt. No. 364-5). Plaintiffs make no effort to explain how these materials justify the relief they seek in the instant motion.

    Defendants Fratelli, Perri, and Jagnarine filed an opposition to Plaintiffs' motion. (Def. Opp. (Dkt. No. 366)) Defendants contend, inter alia, that Plaintiffs have not demonstrated that any assets were transferred to Fratelli with fraudulent intent. Defendants argue that Plaintiffs have not offered evidence "that there was or is fraudulent intent on behalf of Defendant

Fratelli or that Fratelli has acted in any manner to defraud Plaintiffs or that Fratelli . . . is in the process of selling the restaurant's assets." (Def. Opp. (Dkt. No. 366) at 9)[3]

In lieu of filing a reply brief, Plaintiffs submitted a brief prepared by a third party – Tatiana Mironova – in a separate action: Fratelli Italiani LLC v. Tatiana Mironova, 18 Civ. 7013 (CM). In that case, Fratelli brought extortion claims against former DaMarino Restaurant employee Mironova, who won a $2.5 million jury verdict against Pasquale Marino and DaMarino's Inc. (Wisniewski Reply Decl. (Dkt. No. 364) ¶ 4) In that action, Mironova moved for attachment of Fratelli's assets, even though she was the defendant and had not brought a cause of action against Fratelli. (Mironova Br. (Dkt. No. 364-1) at 6) Plaintiffs here have submitted Mironova's reply brief in support of her motion for attachment in Fratelli Italiani LLC v. Tatiana Mironova, arguing that it "covers precisely the same issues as those that are raised in this motion." (Wisniewski Reply Decl. (Dkt. No. 364) ¶ 3). Mironova's motion for an attachment was denied by Judge McMahon on April 11, 2019. (Dkt. No. 393-1)

## DISCUSSION

I. **PRELIMINARY INJUNCTION**

A court may issue a preliminary injunction only where

> [first,] the plaintiff has demonstrated "either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation . . . ." Second, the court may issue the injunction only if the plaintiff has demonstrated "that he is likely to suffer irreparable injury in the absence of an injunction." . . . Third, a court must consider the balance of hardships between the plaintiff and defendant and issue the injunction only if the balance of

---

[3] In support of their opposition, Defendants filed: (1) a record from the New York Department of State, Division of Corporations, stating that Fratelli was incorporated in New York on June 9, 2015, and listing Defendant Jagnarine as a point of contact (Dkt. No. 365-2); (2) a July 29, 2015 asset purchase agreement between Defendants Piatti and Fratelli, stating that Fratelli would purchase the assets of DaMarino Restaurant for $80,000 (Dkt. No. 365-3); and (3) Plaintiffs' response to Defendants' first request for discovery documents (Dkt. No. 365-4).

hardships tips in the plaintiff's favor. Finally, the court must ensure that the "public interest would not be disserved" by the issuance of a preliminary injunction. Salinger v. Colting, 607 F.3d 68, 79-80 (2d Cir. 2010) (citations omitted).

"A showing of irreparable harm is 'the single most important prerequisite for the issuance of a preliminary injunction.'" Faiveley Transp. Malmo AB v. Wabtec Corp., 559 F.3d 110, 118 (2d Cir. 2009) (quoting Rodriguez v. DeBuono, 175 F.3d 227, 234 (2d Cir.1999)). "'To satisfy the irreparable harm requirement, Plaintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm.'" Grand River Enter. Six Nations, Ltd. v. Pryor, 481 F.3d 60, 66 (2d Cir. 2007) (quoting Freedom Holdings, Inc. v. Spitzer, 408 F.3d 112, 114 (2d Cir. 2005) (internal citations omitted)). "Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances." Moore v. Consol. Edison Co. of N.Y., 409 F.3d 506, 510 (2d Cir. 2005).

Although the general rule is that a monetary injury does not constitute irreparable harm, there is an exception in "situations involving obligations owed by insolvents." Brenntag Int'l Chems., Inc. v. Bank of India, 175 F.3d 245, 250 (2d Cir. 1999). "Before a court will grant relief under this exception, however, the plaintiff 'must show that the risk of insolvency is likely and imminent.'" LG Capital Funding LLC v. Vape Holdings, Inc., No. 16 Civ. 2217 (CBA) (LB), 2016 WL 3129185, at *4 (E.D.N.Y. June 2, 2016) (citation omitted). "The moving party carries a heavy burden in demonstrating current or imminent insolvency at the preliminary injunction stage, and courts in this Circuit have 'denied applications for a preliminary injunction, even in the face of evidence that a defendant was in very weak financial condition.'" Coastal Inv. Partners, LLC v. DSG Glob., Inc., No. 17 CIV. 4427 (DAB), 2017 WL 3605502, at *3

(S.D.N.Y. July 31, 2017) (quoting Union Capital LLC v. Vape Holdings, Inc., No. 16-CV-1343 (RJS), 2016 WL 8813991, at *3 (S.D.N.Y. Mar. 9, 2016); and citing LG Capital Funding, LLC v. PositiveID Corp., No. 17 Civ. 1297 (NGG) (SMG), 2017 WL 2556991, at *6 (E.D.N.Y. June 12, 2017); LG Capital Funding, LLC, 2016 WL 3129185, at *4).

