ROBERT WISNIEWSKI  P.C.
ATTORNEYS-AT-LAW

40 WALL STREET, SUITE 2833 • NEW YORK, NY 10005
T EL: (212) 267-2101 • FAX: (646) 512 - 5604
W EBSITE: www.rwapc.com

August 7, 2020

Hon. Robert W. Lehrburger, USMJ
United States District Court
Southern District of New York
500 Pearl Street, Room 1960
New York, NY 10007-1312
        *VIA ECF*

Re:    **Wilson et. al. v. Pasquale DaMarino et. al.**
       **SDNY Docket No.: 10-cv-2709(PGG)(RWL)**

Dear Judge Lehrburger,

        I represent Plaintiffs in this action. Counsel for the respective parties are jointly submitting the Fratelli Settlement Agreement (**Exhibit 1**), the Rossi Settlement Agreement (**Exhibit 2**) as well as my firm's invoice for costs (**Exhibit 3**) and backup documentation for costs and disbursements in parts 1 and 2 (**Exhibit 4 and 5**) for your review and approval in accordance with the precedent set forth in ***Cheeks v. Freeport Pancake House, Inc.***, 796 F.3d 199 (2nd Cir. 2015).[1] The parties request that, upon your review and satisfaction that the Settlement is fair and reasonable and that the fees and costs are duly earned, Your Honor issue an order approving the settlement as well as the attorney fees and costs.

        First and foremost, here is the accounting of the dramatis personae of this ten year old drama. The remaining Plaintiffs are: Genesis Wilson ("Wilson"), Aliaksandra Gargan, formerly known as Aliaksandra Kulesh ("Gargan"), Natalia Miller, f/k/a Natalia Zemtsova ("Miller"), Yuliya Synyuk ("Synyuk"), Mohammed Moin Uddin ("Uddin"), Ksenia Artates ("Artates"), Abdoulaye Ndyaye ("Ndyaye") and Abigail Hennessy ("Hennessy"). Plaintiffs Tatiana Lisovskaya and Santiago Ortiz were dismissed from this case because of their failure to prosecute.

        On the Defendants' side, here are the following remaining Defendants: Peter Rossignuolo a/k/a Peter Rossi ("Rossi"), Giancarlo Montesarchio ("Montesarchio") (who are together referred to as the "Rossi Defendants"), and Craig Perri ("Perri") and Fratelli Italiani LLC ("Fratelli"), (who are together referred to as the "Fratelli Defendants"). The Rossi Defendants signed the Rossi Settlement Agreement whilst the Fratelli Defendants signed the Fratelli Settlement

---

[1]        This motion is being filed before you because the parties will be filing a consent to Your jurisdiction on Monday, August 10, 2020, which we presume that the Hon. Paul G. Gardephe will grant.

Agreement. The remaining Defendants were removed from this case either by obtaining discharge in bankruptcy court (Pasquale Marino and Izabela Marino), Defendant Kavita Jagnarine was dismissed from this lawsuit by the Hon. Gardephe , whilst the remaining defendants were defaulted: Pasquale's DaMarino's, Inc., Salvatore Abbate, Fred Marino, 220 West Restaurant Corp., Joseph Marino a/k/a Giuseppe Marino and Piatti Italiani LLC. This Court deferred an inquest on damages against the defaulted defendants until the resolution of Plaintiffs' claims against the remaining defendants.[2]

### 1.    Introduction

This action, filed on March 26, 2010, seeks to recover damages for various violations of the Fair Labor Standards Act, the New York Labor Law, and the New York State common law, as well as damages for discrimination and hostile work environment based on age under the state and city human rights laws. Some Plaintiffs – Wilson, Gargan, Miller and Synyuk who are the original named Plaintiffs, have wage and hour claims as well as claims for discrimination, whilst the remaining Plaintiffs – Uddin, Artates, Ndyaye and Hennessy – only have wage and hour claims. Plaintiffs Artates, Ndyaye and Hennessy joined this action pursuant to a notice of pendency of an FLSA action that was ordered to be distributed by this Court to former employees of Defendants. Subsequently, the complaint was amended numerous times such that the FLSA opt-in Plaintiffs also asserted wage claims under the NYLL.

Both settlements at bar cover Plaintiffs' claims for unpaid wages and unpaid overtime wages as well as for retaliatory termination under the FLSA and under the NYLL. The parties seek dismissal of these claims with prejudice, which requires court approval. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2nd Cir. 2015) (holding that given the unique considerations underlying the FLSA, any settlement of claims under the FLSA, which seeks dismissal with prejudice, can only be made pursuant to the approval of the court or of the Department of Labor). On the other hand, Plaintiffs' wage claims under the NYLL, the common law of New York as well as claims for discrimination and hostile work environment based on age under New York Executive Law § 296 ("NYHRL") and the New York City Charter and Administrative Code § 8-107 ("NYCHRL") do not require court approval.