Here, Plaintiffs acknowledge that they seek money damages. (Pltf. Br. (Dkt. No. 363) at 11) Plaintiffs argue, however, that a preliminary injunction is necessary because "Plaintiffs clearly will suffer irreparable harm if Defendants are allowed to continue to fraudulently transfer assets away from the Corporate Defendants." (Id.)

Plaintiffs have offered no evidence that any of the Defendants are insolvent, including the Corporate Defendants. Moreover, Plaintiffs have not offered evidence sufficient to demonstrate that DaMarino's Inc. and 220 West Restaurant Corp. ever owned the assets of DaMarino Restaurant. Nor have Plaintiffs offered evidence that Defendants transferred assets from DaMarino's Inc. and 220 West Restaurant Corp. to Piatti. Although this case has been pending for nine years, Plaintiffs cite only to the SAC in "support" of these allegations. The SAC, of course, consists of mere allegations, and does not constitute proof that the asset transfers about which Plaintiffs complained actually occurred. (See id. at 7 (citing the SAC))

Ironically, the most compelling evidence that an asset transfer between Piatti and Fratelli took place has been submitted by Defendants. The asset purchase agreement between Piatti and Fratelli states that Fratelli purchased the assets of DaMarino Restaurant from Piatti in 2015 for $80,000. (Dkt. No. 364-3) Plaintiffs have also submitted an affidavit from DaMarino Restaurant's landlord – prepared in 2017 for a separate action – stating that Defendants Fratelli, Perri, and Jagnarine "assum[ed] control of" DaMarino Restaurant, and claimed to hold a lease for the space. (McNamara Aff. (Dkt. No. 364-2) ¶ 2) Attached to that affidavit is an August 27,

2015 email in which Defendant Perri requests that the lease for DaMarino Restaurant be transferred from Piatti to Fratelli in order to "free Pasq[u]ale and his family from any liability associated with DaMarino Italian Restaurant." (Dkt. No. 364-2) There is no evidence that this lease was actually transferred, however.

In any event, as stated above, Plaintiffs have not proffered evidence that (1) the assets of DaMarino Restaurant were originally owned by DaMarino's Inc. and 220 West Restaurant Corp., as Plaintiffs allege; or (2) any of the Defendants are insolvent. Without proof of the former, there is no basis for the relief Plaintiffs seek, because Plaintiffs' argument is premised on the notion that assets of DaMarino Restaurant were fraudulently transferred form DaMarino's Inc. and 220 West Restaurant Corp. to Piatti to Fratelli. Without proof of the latter, Plaintiffs cannot meet their "heavy burden" of demonstrating irreparable harm.

Accordingly, Plaintiffs' motion for a preliminary injunction will be denied.

## II.   RECEIVERSHIP

Plaintiffs have moved for the appointment of a receiver for DaMarino's Inc., 220 West Restaurant Corp., Piatti, and Fratelli, pursuant to Fed. R. Civ. P. 66.

"A federal court has the power in equity to appoint a receiver in order to protect a party's interest in property." Varsames v. Palazzolo, 96 F. Supp. 2d 361, 365 (S.D.N.Y. 2000) (citing Fed. R. Civ. P. 66). "The appointment of a receiver is considered to be an extraordinary remedy, and should be employed cautiously and granted only when clearly necessary to protect plaintiff's interests in the property." Rosen v. Siegel, 106 F.3d 28, 34 (2d Cir. 1997) (internal citations omitted). "[T]he decision of whether to appoint a receiver is one reserved to the discretion of the district court judge." Ryan Beck & Co. v. Daly Holdings, Inc., No. 06 Civ. 5349 (RCC), 2006 WL 3775964, at *2 (S.D.N.Y. Dec. 19, 2006).

> "The following factors are relevant to establishing the need for a receivership: 'Fraudulent conduct on the part of defendant; the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; the inadequacy of the available legal remedies; the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; and, in more general terms, plaintiff's probable success in the action and the possibility of irreparable injury to his interests in the property.'"

U.S. Bank Nat. Ass'n v. Nesbitt Bellevue Prop. LLC, 866 F. Supp. 2d 247, 249-50 (S.D.N.Y. 2012) (quoting Varsames, 96 F.Supp.2d at 365 (quoting 12 Wright & Miller, Federal Practice & Procedure § 2983 (1999))).