The material terms of the Fratelli Settlement Agreement were negotiated at a day long settlement conference presided over by Your Honor on December 3, 2019, whilst the Rossi Settlement Agreement was negotiated over the course of several weeks following this conference. All parties believe that the settlement agreements as negotiated are in compliance with the *Cheeks* decision.  The parties respectfully suggest that should this Court believe that the instant submission is in any way non-compliant with the *Cheeks* decision, the most prudent way perhaps would be to have a teleconference before Your Honor to discuss any concerns and to be

---

[2]      Plaintiffs are still in discussion with each other whether to actually go ahead with the inquest inasmuch as, based on publically available information, the defaulted defendants are either asset poor or have ceased business operations.

allowed to make supplemental submissions.

### 2.      Background of the Action

Before there was Harvey Weinstein and the Me Too movement, there was Pasquale
Marino – a randy restaurateur who used his eponymous restaurant, DaMarino's, located in the
theater district of Manhattan, to indulge his passion for beautiful, tall, blonde Slavic women by
offering them waitressing jobs and then laying siege to their virtue with relentless come-ons of
the cheesiest type. When the waitresses refused his advances, or worse yet – complained, Marino
retaliated against them by reducing their schedule so that they would leave. As if the hostile work
environment was not enough, Defendants paid their employees ten Dollars ($10) per shift and
committed other wage violations in contravention of the FLSA and the NYLL. DaMarino's
restaurant was nominally owned by a maze of corporations which were owned by numerous
Individual Defendants.

Plaintiffs are former employees of DaMarino's, who brought various claims against the
Corporate Defendants for discrimination and wage and hour violations. Plaintiffs Wilson,
Gargan, Miller and Synyuk alleged that Defendants fostered a hostile work envrionment and
committed various wage and hour violations with respect to their employment. Plaintiffs Uddin,
Ndyaye, Artates and Hennessy asserted claims for wage violations.

Plaintiffs further alleged that because Individual Defendants exercised complete control
over the Corporate Defendants and over the conditions of their work, based on the economic
reality of the whole activity, Individual Defendant were joint employers of Plaintiffs for purposes
of wage and hour and discrimination claims and that, in addition, the Individual Defendants
aided and abetted discrimination.

The twists, turns and delays in this action are comparable to the case of *Jarndyce and
Jarndyce* from Dickens' Bleak House and the parties respectfully direct the Court to the Docket
and the decisions rendered throughout the years. As various Defendants either filed for
bankruptcy or defaulted while the restaurant kept changing owners, Plaintiffs kept bringing new
defendants into the action. The final owners of the restaurant were the Fratelli Defendants whom
Plaintiffs sued on the theory that they were successors in interest to the original Defendants.
From the original Defendants, only Defendants Rossi and Montesarchio continued to defend the
action.

Ultimately, following several recent decisions by the Hon. Gardephe on various issues,
the parties entered into the Fratelli Settlement Agreement and the Rossi Settlement Agreement.

### 3.      The Settlement Terms Are Reasonable and Fair

As the 2nd Circuit held, a settlement of claims under the FLSA with prejudice requires
approval by either the Department of Labor or the courts. ***Cheeks****, supra*, 796 F.3d at 202; *see*

also *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982). Fairness of a settlement is assessed by "examining the negotiating process leading up to the settlement as well as the settlement's substantive terms." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 83 (2nd Cir. 2001).

Under both settlement agreements, the Fratelli Defendants will pay $100,000.00 and the Rossi Defendants will pay $20,000.00, making a total settlement of $120,000.00. After a deduction of $20,119.57 in costs and my firm's attorney fee of $31,226.88, all Plaintiffs are to receive net amount of $68,653.55 from both settlements, further divided based on their *pro rata* share of damages as follows:

| | |
|---|---|
| Genesis Wilson - | $16,171.65 |
| Natalia Miller - | $14,063.75 |
| Aliaksandra Gargan - | $9,608.28 |
| Yuliya Synyuk - | $10,545.16 |
| Mohammed Uddin - | $17,174.80 |
| Abdoulaye Ndyaye - | $827.65 |
| Abigail Hennessy - | $105.75 |
| Ksenia Artates - | $156.51 |
| **Total: .......................** | **$68,653.55** |

Both settlements represent a reasonable compromise between Plaintiffs' claims and the defenses alleged by the various Defendants.