Plaintiffs argue that the corporate defendants should be placed in receivership because "Defendants made several asset transfers with the express purpose of avoiding judgment in this litigation and the Mironova matter, including transferring [DaMarino] Restaurant's assets through a series of business entities, siphoning cash to Izabela [Marino] and other confederates, transferring the nominal ownership to friends and relatives, and other schemes." (Def. Br. (Dkt. No. 363) at 12-13) According to Plaintiffs, this behavior "give[s] rise to the inference of fraudulent intent." (Id. at 13)

Plaintiffs have not, however, provided factual support for these allegations. While there is evidence that Fratelli purchased the assets associated with DaMarino Restaurant from Piatti, there is no evidence that these assets were originally owned by DaMarino, Inc. or 220 West Restaurant Corp. There is also no evidence that the purchase price Fratelli paid for the assets it obtained from Piatti was unreasonable. Finally, Plaintiffs' brief does not discuss any of the other factors this Court must consider in deciding whether to appoint a receiver.

Accordingly, Plaintiffs' motion to appoint a receiver will be denied.

### III.   ATTACHMENT

Plaintiffs have also moved for an attachment of the assets of the Corporate Defendants. (Pltf. Br. (Dkt. No. 363) at 13)

"'Prejudgment attachment is a provisional remedy to secure a debt by preliminary levy upon the property of the debtor in order to conserve that property for eventual execution.'" DLJ Mortg. Capital, Inc. v. Kontogiannis, 594 F. Supp. 2d 308, 318 (E.D.N.Y. 2009) (quoting Monteleone v. Leverage Group, No. 08 Civ. 1986 (CPS) (SMG), 2008 WL 4541124, at *6 (E.D.N.Y. Oct. 7, 2008); citing Michaels Elec. Supply Corp. v. Trott Elec. Inc., 231 A.D.2d 695 (2d Dep't 1996)). Under Rule 64 of the Federal Rules of Civil Procedure, attachment is available as a remedy "under the law of the state where the court is located." Fed. R. Civ. P. 64. Under New York law, a party seeking prejudgment attachment must show

> by affidavit and such other written evidence as may be submitted, [(1)] that there is a cause of action, [(2)] that it is probable that the plaintiff will succeed on the merits, [(3)] that one or more grounds for attachment provided in section 6201 exist, and [(4)] that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff.

N.Y. C.P.L.R. § 6212(a).

As to the grounds for attachment, Plaintiffs invoke N.Y. C.P.L.R. § 6201(3), which provides:

> An order of attachment may be granted in any action . . . where the plaintiff has demanded and would be entitled, in whole or in part, or in the alternative, to a money judgment against one or more defendants, when: . . . . the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts

Id. § 6201(3).

"The provisional remedy of attachment is 'a harsh remedy which should be construed strictly against those seeking to use it' and is 'discretionary with the trial court.'" Astra Oil Trading NV v. PRSI Trading Co. LP, No. 08 CIV. 10467 (NRB), 2008 WL 5429821, at *4 (S.D.N.Y. Dec. 23, 2008) (quoting Thornapple Assocs., Inc. v. Sahagen, No. 06 Civ. 6412 (JFK), 2007 WL 747861, at *3 (S.D.N.Y. Mar. 12, 2007); citing Reading & Bates Corp. v. Nat'l

Iranian Oil Co., 478 F.Supp. 724, 726 (S.D.N.Y.1976)). "Thus, even if a plaintiff meets the statutory requirements set forth in N.Y. C.P.L.R. §§ 6201[] and 6212(a), 'it would still be possible to deny the harsh remedy of attachment.'" Id. (quoting Thornock v. Kinderhill Corp., 712 F. Supp. 1123, 1132 (S.D.N.Y. 1989)).

As discussed above, the only evidence of an asset transfer is the 2015 asset purchase agreement between Piatti and Fratelli, in which Fratelli purchased from Piatti the assets associated with DaMarino Restaurant. But Plaintiffs' request for an attachment is premised on the notion that these assets were once owned by DaMarino's Inc. and/or 220 West Restaurant Corp. As is also discussed above, Plaintiffs have not offered any evidence in support of this allegation. Nor have they offered evidence that Fratelli or another Defendant "is about to" "assign[]; dispose[] of, encumber[] or secret[]" property.

Accordingly, Plaintiffs have not shown that they are entitled to prejudgment attachment, and their application will be denied.

## CONCLUSION

For the reasons stated above, Plaintiffs' motion is denied in its entirety. The Clerk of Court is directed to terminate the motion (Dkt. No. 361).

Dated: New York, New York
September 23, 2019

SO ORDERED.

*Paul G. Gardephe*
Paul G. Gardephe
United States District Judge