When considering whether a settlement is fair, the Court should examine the following five factors: (1) "the plaintiff's range of possible recovery"; (2) "the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'"; (3) "the seriousness of the litigation risks faced by the parties"; (4) "whether the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) "possibility of fraud or collusion". *Wolinsky v. Scholastic, Inc*., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2015). However, the principal question to resolve is "whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Le v. SITA Info Networking Computing USA, Inc.*, 2008 WL 724155 at *1 (E.D.N.Y.2008) (*quoting Lynn's Food Stores v. United States*, 679 F. 2d 1350, 1354 (11th Cir. 1982)).

As regards the first and third *Wolinsky* factors – the "range of possible recovery" and "the seriousness of the litigation risks faced by the parties," the net settlement of $68,653.55 represents a very favorable result to Plaintiff in light of the litigation risks faced by Plaintiffs and Defendants.

The total value of all Plaintiffs' claims in a best case scenario exceeded $2,000,000. It is because Plaintiffs Wilson, Miller, Gargan and Synyuk, had very substantial claims for hostile

work environment, battery and assault. Plaintiff Uddin had very substantial wage and hour claims because he worked in the defendant restaurant for six years. Plaintiffs – Ndyaye, Hennessy and Artates had very small wage and hour claims, having worked at the restaurant for a very short periods of time.

However, over the years the prospects for Plaintiffs' recovery of any damages, let alone, damages under the best case scenario, were dwindling, as various defendants filed for bankruptcy, or ceased operations and defaulted. The Fratelli Defendants – the current operators of the restaurant who presumably had funds to pay damages[3] – were sued on the theory that they were successors-in-interest. This meant that Plaintiffs would have to prove not only their underlying claims, but also that Fratelli Defendants were successors to the original Defendants under dubious circumstances such that they were liable to Plaintiffs for the damages. Judge Gardephe's decisions on Fratelli Defendants' motion to dismiss made it plain to Plaintiffs that proving successor liability was a long way to Tipperary for Plaintiffs.

Plaintiffs' claims against the remaining Individual Defendants were also extremely difficult to prove. Plaintiffs would have had to prove that Defendants Perri, Rossi and Montesarchio could be considered as "joint employers" of Plaintiffs because of the level of control they exercised over Plaintiffs' employment. During discovery, and following judge Gardephe's decision vacating Defendant Perri's default, Plaintiffs realized that it would be extremely difficult to prove joint employer liability against the Individual Defendants.

There was one more concern which weighed heavily toward settlement: Plaintiffs' legitimate concerns about the collectability of a judgment against the Individual Defendants. *Lliguichuzhca v. Cinema 60 LLC*, 948 F.Supp.2d 362, 365 (S.D.N.Y. 2013)("Case law recognizes that potential difficulty in collecting damages militates in favor of finding an [FLSA] settlement reasonable."); *see* also *Cabrera v. Roselea Int 's Services*, 2011 WL 7096634 at *4 (M.D. Fla. Dec. 30, 2011) Even if the Individual Defendants could be considered joint employers, there were great doubts that they would be financially able to satisfy a significant judgment. In fact, Plaintiffs discovered that the Individual Defendants had either no assets or had assets jointly held with their spouses, which could not be reached by creditors.

The settlement is also favorable from Defendants' perspective. Defendants vociferously any liability. However, Defendants understood that they could lose at trial, and such an outcome could have resulted in their being assessed far higher amounts for liquidated damages and prejudgment interest, as well as substantially increased costs and attorney fees for Plaintiff's counsel as a result of conducting a trial.

As to the second *Wolinsky* factor, settling the parties' claims at this point will avoid continuing litigation costs for all parties. Put bluntly, Plaintiffs could have gone through the

---

[3]      Plaintiffs understand that the restaurant is presently closed owing to the pestilence.

entire trial, could have lost on the issue of successor liability and obtained a possibly substantial judgment against the Individual Defendants only to discovery that it was hollow. It would have been an altogether

The fourth and fifth *Wolinsky* factors examine whether the settlement agreement is the product of arm's-length bargaining between experienced counsel and whether there was any possibility of fraud or collusion.

Courts typically regard the adversarial nature of a litigated FLSA case to be an indicator of the fairness of the settlement. *See*, *Aponte v. Comprehensive Health Management, Inc.*, 2013 WL 1364147 at *4 (S.D.N.Y. 2013).  And "[a] strong presumption of fairness attaches to proposed settlements that have been negotiated at arm's length." *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003). At bar, the parties were represented by competent counsel on both sides whose area of practice focuses on employment litigation. Settlement with the Fratelli Defendants was achieved at a settlement conference presided over by Your Honor. Plaintiffs fully participated in the negotiations by consulting with counsel on the offers made and by being involved in the fashioning of numerous demands. The negotiating process consisted of a long, hard- fought process of fleshing out the facts of the case, the terms of the agreement, reviewing documents and then drafting the text of the settlement agreement ultimately accepted by the parties. The above indicate that the negotiating process was at arm's length and there has been no fraud or collusion in the process.

Because a "reasonable" settlement is not necessarily susceptible to a mathematical equation yielding a particularized sum, courts approve settlements falling within a "range of reasonableness." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *In re Luxottica Group*, 233 F.R.D 306, 316 (E.D.N.Y. 2006) (settlement fell within range of reasonableness even though greater recovery could have been achieved at trial); *In re Western Union Money Transfer Litig*. 2004 WL 3709932, at *9 (E.D.N.Y. 2004) (same). Here, given the difficulty of proof of successor liability and joint employer status, the quality of the evidence and the allocation of the burden of proof on Plaintiffs, as well as legitimate concerns about collectability, the $68,653.55 net settlement to Plaintiffs represents a reasonable compromise with respect to contested issues, and therefore, should be approved.

## 4.    Attorney Fees and Costs are Reasonable

Finally, the proposed settlement also covers the plaintiff's costs including attorney's fees. Plaintiff can recover attorneys' fees as of right as a prevailing party pursuant to the FLSA and the New York Labor Law. See, e.g., 29 U.S.C. § 216(b); N.Y. Lab. Law §§ 198(1)–(2), 663(1); *see* also *Barfield v. N.Y.C. Health & Hosps. Corp*., 537 F.3d 132, 151 (2d Cir. 2008); *Kahlil v. Original Old Homestead Restaurant, Inc*., 657 F.Supp.2d 470, 473 (S.D.N.Y. 2009) ("The Court in such action *shall* ... allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.") (emphasis added) (citations omitted)). A party is considered a prevailing party "if [he] succeed[s] on any significant issue in litigation which achieves some of the benefit

the part[y] sought in bringing suit." ***Kahlil***, 657 F.Supp.2d at 473. It is not required that the plaintiff be successful on all claims; he/she must merely "demonstrate a change in the legal relationship between himself and the defendant arising from the resolution of the lawsuit." ***Id.*** The fact that  Plaintiff prevailed via settlement and not litigation is immaterial. ***Id.*** Thus, as the prevailing party, Plaintiff is entitled to an award of attorneys' fees and reasonable costs as a matter of right. ***Id.***

In considering approval of an FLSA settlement, "[t]he court must also seperately assess the reasonableness of plaintiffs' attorney fees, even when the fee is negotiated as part of a settlement agreement rather than judicially determined." ***Lliguichuzhca***, 948 F.Supp.2d at 366. The purpose of the separate assessment is to make sure that "the interests of plaintiffs' counsel in counsel's own compensation [did not] adversely affect the extent of the relief [counsel] procured for clients." ***Wolinsky***, 900 F.Supp.2d at 336. But while the court must approve an award of attorneys' fees and costs in a settlement of FLSA claims, "it is not the responsibility of the Court to ensure that the employer is protected from overpaying an employee's attorneys' fees and costs." ***Misiewicz v. D'Onofrio General Contractors Corp.***, 2010 WL 2545439 at *5 (E.D.N.Y. May 17, 2010)(emphasis supplied)  R&R adopted in ***Misiewicz v.D'Onofrio General Contractors Corp.***, 2010 WL 2545472 (E.D.N.Y. June 18, 2010). In the context of settling FLSA claims, courts should refrain from "disapprov[ing] a settlement on the amount of attorney's fees, since both parties assumingly ha[d] knowledge of how attorney's fees are calculated in this district and were negotiating at arm's length." ***Id. See also Wolinsky***, *supra, at 335-36.*

When determining reasonable attorneys' fees, courts in this Circuit routinely approve FLSA settlements which provide for net 1/3 contingency fees. ***Calle v. Elite Specialty Coatings, Inc.***, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 19, 2014); ***Rangel v. 639 Grand St. Meat & Produce Corp.***, 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013)(same). At bar, each Plaintiff signed a retainer agreement which called for my firm to receive the greater of the 1/3 net contingency fee or the lodestar invoice.

If I were to submit a lodestar invoice, it would exceed $0.6 million. The cost of preparing a proper lodesar invoice in checking the work done over ten years would easily exceed the less than 1/3 contingency fee of $31,226.88 that my Firm is receiving. As a matter of fact, the contingency fee that my Firm is receiving represents a fraction of the cost of salaries it paid to various associates and law clerks who worked on this case over all these years. But I am proud to report to the Court that I did not abandon my clients despite the huge financial loss that my Firm incurred representing them.

The work in this case by my Firm included in addition to drafting the six complaints and conducting written and deposition discovery but also filing and defending innumerable substantial motions, representing Plaintiffs at the related Mironova trial against Pasquale Marino and fighting the Marinos in bankrutpcy court through adversary proceedings.

I have 25 years' experience in employment litigation, and have litigated well over 400 cases of this type, the vast majority of them collective and class action cases.  I have been certified as a Rule 23 class counsel in four wage and hour lawsuits: *Jankowski v. Castaldi*, 2006 WL 118973 at*4 (E.D.N.Y. Jan. 13, 2006); *Niemiec v. Ann Bendick Realty*, 2007 WL 5157027 at *13 (E.D.N.Y. April 23, 2007); *Bielski v. Danco*, E.D.N.Y. Docket No: 06-cv-6542; *Gortat v. Capala Brothers, Inc*., EDNY Docket No.: 07-cv-3629.  In the *Gortat* matter, I obtained a jury verdict for the named plaintiffs and the class in 2013.  I have also conducted a number of bench trials in state and federal courts as well, including *Brassco, Inc. v. Klipo* 2006 WL 223154 (S.D.N.Y. Jan. 27, 2006)(breach of a duty of loyalty by an employee) and *Drozd et al. v. USA Concepts*, EDNY 09-cv-5120-RER (Jan. 20, 2017).

I have also obtained several positive decisions in the wage and hour field from the 2nd Circuit, including *Gortat v. Capala Bros.,* 568 Fed. Appx. 78 (2nd Cir.  2014)(affirming an award of attorney fees and costs that far exceeded an award of class damages owing to the defendants' scorched-earth litigation tactics) and *Kroshnyi v. U.S. Pack Courier Servs*., 771 F.3d 93 (2nd Cir 2013)(holding, *inter alia*, that the SDNY erred in ruling that the statute of frauds barred plaintiffs' breach of oral contract and NYLL claims for unpaid commissions wherein the contracts were entered into for as long as employees worked for the U.S. Pack franchise and remanding for a new trial).

As regards costs, Plaintiff's counsel's firm incurred $20,119.57 in costs and disbursements which were necessary and proper to the prosecution of this case. They also include the costs of publishing of the FLSA Notice of Pendency on Craigslist and the fees for Adversary Proceedings against the Marinos in Bankruptcy Court. The costs are itemized in the invoice attached as **Exhibit 3** and backup documentation is attached in two parts as **Exhibits 4 and 5**.

The backup documentation consists of invoices, or other documents evidencing expenses incurred. It is redacted to remove critical information, such as the firm's account numbers, credit card or bank account numbers and the like. Further, the backup documentation is arranged in the order in which the entry appears on the respective Firm invoice. It is important to note that the date which appears on the invoices presented by my firm for payment reflects the date on which the expenses were allocated in the matter, not when they were incurred. This Court should also consider that these expenses were incurred over the period of ten years. Thus, if there is any document missing, I represent to the Court that the expenses were contemporaneously recorded or allocated to the Clients' file in the ordinary course of business.

For the foregoing reasons, the net contingency fee of 1/3 of the net settlement amount as well as costs to be received by my firm in the case at bar are fair and reasonable and should be approved.

### 5.   The Parties Request That the Court Approve the Settlement

For the reasons outlined above, the settlement reached in this matter is fair and reasonable

to all parties. Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *See Johnson v. Brennan*, 2011 WL 4357376, at *12 (S.D.N.Y., Sept. 16, 2011).

The parties represent to the Court that the proposed settlement is fair to Plaintiff, reasonably resolves bona fide disagreements between Plaintiff and Defendants about the merits of the claims; and demonstrates a good faith intention by the parties that their claims for liability and damages be fully and finally resolved and not relitigated in the future.

Accordingly, the parties respectfully request that the Court approve the agreement and allow the parties to file a stipulation of dismissal.

Respectfully submitted,

*/s/Robert Wisniewski*
Robert Wisniewski

cc:     Keith J. Frank, Esq.
        *Counsel for the Fratelli Defendants*

        Christpher Farella, Esq.
        *Counsel for the Rossi Defendants*